## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Nicole DI LELLA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSITY OF THE DISTRICT OF COLUMBIA<br>DAVID A. CLARKE SCHOOL OF LAW, ANN<br>BISHOP RICHARDSON, AHMAD REED,<br>ACADEMIC STANDARDS COMMITTEE, and<br>SUSAN L. WAYSDORF,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.  1:07CV00747 (HHK)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MOTION TO DISMISS MS. DI LELLA'S COMPLAINT, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT OF THE CLAIMS

Michael A. Johnson (D.C. Bar No. 460879)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206
(202) 942-5000
(202) 942-5999 (fax)

Dated: June 15, 2007

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

DEFENDANTS' MOTION TO DISMISS ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

INTRODUCTION ...................................................................................................1

PERTINENT FACTUAL ALLEGATIONS .............................................................3

ARGUMENT ...........................................................................................................9

I.   STANDARD OF REVIEW ............................................................................9

II.  MS. DI LELLA'S COMPLAINT FAILS TO STATE ANY CLAIM UPON
     WHICH RELIEF COULD BE GRANTED .................................................10

     A.   Ms. Di Lella Fails To Allege Facts Sufficient To Support an Americans
          with Disabilities Act Claim....................................................................10

          1.   Ms. Di Lella Has Failed To Allege Any Plausible Causal
               Relationship Between Her Alleged Disability and Any
               Exclusion from Participation in the Law School's Programs or
               Denial of Their Benefits..............................................................11

          2.   Ms. Di Lella Improperly Asks This Court To Second-Guess the
               Law School Faculty and Administration on Academic Matters...............14

          3.   Ms. Di Lella's Allegations Demonstrate That the Law School
               Accommodated Ms. Di Lella's Alleged Disability Reasonably...............16

          4.   Ms. Di Lella's Accommodation Claim Is Moot Because Ms. Di
               Lella Is No Longer a Student at the Law School ........................17

          5.   Ms. Di Lella's ADA Claims Are Time-Barred...........................18

     B.   The Complaint Fails To Allege Facts Sufficient To Support a
          Rehabilitation Act Claim .......................................................................20

     C.   The Complaint Fails To Allege Facts Sufficient To Support a D.C.
          Human Rights Act Claim........................................................................21

          1.   Ms. Di Lella's DCHRA Claim Is Time-Barred .........................21

          2.   Ms. Di Lella Has Failed To Allege Any Plausible Causal
               Relationship Between Her Alleged Disability and Any Alleged
               Harm ............................................................................................22

     D.   The Complaint Fails To Allege Facts Sufficient To Support a
          Defamation Claim...................................................................................23

1.    The Defamation Claim Is Time-Barred ........................................23

2.    Ms. Di Lella Has Failed To Allege That Any Defamatory
      Communication Actually Occurred ..........................................23

3.    No Communication That Could Plausibly Be Inferred from the
      Complaint Would Have Been False.........................................25

4.    Defendants Were Privileged To Communicate Ms. Di Lella's
      Actual Academic Record To Other Academic Institutions To
      Which Ms. Di Lella Had Applied ...............................................25

E.    The Complaint Fails To Allege Facts Sufficient To Support a Section
      1983 Claim..................................................................................27

1.    Ms. Di Lella Alleges No Specific Deprivation of Any
      Constitutional Right.....................................................................27

2.    Ms. Di Lella Alleges No Actionable Deprivation of Any
      Statutory Right ............................................................................27

3.    Ms. Di Lella Cannot Bootstrap a Section 1983 Claim from
      ADA and Rehabilitation Act Claims ..........................................28

4.    The Law School, As an Arm of the Washington, D.C.
      Municipality, Cannot Be Held Liable Under Section 1983
      Because Ms. Di Lella Has Not Alleged Any Harm Caused by
      Law School Policy or Custom .....................................................29

III.  THE COMPLAINT FAILS TO STATE ANY VALID CLAIM AGAINST
      THE INDIVIDUAL DEFENDANTS....................................................30

A.    Ms. Di Lella's Claims Against the Individual Defendants in Their
      Official Capacities Are Impermissibly Redundant with Ms. Di Lella's
      Claims Against the Law School.................................................30

B.    In Their Personal Capacities, the Individual Defendants Are Immune
      from Ms. Di Lella's Claims .........................................................31

1.    The Academic Standards Committee and Its Members Are
      Entitled to Absolute Immunity from All of Ms. Di Lellas
      Claims ........................................................................................32

2.    Claims Against Individuals in Their Personal Capacities Are
      Not Permitted Under the ADA or the Rehabilitation Act..........34

3.    Ms. Di Lella Cannot Use Section 1983 to Revive ADA Claims
      Against the Individual Defendants............................................34

4.    The Individual Defendants Are Entitled to Qualified Immunity
      from Ms. Di Lella's DCHRA and Section 1983 Claims .............35

C.      Ms. Di Lella Fails To Offer Any Allegation That Any Individual Defendant Published Any False, Non-Privileged, and Defamatory Statement..............................................................................37

D.      Ms. Di Lella Fails To Offer Any Allegation at All Concerning Mr. Reed ...........................................................................................39

IV.     OTHER THAN DEAN RICHARDSON, NO DEFENDANT HAS BEEN PROPERLY SERVED WITH THE COMPLAINT ...........................................39

A.      The Law School Is Not A Proper Defendant ........................................39

B.      Only Dean Richardson Has Been Properly Served with the Complaint................39

V.      IN THE EVENT ANY CLAIM IS NOT DISMISSED, MS. DI LELLA MUST MAKE A MORE DEFINITE STATEMENT TO ENABLE DEFENDANTS TO RESPOND .....................................................................................40

A.      Defendants Cannot Reasonably Frame a Response to Claims Where No Actionable Conduct Is Alleged To Have Occurred Within the Limitations Period.........................................................................40

B.      Defendants Cannot Reasonably Frame a Response to ADA, Rehabilitation Act, or DCHRA Claims Where No Plausible Allegations Causally Link Any Actionable Conduct to Any Cognizable Harm......................41

C.      Defendants Cannot Reasonably Frame a Response to a Section 1983 Claim Where No Actionable Deprivation of a Constitutional or Statutory Right Is Alleged ..................................................................41

D.      Defendants Cannot Reasonably Frame a Response to a Defamation Claim Where No False, Non-Privileged, Defamatory Communication Is Alleged................................................................................42

CONCLUSION............................................................................................42

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Armstrong v. D.C. Public Library*,
154 F. Supp. 2d 67 (D.D.C. 2001) ................................................................. 35

*Baker v. District of Columbia*,
326 F.3d 1302 (D.C. Cir. 2003) ..................................................................... 30

*Beeton v. District of Columbia*,
779 A.2d 918 (D.C. 2001) .............................................................................. 23

*Bell Atlantic Corp. v. Twombley*,
127 S. Ct. 1955 (2007) ................................................................................... 9

*Bennett v. U.S. Chess of America Chess Fed'n*,
468 F. Supp. 2d 79 (D.D.C. 2006) ................................................................. 23

\* *Chandamuri v. Georgetown Univ.*,
274 F. Supp. 2d 71 (D.D.C. 2003) ................................................ 9, 12, 15, 25

*Conley v. Gibson*,
355 U.S. 41 (1957) ......................................................................................... 9

*Cooke-Seals v. District of Columbia.*,
973 F. Supp. 184 (D.D.C. 1997) ............................................................ 31, 34

*Disability Rights Council of Greater Washington v. Washington Metropolitan Area
Transit Authority*, 239 F.R.D. 9 (D.D.C. 2006) ...................................... 28, 29

*Doe v. Southeastern Univ.*,
732 F. Supp. 7 (D.D.C. 1990) ........................................................................ 19

*Fetto v. Sergi*,
181 F. Supp.2d 53 (D. Conn. 2001) ............................................................... 17

*Francois v. Univ. District of Columbia*,
788 F. Supp. 31 (D.D.C. 1992) ...................................................................... 29

*Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*,
280 F.3d 98 (2d Cir. 2001) ............................................................................. 34

*Greene v. District of Columbia.*,
2006 WL 1712399 (D.D.C. 2006) ................................................................. 35

*Harrison v. Rubin*,
174 F.3d 249 (D.C. Cir. 1999) ....................................................................... 21

*Hildenberger v. Cult Awareness Network*,
1993 U.S. Dist. LEXIS 2100 (D.D.C. No. 92-2242 Feb. 26, 1993) .............. 40

*Hoffman v. Hill and Knowlton, Inc.*,
    777 F. Supp. 1003 (D.D.C. 1991) ...................................................................................24

*Houston v. SECTEK*,
    2006 U.S. Dist. LEXIS 51459 (D.D.C. 2006) ..........................................................20, 21

*Ibrahim v. District of Columbia*,
    357 F. Supp. 2d 187 (D.D.C. 2004) ...............................................................................29

*Klein v. H. N. Whitney, Goadby & Co.*,
    341 F. Supp. 699 (D.N.Y. 1971) ......................................................................................3

*Langston v. ACT*,
    890 F.2d 380 (8th Cir. 1989) ...........................................................................................26

*Mitchell v. Yates*,
    402 F. Supp. 2d 222 (D.D.C. 2005) ...........................................................................22, 35

*Moore v. Ashcroft*,
    401 F. Supp. 2d 1 (D.D.C. 2005) ...................................................................................21

*Morgenstein v. Morgan Stanley DW*,
    2007 WL 315090 (D.D.C. 2007) ................................................................................20, 22

*Moss v. Stockard*,
    580 A.2d 1011 (D.C. 1990) ........................................................................................25, 26

*O'Connor v. The College of Saint Rose*,
    2005 WL 2739106 (N.D.N.Y. 2005) ...............................................................................17

*Pantazes v. Jackson*,
    366 F. Supp. 2d 57 (D.D.C. 2005) ..................................................................................16

*Pardue v. The Ctr. City Consortium Schools of the Archdiocese of Washington*,
    875 A.2d 669 (D.C. 2005) ...............................................................................................23

*Powell v. McCormack*,
    395 U.S. 486 (1969)..........................................................................................................18

*Powell v. Nigro*,
    601 F. Supp. 144 (D.D.C. 1985) .....................................................................................32

*Smith v. District of Columbia*,
    430 F.3d 450 (D.C. Cir. 2005)..........................................................................................11

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d. 1111 (D.C. Cir. 2000) ......................................................................................10

*Stevenson v. Ind. School Dist. No. I-038 of Garvin County, Okla.*,
    393 F. Supp. 2d 1148 (W.D. Okla. 2005) ..................................................................28, 34

*Taylor v. District of Columbia*,
    691 A.2d 121 (D.C. 1997) ...............................................................................................27

*Trifax Corp. v. District of Columbia*,
    53 F. Supp. 2d 20 (D.D.C. 1999) .................................................................................38

*Wagshal v. Foster*,
    28 F.3d 1249 (D.C. Cir. 1994) ..................................................................................33

*Wesley v. Don Stein Buick, Inc.*,
    987 F. Supp. 884 (D. Kan. 1997) .................................................................................3

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ..................................................................................................18

*Wolsky v. Med. Coll. of Hampton Rds.*,
    1 F.3d 222 (4th Cir. 1993) .........................................................................................19

**STATUTES**

D.C. Code § 2-1401.01 (2007) ...........................................................................................19

D.C. Code § 2-1402.31 (2007) ...........................................................................................13

D.C. Code § 2-1402.41 (2007) .....................................................................................19, 22

D.C. Code § 2-1402.61 (2007) ...........................................................................................22

D.C. Code § 2-1403.16 (2007) .....................................................................................20, 21

D.C. Code § 12-301 (2007) .................................................................................................23

D.C. Code § 38-1202.01 (a), (b) (2007) .............................................................................39

29 U.S.C. § 794(a) (2007) ...................................................................................................20

42 U.S.C. § 1983 (2007) ...............................................................................................*passim*

42 U.S.C. § 12132 (2007) ..............................................................................................11, 19

**RULES**

Fed. R. Civ. P. 1, 4, 7, 12 ......................................................................................................1

Fed. R. Civ. P. 11 ..................................................................................................................4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................11

L. Civ. R. 7 .............................................................................................................................1

**MISCELLANEOUS**

Richard A. Posner, *The Little Book Of Plagiarism* 39 (Pantheon Books 2007) ...................2, 42

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 1, 4, 7 and 12, and L. Civ. R. 7, defendants respectfully move for an order dismissing the Complaint in its entirety, dismissing each claim asserted in the Complaint, and dismissing each defendant from the action.  In the alternative, defendants respectfully move for an order directing the plaintiff to make a more definite statement of any claim that the Court permits the plaintiff to continue to assert against any defendant.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Nicole Di Lella is a former student at the University of the District of Columbia David A. Clarke School of Law.  In 2004, the Law School warned Ms. Di Lella that she was at grave risk of being "expell[ed] . . . for poor academic performance."[1]  This case revolves around Ms. Di Lella's submission, as her responses to the take-home essay questions from her spring 2005 Constitutional Law II final examination, material she copied from the Internet and altered slightly, without crediting the actual authors.[2]  The Law School adjudged Ms. Di Lella guilty of plagiarism and suspended her for one year.  Ms. Di Lella now claims the suspension resulted not from her plagiarism, but from discrimination.

As the Complaint and related materials demonstrate, however, discrimination was not the first excuse Ms. Di Lella offered to explain away her submission of copied material as a final exam response.[3]  As her formal response to these "very serious"[4] charges, Ms. Di Lella claimed

---

[1]    Compl. Ex. 18 at ¶ 38.

[2]    *See* Compl. Exs. 8-9.

[3]    Compl. Ex. 8.

[4]    Compl. Ex. 18, Tab J.

that she had mistakenly submitted the wrong computer file after having been called out of town for an unspecified "family emergency."[5]  Indeed, Ms. Di Lella's explanatory submission to the Law School's Academic Standards Committee prominently proclaims that Ms. Di Lella took care "not to overlook any expected argument that should be raised here in my Response,"[6] but *never mentions* that any alleged learning disability contributed *at all* to the incident, or argued that the Law School had *in any way* failed to accommodate her disability reasonably.  Instead, Ms. Di Lella acknowledged her own "less than presentable study habits," stated that she "apologize[d] and [took] responsibility for" them, and admitted that she "accept[ed] the fault for making the mistake."[7]

The Academic Standards Committee deemed Ms. Di Lella's attempt to explain away her submission of copied materials "not . . . credible," found that she had committed plagiarism, and suspended her for one year.[8]  *After* the committee rejected her preferred story, Ms. Di Lella shifted to Plan B, attempting to excuse her actions by claiming the Law School had violated her rights as a learning-disabled student, the principal claims she presents in this action.

As Judge Richard Posner recently wrote:

> Curiously, most litigation over plagiarism is instituted by rather than against students expelled or otherwise disciplined for committing plagiarism.  The ingenious legal theories spun by the student litigants run the gamut from breach of contract to denial of due process of law (if the school is a public institution).  The threat of litigation makes some academic administrators gunshy about expelling students caught plagiarizing.[9]

---

[5]    Compl. Ex. 9.

[6]    Compl. Ex. 9, at 1.

[7]    *Id*. at 2.

[8]    Compl. Ex. 10, at 2.

[9]    Richard A. Posner, *The Little Book of Plagiarism* 39 (Pantheon Books 2007).

Here, the ingenious legal theories Ms. Di Lella spins to explain her plagiarism fail as a matter of law, and the academic administrators who refused to be gunshy about punishing Ms. Di Lella's academic misconduct ought not be put to the burden of any further proceedings. As explained below, Ms. Di Lella's Complaint must be dismissed in its entirety.

In the alternative, should the Court allow Ms. Di Lella to pursue any claim against any defendant, Ms. Di Lella must provide a more definite statement of each such claim before any defendant can reasonably be required to frame a responsive pleading. Although Ms. Di Lella purports to be proceeding *pro se*, she has the assistance of a "legal advisor" who is an experienced litigation attorney with the firm of Paul, Hastings, Janofsky & Walker LLP. Accordingly, at a minimum, the Court need not and ought not indulge Ms. Di Lella with the lenient pleading standards ordinarily accorded to *pro se* litigants.[10]

## PERTINENT FACTUAL ALLEGATIONS

The Complaint contains the following pertinent factual allegations, which at this stage the Court must assume to be truthful.[11] Ms. Di Lella enrolled in the University of the District of Columbia's ("UDC") David A. Clarke School of Law (the "Law School") in the fall of 2003.[12] Shortly after arriving on campus, Ms. Di Lella met with Associate Dean Ann Bishop Richardson

---

[10]     *See Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 885-86 (D. Kan. 1997) (finding that an attorney who provides "substantial legal assistance" to a *pro se* party creates an "unwarranted advantage" for that party based on the greater latitude typically afforded to *pro se* litigants and creates legal concern under Fed. R. Civ. P. 11); *Klein v. H. N. Whitney, Goadby & Co.*, 341 F. Supp. 699, 702 (D.N.Y. 1971) (stating that to allow a *pro se* litigant to enjoy "the assistance of a lawyer or lawyers who have not formally appeared in this case" would be "grossly unfair to both this court and the opposing lawyers and should not be countenanced").

[11]     Defendants do not concede the truth of any of Ms. Di Lella's allegations as they are recounted in this brief and reserve all rights to contest every allegation in the Complaint.

[12]     Compl. ¶ 13; Compl. Ex. 5.

to notify the Law School of Ms. Di Lella's learning disabilities and to request accommodations.[13] Through Dean Richardson, the Law School offered Ms. Di Lella double time on examinations, examinations administered in a separate quiet testing room, extended time on written projects when necessary and requested, and a note-taker.[14] Dean Richardson made clear to Ms. Di Lella that reasonable accommodation was a "joint responsibility."[15]

In the spring semester of 2005, Ms. Di Lella enrolled in Professor Susan Waysdorf's Constitutional Law II class.[16] As an accommodation to Ms. Di Lella, the Law School permitted her to take the Con Law II midterm months after her classmates.[17] In addition, Ms. Di Lella also received several extensions to take her Con Law II final exam, which her classmates completed in the beginning of May 2005.[18] Ms. Di Lella picked up the take-home portion of the Con Law II final exam on June 13, 2005.[19] Because her classmates had had one week to complete the exam in May, Ms. Di Lella was entitled by her disability accommodation to take two weeks to complete and submit her responses.

Ms. Di Lella did not, however, meet that extended deadline. Instead, on June 24, 2005, Ms. Di Lella requested and was granted an additional extension.[20] The entire summer break passed, however, and Ms. Di Lella still had not submitted her Con Law II final. Finally, as the fall 2005 Semester commenced, the Law School notified Ms. Di Lella that she must submit her

---

[13]    Compl. ¶ 13; Compl. Ex. 5.
[14]    Compl. Ex. 6.
[15]    Compl. Ex. 6.
[16]    Compl. ¶ 23.
[17]    Compl. ¶ 26.
[18]    Compl. ¶ 28.
[19]    Compl. Ex. 18, Tab L.
[20]    Compl. Ex. 18, Tab L.

Con Law II final exam by September 16, 2005.[21]  Thus, Ms. Di Lella had more than *three months* to prepare her responses after she picked up the Con Law II take-home final exam — more than *six times* the two-week period to which she was, by her disability accommodation, entitled.  Well before Ms. Di Lella submitted her exam, she received Con Law II class notes.[22]

On September 14, 2005, two days before her exam was due, Ms. Di Lella learned of an undisclosed "family emergency" that purportedly required her to travel to Buffalo, NY, the next day.[23]  Based on this unexplained "emergency," Ms. Di Lella contacted Dean Richardson, requesting an extension until September 19 to complete unrelated "outstanding work" *for another class*.[24]  In her Complaint and the accompanying materials, Ms. Di Lella offers multiple and inconsistent accounts of the Law School's response to her request.  In the text of the Complaint, she alleges that Dean Richardson granted but subsequently revoked an extension for Ms. Di Lella's *Con Law II* exam response.[25]  But in an Exhibit to her Complaint, Ms. Di Lella concedes that any extension she received was "limited and did not pertain to the submission of [her] Con Law II final," and that her mistaken belief that the Con Law II deadline had been extended resulted from a "lapse in correspondence."[26]

In any event, on September 19, 2005 Ms. Di Lella learned that the September 16, 2005 deadline had passed and had not been extended; she immediately e-mailed a computer file for

---

[21]  Compl. ¶ 32.

[22]  Compl. Ex. 18, ¶ 17.

[23]  Compl. Ex. 18, ¶ 18.

[24]  Compl. Ex. 9.

[25]  Compl. ¶¶ 33, 34.

[26]  Compl. Ex. 9, at 2.

submission as her Con Law II final exam.[27]  Ms. Di Lella admits that she sent the file with the

intention that it be submitted as her Con Law II final exam response.[28]  Moreover, the

submission bore Ms. Di Lella's personal exam number.[29]

Professor Waysdorf recognized Ms. Di Lella's submission as unoriginal, assigned her a

grade of "F" for the course, notified Dean Richardson, and submitted a Complaint of Honor

System Violations alleging plagiarism and cheating on an examination "by copying material

directly from other sources and failing to credit those sources on the 'take-home' essay

portion."[30]  Professor Waysdorf wrote that Ms. Di Lella submitted an answer "taken in its

entirety (except for a change of names of the parties) from the University of Alberta Faculty of

Law website" and an answer that "was copied directly and extensively from the *Petition for Writ

of Certiorari*" submitted in *Lawrence v. Texas*, which also was publicly available.[31]

On November 4, 2005, Ms. Di Lella wrote a letter to the chair of the Academic Standards

Committee, Professor Edward Allen, defending herself against Professor Waysdorf's Honor

Code charge.[32]  In that letter, Ms. Di Lella concedes that the material she submitted as her exam

response — with her exam number but not her name displayed — was indeed unoriginal.[33]  She

admitted that she submitted materials she had copied directly from other sources without

attribution, but claims she did so by accident and did not intend for those materials to serve as

---

[27]   Compl. ¶ 35.

[28]   Compl. Ex. 9, at 2; Compl. Ex. 18, ¶ 22.

[29]   Compl. Ex. 10, at 1.

[30]   Compl. Ex. 8.

[31]   Compl. Ex. 8.

[32]   Compl. Ex. 9.

[33]   Compl. ¶ 39, Compl. Ex. 9.

her final exam answer.[34]  As Ms. Di Lella acknowledges, she "fully explained the circumstances surrounding her mistaken submission."[35]  Ms. Di Lella's formal letter in her defense does not contain *any* discussion of her learning disability or relate *any* allegation that *any* purported failure to accommodate that disability had *anything* to do with her faulty exam submission.[36]

On January 24, 2006, Ms. Di Lella appeared before an Academic Standards Committee panel that included Professors Edward Allen, Tom Mack, and Stephanie Brown to defend herself in person.[37]  Ms. Di Lella submitted a supplemental letter to the committee on January 25, 2006, in which she again makes no reference whatsoever to any learning disability and never asserts that any purported failure to accommodate any such disability had any effect at all on her ability to prepare adequately for the take-home essays, to complete them, or to submit them properly.[38] (To be sure, Ms. Di Lella's supplemental letter does mention certain "e-mails concerning my accommodations *which pertain to the scheduling the [on-site] Multiple Choice section*," and notes that "arrangements to fulfill [her] accommodation in order *to sit for the Multiple Choice section* did not come about as originally thought," but these separate scheduling matters have nothing to do with the take-home essay portion of the exam.[39])

On February 27, 2006, the Academic Standards Committee's panel considered Ms. Di Lella's argument and rejected it, finding Ms. Di Lella guilty of the Honor Code violations of plagiarism and cheating on an examination.  The Committee explained:

---

[34]    Compl. Ex. 9.

[35]    Compl. ¶ 39.

[36]    Compl. Ex. 9.

[37]    Compl. Ex. 18 ¶ 37.

[38]    Compl. Ex. 18, Tab L.

[39]    *Id.*

> We do not find credible your explanation that the plagiarized document was a mere study aid mistakenly submitted. We find that you are responsible for your action in submitting a plagiarized document to a professor to meet the deadline imposed on you for submitting an answer to her exam. As such, we find that you violated the honor code as charged.[40]

That same day, the Law School informed Ms. Di Lella that she would be suspended for one year, and the Academic Standards Committee directed the Registrar to inform the Bar Examiners of any jurisdiction where Ms. Di Lella subsequently sought admission of her guilty adjudication, and to include it in any formal letter of good standing submitted to another institution.[41] Ms. Di Lella makes no allegation, however, that any Bar Examiner or other institution was ever actually notified of her Honor Code violation.[42]

On April 13, 2006, Ms. Di Lella's counsel — an attorney with Paul, Hastings, Janofsky & Walker LLP — submitted a Supplemental and Amended Appeal to the Law School faculty on Ms. Di Lella's behalf.[43] On April 19, 2006, the Law School faculty denied Ms. Di Lella's petition for plenary review of the Academic Standards Committee's February 27, 2006 decision,[44] leaving the one-year suspension in place.[45] Ms. Di Lella filed this action on April 24, 2007.[46]

---

[40]    Compl. ¶ 40, Compl. Ex. 10, at 2.

[41]    Compl. Ex. 10, at 3.

[42]    *See generally* Compl.

[43]    Compl. 46, Ex. 18.

[44]    Compl. ¶ 47, Compl. Ex. 19.

[45]    Compl. ¶ 49.

[46]    Compl. at 1.

## ARGUMENT

### I.    STANDARD OF REVIEW

As this Court noted in the 2003 *Chandamuri* case, which also involved ADA claims against a local university, "[a] motion to dismiss under Rule 12(b)(6) tests . . . whether the plaintiff has properly stated a claim.  . . .  The court must accept as true all well-pleaded factual allegations and grant plaintiff the benefit of all *reasonable* inferences that can be derived from the alleged facts."[47]  In this Circuit, courts "accept neither 'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint,' nor 'legal conclusions cast in the form of factual allegations.'"[48]

Until this year, that doctrine was interpreted to mean that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts . . . [that] would entitle him to relief."[49]  Under the Supreme Court's recent *Bell Atlantic* decision, however, a plaintiff now must plead "enough facts to state a claim to relief that is plausible on its face."[50]  Therefore, a plaintiff's claims need not be demonstrably inconceivable to fail the Rule 12(b)(6) standard.  Rather, if the allegations do not cross "the line from conceivable to plausible, the[] complaint must be dismissed."[51]

---

[47]    *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 76-77 (D.D.C. 2003) (internal citations omitted).

[48]    *Chandamuri*, 274 F. Supp. 2d at 78 (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

[49]    *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[50]    *Bell Atlantic Corp. v. Twombley*, 127 S. Ct. 1955, 1974 (2007).

[51]    *Id.*

Additionally, as the D.C. Circuit noted in its 2000 *Sparrow* decision, "[i]n some cases, it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible."[52]

## II.    MS. DI LELLA'S COMPLAINT FAILS TO STATE ANY CLAIM UPON WHICH RELIEF COULD BE GRANTED

Ms. Di Lella pleads five claims: (1) purported violations of the Americans with Disabilities Act, (2) purported violations of the Rehabilitation Act, (3) purported violations of the D.C. Human Rights Act, (4) purported defamation, and (5) purported violations of 42 U.S.C. § 1983.  The allegations in Ms. Di Lella's Complaint, however, fail to support any of the claims, all of which suffer from multiple, fatal deficiencies.  Among other fatal flaws, the ADA, DCHRA, and defamation claims are time-barred.  Ms. Di Lella's failure to plausibly allege any causal link between any actionable conduct and any cognizable harm dooms the ADA, Rehabilitation Act, and DCHRA claims.  Ms. Di Lella's failure to allege any false and defamatory communication negates her defamation claim, and her failure to allege any constitutional deprivation or any actionable deprivation of a statutory right undermines her Section 1983 claim.  Accordingly, the Court should dismiss the Complaint in its entirety.

### A.    Ms. Di Lella Fails To Allege Facts Sufficient To Support an Americans with Disabilities Act Claim

In the first line of the first paragraph of her Complaint, Ms. Di Lella notes that her principal claim is that defendants' conduct allegedly ran afoul of "the Americans with

---

[52]    *Sparrow v. United Air Lines, Inc.*, 216 F.3d. 1111, 1116 (D.C. Cir. 2000).

Disabilities Act of 1990."[53]  Ms. Di Lella's ADA claims, however, suffer from multiple, incurable legal infirmities, any one of which would be sufficient to require dismissal.

    1.    **Ms. Di Lella Has Failed To Allege Any Plausible Causal Relationship Between Her Alleged Disability and Any Exclusion from Participation in the Law School's Programs or Denial of Their Benefits**

The ADA's "reasonable accommodation" doctrine mandates that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[54]  Similarly, as the D.C. Circuit held in the 2005 *Smith* case, in order to establish a prima facie case under the ADA's "retaliation" doctrine, a plaintiff must establish "first, that 'she engaged in protected activity'; second, that she 'was subjected to adverse action . . .'; and third, that '*there existed a causal link between the adverse action and the protected activity*.'"[55]

Ms. Di Lella alleges that defendants caused her to be "excluded from participation in, and denied benefits of services, programs, and activities of, UDC School of Law. . . and caused Plaintiff to be subjected to discrimination, in violation of the ADA,"[56] and that defendants "coerced, intimidated, threatened, and interfered with Plaintiff in the exercise and enjoyment of rights granted and protected by the ADA, and retaliated against Plaintiff for opposing, and complaining about, defendants' conduct in violation of the ADA."[57]  But these conclusory

---

[53]    Compl. ¶ 1 (citing 42 U.S.C. § 12101 *et seq*.).

[54]    42 U.S.C § 12132 (emphasis added).

[55]    *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (emphasis added) (quoting *Jones v. Washington Metro. Area Transit Auth.*, 205 F.3d 428, 433 (D.C. Cir. 2000)).

[56]    Compl. ¶ 58.

[57]    Compl. ¶ 59.

allegations do not support a plausible inference that the harm Ms. Di Lella incurred after she submitted a final exam response consisting of material copied from the Internet — academic sanctions including a one-year suspension — were imposed "by reason of [her] disability" or that "there existed a causal link between" the academic sanctions and any of Ms. Di Lella's protected activities.

Judge Lambert's decision in *Chandamuri* is particularly relevant on this point. In that case, an American citizen of Indian descent was sanctioned for plagiarism and, in response, brought claims against Georgetown University "alleging unlawful discrimination on the basis of national origin and retaliation."[58] The Court rejected "Chandamuri's conclusory inferences of national-origin discrimination because 'such inferences are unsupported by the facts set out in the complaint.' The only inference that reasonably flows from Chandamuri's factual allegations is that Chandamuri was disciplined for plagiarism."[59]

Here, likewise, the only plausible inference from Ms. Di Lella's factual allegations concerning the Academic Standards Committee's decision is that she was disciplined for plagiarism. Indeed, in defending herself to the Academic Standards Committee against the plagiarism charges, Ms. Di Lella did not mention her disability *at all*, nor did she *ever attempt* to claim that her disability, or the School's alleged failure to accommodate it, contributed *in any way* to the "mistake" she admitted and for which she not only "apologize[d] and [took] responsibility," but also "accept[ed] the fault."[60] Furthermore, Ms. Di Lella did not allege that she was treated differently than students without disabilities.

---

[58]    *Chandamuri*, 274 F. Supp. 2d at 75.
[59]    *Id*. at 80 (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).
[60]    Compl. Ex. 9, at 2.

Ms. Di Lella's allegation that she was forced to "fend for herself"[61] by the Law School's alleged failure to provide her with Con Law II class notes cannot conceivably — let alone plausibly — provide the missing causal link.

*First*, the circumstances Ms. Di Lella claims caused her to submit the copied material — allegedly by mistake — had, by her own account, *nothing to do with her disability*. Ms. Di Lella claims an undisclosed family emergency — *not her disability* — caused her to travel to Buffalo, NY, on September 15, 2005. Ms. Di Lella also claims she believed at that time that Dean Richardson had granted her an extension to turn in her exam on September 19, 2005 — *because of the purported family emergency, not Ms. Di Lella's disability*.[62] Ms. Di Lella learned on September 19, 2005 that no extension had been granted and that her essays had been due on September 16, 2005 — but she attributes her mistaken belief that an extension had been granted to a "lapse in correspondence,"[63] *not her disability*. Ms. Di Lella then asserts that the stress of the alleged "family emergency" combined with her mistaken belief that she had been granted an extension — again, *not her disability* — caused her to "panic."[64] In this state of "panic,"[65] feeling "[u]pset from the family emergency, and afraid that her misunderstanding concerning the Con Law II deadline would result in a penalty"[66] — *none of which bears any causal connection to Ms. Di Lella's disability* — Ms. Di Lella submitted as her final exam response, via email from the Buffalo airport, a computer file identified by Ms. Di Lella's exam number that contained

---

[61]   Compl. ¶ 1.

[62]   Compl. ¶ 33; Compl. Ex. 18, ¶¶ 18-20.

[63]   Compl. Ex. 9, at 2.

[64]   *Id*.

[65]   *Id*.

[66]   Compl. Ex. 18, ¶ 22.

material Ms. Di Lella had copied from the Internet.[67]  Whether Ms. Di Lella submitted the copied material intentionally or, as she claims, by a panic-driven mistake, she did not submit it *because of her disability*.  Yet it is that submission of copied material, and that submission only, that caused all of the negative consequences of which Ms. Di Lella complains.

*Second*, Ms. Di Lella admits that she received complete class notes well *before* she submitted the Con Law II exam response she copied from the Internet.[68]  Thus, whatever caused Ms. Di Lella to submit copied work as her exam response could not have been a lack of class notes — because she had them.  The consequences of Ms. Di Lella's plagiarism, therefore, simply did not flow from the Law School's alleged failure to provide notes.

*Third*, even if Ms. Di Lella had *never* received the notes, that would not justify Ms. Di Lella's submission of copied work as a final exam response; allowing plagiarism is not a reasonable accommodation.

The Complaint makes clear that Ms. Di Lella's academic suspension was based on the Academic Standards Committee's determination that Ms. Di Lella was guilty of plagiarism, not Ms. Di Lella's disability, the Law School's alleged failure to accommodate that disability, or any protected activity.  Ms. Di Lella has not plausibly alleged the requisite causal link, and her ADA claims must be dismissed.

## 2. Ms. Di Lella Improperly Asks This Court To Second-Guess the Law School Faculty and Administration on Academic Matters

Ms. Di Lella disagrees with the Academic Standards Committee's determination that she committed plagiarism and devotes much of her Complaint to allegations intended to suggest that

---

[67]   *Id*.

[68]   Compl. Ex. 18, ¶ 17.

the Academic Standards Committee reached the wrong conclusion.[69]  This Court cannot don an

academic robe and determine what constitutes plagiarism at the Law School and must reject

Ms. Di Lella's attempt to appeal and overturn the Academic Standards Committee's decision.

As Judge Lamberth noted in *Chandamuri*:

> The D.C. Court of Appeals has previously noted that it will not
> second-guess an educational institution's application of its own
> academic standards and procedures unless the plaintiff "can
> provide some evidence from which a fact finder could conclude
> that there was no rational basis for the decision or that it was
> motivated by bad faith or ill will unrelated to the academic
> performance."[70]

Here, no one could dispute that a rational basis existed for the Academic Standards

Committee's determination that Ms. Di Lella plagiarized — Ms. Di Lella admitted that she

tendered material copied from the Internet as her response to a final examination.[71]  Although

Ms. Di Lella claims she did so unintentionally, it was entirely rational for the Academic

Standards Committee to reject that as a defense and mete out a sanction.  There is no allegation

that the Academic Standards Committee's decision was motivated by bad faith or ill will.

Second-guessing academic judgments of this type would compromise academic integrity

at universities because it would deter faculty members and administrators from enforcing

academic standards.  As Ms. Di Lella admits, "[p]lagiarism and cheating are offensive to the

legitimate work done by scholars," and "[p]lagiarism warrants sanctioning because it is

dishonest."[72]  As such, this Court should reject Ms. Di Lella's attempt to use the ADA as a

---

[69]    Compl. ¶¶ 40-46.

[70]    *Chandamuri*, 274 F. Supp. 2d at 80-81 (quoting *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1109 (D.C. 1999)).

[71]    Compl. Ex. 9.

[72]    *Id*. at 4.

springboard to launch the Court on a plenary review of the Academic Standards Committee's plagiarism determination.

**3.    Ms. Di Lella's Allegations Demonstrate That the Law School Accommodated Ms. Di Lella's Alleged Disability Reasonably**

Ms. Di Lella alleges that the Law School failed to provide her with the reasonable accommodation of Con Law II class notes in violation of the ADA.[73]  But Ms. Di Lella also admits that the Law School provided a substitute accommodation — months of extra time to take the Con Law II final[74] — that permitted Ms. Di Lella to acquire the allegedly missing notes,[75] and that thereby cured any harm that might otherwise have resulted.

The ADA does not require that an individual be provided with the precise accommodations requested; it only requires the provision of *reasonable* accommodations.  As the court explained in the 2005 *Pantazes* case, which involved ADA claims against an employer rather than a public entity, "simply because an accommodation preferred by an employee is available, an employer need not offer that particular accommodation so long as a reasonable alternative is provided."[76]  Thus, even accepting Ms. Di Lella's allegations as true, the Law School provided Ms. Di Lella with a reasonable alternative accommodation that compensated for the Law School's alleged failure to provide class notes.

---

[73]    Compl. ¶¶ 1, 24.

[74]    Compl. ¶¶ 31-33.

[75]    Compl. Ex. 18, ¶ 17.

[76]    *See Pantazes v. Jackson*, 366 F. Supp. 2d 57, 69 (D.D.C. 2005) (citing *Hankins v. Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996)).

**4.    Ms. Di Lella's Accommodation Claim Is Moot Because Ms. Di Lella**
**Is No Longer a Student at the Law School**

In the 2005 *O'Connor* case, the Northern District of New York properly held that a

student-plagiarist's ADA claim seeking injunctive relief was moot — "assuming there ha[d]

been violations" — because the plaintiff had already enrolled at another university and because

"Plaintiff's failing grade and plagiarism would provide Defendant with a legitimate, non-

discriminatory reason to refuse to allow [p]laintiff to re-enroll."[77]

Here, Ms. Di Lella has severed her relationship with the Law School, alleging that the

plagiarism-related suspension resulted in her *de facto* expulsion.[78]  As in *O'Connor*,

Ms. Di Lella's failing grade and her plagiarism would provide the Law School with a legitimate,

nondiscriminatory reason to refuse to allow Ms. Di Lella to re-enroll.  The Academic Standards

Committee's determination that Ms. Di Lella plagiarized and its decision to sanction her with a

one-year suspension were lawful.  Consequently, Ms. Di Lella is no longer a student at the Law

School for lawful reasons unrelated to defendants' alleged discrimination and failure to

accommodate.  As such, even if this Court finds that Ms. Di Lella has stated a failure to

accommodate claim, she would not be entitled to injunctive relief.  Requiring the Law School to

provide class notes or other similar accommodations to learning-disabled students would offer

Ms. Di Lella no benefit — as a non-student, she could not make any use of such

---

[77]    *O'Connor v. The College of Saint Rose*, 2005 WL 2739106, at *8 (N.D.N.Y. 2005); *see also
Fetto v. Sergi*, 181 F. Supp. 2d 53, 67 (D. Conn. 2001) (noting that "courts have held that
students' claims for declaratory and injunctive relief against universities are mooted by the
students' graduation.  Further, '[a] case becomes moot when interim relief or events have
eradicated the effects of the defendant's act or omission, and there is no reasonable expectation
that the alleged violation will recur.'") (citations omitted).

[78]    Compl. ¶¶ 1, 49.

accommodations.  No injunctive relief or future accommodations will change the fact that Ms. Di Lella was lawfully suspended for plagiarism and she is no longer a student at the Law School.

Furthermore, all the damages allegedly suffered by Ms. Di Lella stem from her suspension and the disciplinary mark on her record.  Ms. Di Lella claims that she can no longer pursue a law career or her estimation in the professional community has been lowered.[79]  This damage is the result of her plagiarism, not any alleged failure to accommodate.  In addition, any problems that may have been caused by the Law School's delay in providing Ms. Di Lella with class notes were mitigated by the significant extensions Ms. Di Lella received to take her final exam and Ms. Di Lella's admission that she received the class notes prior to submitting the Con Law II final exam.[80]

Consequently, even if this Court finds that Ms. Di Lella has adequately alleged a failure to accommodate her learning disabilities, her claims are nevertheless moot because she was not damaged by such failure and injunctive relief is no longer available.[81]

### 5. Ms. Di Lella's ADA Claims Are Time-Barred

Under the Supreme Court's 1985 *Wilson* decision, if a federal statute does not contain a limitations period — as is the case with the ADA — federal courts draw the limitations period from the most analogous state statute.[82]  Where a federal statute addressing a particularized wrong lacks an express limitations period but shares language and intent with a state statute

---

[79]    Compl. ¶ 1.

[80]    Compl. Ex. 18, ¶ 17.

[81]    *See Powell v. McCormack*, 395 U.S. 486, 496 (1969) (stating "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome").

[82]    *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).

addressing the same wrong, the limitations period of the corresponding state statute — not the

state's statute of limitations for general personal injury actions — applies, as the Fourth Circuit

explained in the 1993 *Wolsky* case.[83]

Here, the local statute most analogous to the ADA is the District of Columbia's Human

Rights Act (the "DCHRA"), which includes as its preamble the statement that, "[i]t is the intent

of the Council of the District of Columbia, in enacting this chapter, to secure an end in the

District of Columbia to discrimination for any reason other than that of individual merit,

including, but not limited to, discrimination by reason of . . . disability."[84]  Substantively, the

DCHRA mandates that:

> [i]t is an unlawful discriminatory practice . . . for an educational
> institution: (1) To deny, restrict, or to abridge or condition the use
> of, or access to, any of its facilities, services, programs, or benefits
> of any program or activity to any person otherwise qualified,
> wholly or partially, for a discriminatory reason, based upon the
> actual or perceived . . . disability of any individual.[85]

The ADA analogously states that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity."[86]  The ADA and the DCHRA share common language and a common goal, and in the

*Morgenstein* decision issued earlier this year, this Court therefore recognized that the two

---

[83]    *See Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 223-224 (4th Cir. 1993); *but see Doe v. Southeastern Univ.*, 732 F. Supp. 7, 8-9 (D.D.C. 1990).

[84]    D.C. Code § 2-1401.01 (2007).

[85]    D.C. Code § 2-1402.41 (2007).

[86]    42 U.S.C. § 12132 (2007).

statutes are "substantially similar."[87]  Accordingly, Ms. Di Lella's ADA claims are timely only if the meet the limitations period provided by the DCHRA.

As discussed in greater detail below in section II.C.1, claims under the DCHRA are governed by a one-year statute of limitations.[88]  The act Ms. Di Lella complains of — her suspension for plagiarism — occurred on February 27, 2006, more than one year before the April 24, 2007 filing of her Complaint in this Court.  Even if the Court were to deem the Law School faculty's rejection of Ms. Di Lella's appeal as the event that set the limitations clock in motion, that event occurred on April 19, 2006 — also more than one year prior to the Complaint's filing.  Ms. Di Lella alleges no other material action taken by the Law School concerning Ms. Di Lella after that date.  Because ADA claims in the District of Columbia must meet the DCHRA one-year limitations period, and because Ms. Di Lella failed to commence this action within one-year of the alleged harm, Ms. Di Lella's ADA claims are time-barred and the Court must dismiss them.

**B.    The Complaint Fails To Allege Facts Sufficient To Support a Rehabilitation Act Claim**

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[89]

---

[87]    *See Morgenstein v. Morgan Stanley DW*, 2007 WL 315090, at *4, n.7 (D.D.C. 2007).

[88]    D.C. Code § 2-1403.16 (2007).  *See also Houston v. SECTEK*, 2006 U.S. Dist. LEXIS 51459, *4-5 (D.D.C. 2006).

[89]    29 U.S.C. § 794(a) (2007).

Discrimination and retaliation claims under Section 504 of the Rehabilitation Act are evaluated under substantially the same criteria as ADA claims;[90] Ms. Di Lella's Rehabilitation Act claims suffer from the same substantive flaws as her ADA claims.  Moreover, the Rehabilitation Act's requirement that to be cognizable, alleged harm must have been caused "solely by reason of his or her disability," requires an even closer connection between the alleged discrimination and the complainant's disability than the ADA requires.  Here, as discussed above with respect to the ADA, Ms. Di Lella failed to allege plausibly that the Academic Standards Committee's determination was caused by Ms. Di Lella's alleged disability or her alleged protected activities.  Accordingly, Ms. Di Lella's Rehabilitation Act claims should be dismissed.

### C.    The Complaint Fails To Allege Facts Sufficient To Support a D.C. Human Rights Act Claim

#### 1.    Ms. Di Lella's DCHRA Claim Is Time-Barred

Claims under the DCHRA are governed by a one-year statute of limitations.[91]  The statute states that "[a] private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction *within one year* of the unlawful discriminatory act, or discovery thereof."[92]  As discussed above, Ms. Di Lella filed her Complaint more than one year after the last action the Law School took with regard to Ms. Di Lella.  Thus, Ms. Di Lella's DCHRA claims are time-barred and must be dismissed.

---

[90]    *See Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) ("Claims and defenses under the two statutes are virtually identical."); *Moore v. Ashcroft*, 401 F. Supp. 2d 1, 24 (D.D.C. 2005) ("The standards for determining an employment-related violation of the Rehabilitation Act are the same standards used for a similar violation of the Americans with Disabilities Act of 1990.").

[91]    D.C. Code § 2-1403.16 (2007).  *See also Houston v. SECTEK*, 2006 U.S. Dist. LEXIS 51459 (D.D.C. 2006).

[92]    D.C. Code § 2-1403.16 (2007).

2.    **Ms. Di Lella Has Failed To Allege Any Plausible Causal Relationship Between Her Alleged Disability and Any Alleged Harm**

Even if the Court were to ignore the time bar to Ms. Di Lella's DCHRA claims, those claims fail as a matter of law.  The DCHRA makes it illegal for educational institutions "[t]o deny, restrict, or to abridge or condition the use of, or access to, any of its facilities, services, programs, or benefits of any program or activity to any person otherwise qualified, wholly or partially, for a discriminatory reason, *based upon the actual or perceived . . . disability of any individual*."[93]  The DCHRA additionally prohibits the coercion of, threatening, retaliation against, or interference "with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter."[94]

"[T]he requirements of the DCHRA mirror those of the ADA," as this Court explained in the 2005 *Mitchell* case.[95]  Thus, as this Court explained earlier this year in the *Morgenstein* decision, "[b]ecause the DCHRA and the Americans with Disabilities Act (ADA) are substantially similar, courts considering DCHRA claims frequently look to ADA case law for persuasive authority."[96]

As discussed above with respect to the ADA, Ms. Di Lella failed to allege any facts plausibly connecting the Academic Standards Committee's determination that Ms. Di Lella plagiarized her Con Law II exam submission to Ms. Di Lella disability or her alleged protected

---

[93]    D.C. Code § 2-1402.41 (2007) (emphasis added).
[94]    D.C. Code § 2-1402.61 (2007).
[95]    *Mitchell v. Yates*, 402 F. Supp. 2d 222, 229 n. 4 (D.D.C. 2005).
[96]    *Morgenstein v. Morgan Stanley DW Inc.*, 2007 WL 315090, at *4 n. 7 (D.D.C. 2007).

activities.  Accordingly, Ms. Di Lella has failed to allege a causal link adequate to support a

DCHRA claim, and her DCHRA claims must be dismissed.

### D.    The Complaint Fails To Allege Facts Sufficient To Support a Defamation Claim

#### 1.    The Defamation Claim Is Time-Barred

The limitations period for a defamation action in the District of Columbia is one year,[97]

accruing "when a suit . . . could first be maintained to a successful conclusion."[98]  Ms. Di Lella

filed her Complaint on April 24, 2007 and makes no allegation that any allegedly defamatory

communication occurred on or after April 24, 2006.  The only actual communications

Ms. Di Lella discusses all occurred before then.  Accordingly, her defamation claims are time-

barred and should be dismissed.

#### 2.    Ms. Di Lella Has Failed To Allege That Any Defamatory Communication Actually Occurred

To survive a motion to dismiss, a plaintiff asserting a defamation claim under District of

Columbia law:

> "must show (1) that the defendant made a false and defamatory
> statement concerning the plaintiff; (2) that the defendant
> 'published' the statement without privilege to a third party; (3) that
> the defendant's fault in publishing the statement amounted to at
> least negligence; and (4) either that the statement was actionable as
> a matter of law irrespective of special harm or that its publication
> caused the plaintiff special harm."[99]

---

[97]    D.C. Code § 12-301 (2007).

[98]    *Pardue v. The Ctr. City Consortium Sch. of the Archdiocese of Washington, Inc.*, 875 A.2d 669, 679 (D.C. 2005) (quoting *Toomey v. Cammack*, 345 A.2d 453, 455 (D.C. 1975)).

[99]    *Bennett v. U.S. Chess of Am. Chess Fed'n*, 468 F. Supp. 2d 79, 89 (D.D.C. 2006) (quoting *Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991); *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001)).

Ms. Di Lella's allegations fail to meet that standard — Ms. Di Lella never even alleges that *any* defendant *ever* published *any* defamatory communication regarding Ms. Di Lella.  As this Court explained in the 1991 *Hoffman* case:

> In libel and slander suits the time and place of the publication should be specifically stated in the complaint.  [T]he use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings.[100]

In that case, the Court dismissed the planitiff's defamation claims because the plaintiff did not state the time and place of the communications, describe the content of the communication, or identify the alleged speaker or listener.[101]

Here, the closest Ms. Di Lella ever comes to alleging that any defamatory communication actually occurred is to allege that the Law School instructed the registrar to publish Ms. Di Lella's Honor Code violation to other institutions or Bar Examiners *in the future*.[102]  But Ms. Di Lella never alleges that any defendant ever actually published any communication regarding her Honor Code violation to anyone outside the Law School, and even if such a communication could be inferred from Ms. Di Lella's allegations, Ms. Di Lella never identifies the maker, the receiver, or the content of any purportedly defamatory statement.  Missing as it does any allegation of a defamatory communication, Ms. Di Lella's defamation claim must be dismissed.

---

[100]    *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (internal quotation marks and citations omitted).

[101]    *Id.*

[102]    Compl. ¶¶ 1, 48, 50.

### 3. No Communication That Could Plausibly Be Inferred from the Complaint Would Have Been False

In any event, Ms. Di Lella has failed to show that even if defendants had made any statement about Ms. Di Lella's Honor Code violation, the statement would have been false. To the contrary, if the Law School had communicated to anyone that Ms. Di Lella had been found guilty of an Honor Code violation, that statement would have been absolutely true: the Academic Standards Committee in fact adjudged Ms. Di Lella guilty of an Honor Code violation.[103]

### 4. Defendants Were Privileged To Communicate Ms. Di Lella's Actual Academic Record To Other Academic Institutions To Which Ms. Di Lella Had Applied

Even if the Law School's registrar had published information about Ms. Di Lella's Honor Code violation to other schools or to Bar Examiners, and even if that information were somehow false (which it was not), any such communications would be protected under the common interest privilege. In the 1990 *Moss* case, the D.C. Court of Appeals explained that the common-interest privilege against liability for defamation applies to statements "(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such corresponding interest."[104]

Ms. Di Lella's Complaint establishes that defendants acted under the common interest privilege when they provided directions to publish Ms. Di Lella's academic record with an Honor Code violation to other institutions and the Bar Examiners. Ms. Di Lella has not alleged

---

[103]    While Ms. Di Lella maintains the Honor Code decision was fraudulent, (Compl. ¶ 1), as discussed earlier, this Court should not second-guess the University of the District of Columbia's application of its own academic standards. *Chandamuri*, 274 F. Supp. 2d at 80-81.

[104]    *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990).

that any defendant made any allegedly defamatory communication in bad faith, nor has she alleged any facts that create a plausible inference of bad faith. Indeed, as the D.C. Court of Appeals explained in *Moss*:

> Once the court determines a statement is subject to the "common interest" privilege, the defendant "will be presumed to have actuated by pure motives in its publication. In order to rebut this presumption, express malice or malice in fact must be shown [by the plaintiff]." Unless the statement itself is "so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that the defendant was actuated by express malice," malice must be proven by extrinsic evidence.[105]

Here, defendants indisputably had a responsibility to the Bar and academia to expose plagiarists for what they are.[106] As Ms. Di Lella explains, "[p]lagiarism . . . reflects on an individual's honesty; in turn, it is a reflection of character and ethical fitness to practice law."[107] Ms. Di Lella has alleged no facts indicating that defendants would have acted out of malice had they communicated to other academic institutions or to Bar Examiners the Academic Standard's Committee's finding that Ms. Di Lella had committed plagiarism.

Ms. Di Lella's defamation claims are time-barred and, in addition, Ms. Di Lella has failed to allege any false statement concerning her, the publication of such a statement, or that such statement was unprivileged. Each of these failures provides an independent basis to dismiss her defamation claims. Accordingly, Ms. Di Lella's defamation claims must be dismissed.

---

[105]    *Moss*, 580 A.2d at 1024 (internal citations omitted).

[106]    *See Langston v. ACT*, 890 F.2d 380, 387 (8th Cir. 1989) (holding communications between testing service and student's high school were privileged where testing center believed student cheated).

[107]    Compl. Ex. 9, at 1.

### E.    The Complaint Fails To Allege Facts Sufficient To Support a Section 1983 Claim

Section 1983 creates a civil action for any person that was deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by anyone acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."[108]  A prima facie case under the statute requires a showing that the wrongful conduct was committed by one acting under color of state law and that the conduct deprived the plaintiff of rights, privileges, or immunities protected by the Constitution or laws of the United States.[109] Additionally, the deprivation must have resulted from an established governmental procedure.[110]

### 1.    Ms. Di Lella Alleges No Specific Deprivation of Any Constitutional Right

Ms. Di Lella makes a boilerplate allegation that she was deprived of rights and privileges secured by the Constitution,[111] but she never identifies any particular provision of the Constitution that any defendant allegedly violated, nor can any constitutional violations be inferred from the facts Ms. Di Lella alleges.  Thus, the only plausible inference Ms. Di Lella's Complaint can support is that the Section 1983 claim is based on an alleged deprivation of her rights under the ADA and Rehabilitation Act, not any particular provision of the Constitution.

### 2.    Ms. Di Lella Alleges No Actionable Deprivation of Any Statutory Right

As discussed above, Ms. Di Lella has failed to state a claim under the ADA or the Rehabilitation Act; she therefore has failed to allege plausibly any deprivation on any cognizable

---

[108]    42 U.S.C. § 1983 (2007).

[109]    *See Taylor v. District of Columbia*, 691 A.2d 121, 125 (D.C. 1997).

[110]    *Taylor*, 691 A.2d at 125 (relying on *Paratt v. Taylor*, 451 U.S. 527, 543 (1980)).

[111]    Compl. ¶ 67.

- 27 -

statutory right.  Because Ms. Di Lella has not adequately alleged that she has been deprived of any "rights or privileges secured by the Constitution and laws," Ms. Di Lella's Section 1983 claim must be dismissed against all defendants.

### 3.    Ms. Di Lella Cannot Bootstrap a Section 1983 Claim from ADA and Rehabilitation Act Claims

Ms. Di Lella's Section 1983 claims are based entirely on defendants' alleged violations of her rights under the ADA and Rehabilitation Act.  Four circuits have concluded that plaintiffs cannot bring a Section 1983 claim to enforce the substantive rights created by Title II of the ADA or the Rehabilitation Act because those statutes provide exclusive remedies.[112]  By contrast, defendants have identified no Court of Appeals decision reaching the opposite conclusion with respect to Title II of the ADA or the Rehabilitation Act.

In the recent *Disability Rights Council* case, this Court concluded that the statutory remedies available under the Rehabilitation Act are exclusive, and that "plaintiffs' § 1983 claims, insofar as they allege violations of the Rehabilitation Act, are dismissed."[113]  The Court should apply the same reasoning here; to the extent Ms. Di Lella's Section 1983 claims are alleging deprivations of rights provided by the Rehabilitation Act, the Section 1983 claims must be dismissed.  To the extent Ms. Di Lella's Section 1983 claims allege deprivations of rights provided by the ADA, defendants are aware that in *Disability Rights Council*, this Court held

---

[112]    *See Stevenson v. Ind. Sch. Dist. No. I-038 of Garvin County, Okla.*, 393 F. Supp. 2d 1148, 1151 (W.D. Okla. 2005) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1011-12 (8th Cir. 1999); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1530-31 (11th Cir. 1997)).

[113]    *Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 239 F.R.D. 9, 23 (D.D.C. 2006) (Kennedy, J.).

"that a private right of action is available under [Section 1983] for violations of the ADA, in addition to the right of action arising from the statute itself."[114]  Although the D.C. Circuit has not addressed the question, defendants respectfully submit that the Court may wish to revisit that issue in light of the decisions in the Fifth, Eighth, Ninth, and Eleventh Circuits; in any event, defendants must assert the issue in order to preserve it for appeal.

### 4.    The Law School, As an Arm of the Washington, D.C. Municipality, Cannot Be Held Liable Under Section 1983 Because Ms. Di Lella Has Not Alleged Any Harm Caused by Law School Policy or Custom

The University of the District of Columbia is an arm of the Washington, D.C., municipality.[115]  As such, neither UDC nor its Law School can be held liable under Section 1983 under a theory of "*respondeat superior* for the actions of its employees or agents" because "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional [or statutory] tort."[116]

Thus, the only potential Section 1983 liability the Law School might face is liability for actions attributable to the Law School entity as an arm of the municipality.  To evaluate municipal liability under Section 1983, the D.C. Circuit has stated:

> First, the court must determine whether the complaint states a claim for a predicate constitutional [or statutory] violation. Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation . . . .  [In evaluating the second prong,] [t]he court must determine whether the plaintiff has alleged an "affirmative

---

[114]  *Id*.

[115]  *See Francois v. Univ. D.C.*, 788 F. Supp. 31 (D.D.C. 1992).

[116]  *Ibrahim v. District of Columbia.*, 357 F. Supp. 2d 187 (D.D.C. 2004).

link," such that a municipal policy was the "moving force" behind the constitutional violation.[117]

Here, as discussed above, Ms. Di Lella has failed to allege a predicate statutory or constitutional violation or harm.  Furthermore, even if Ms. Di Lella did allege a constitutional or statutory harm, her Section 1983 claim must fail under the second prong of the municipal-liabilty test because Ms. Di Lella has not alleged any "affirmative link" between the Law School's policy or custom and the alleged harm to Ms. Di Lella.  As a result, Ms. Di Lella's Section 1983 claims against the UDC Law School, an arm of the Washington, D.C. municipality, must be dismissed.

## III.    THE COMPLAINT FAILS TO STATE ANY VALID CLAIM AGAINST THE INDIVIDUAL DEFENDANTS

Ms. Di Lella's Complaint is doubly deficient with regard to the claims it asserts against the individual defendants.  As explained above, the allegations fail to state any valid claim against any defendant.  Even if we were to ignore those fatal flaws for the sake of argument, as a matter of law Ms. Di Lella cannot assert any of her claims against any of the individual defendants in any capacity.

### A.    Ms. Di Lella's Claims Against the Individual Defendants in Their Official Capacities Are Impermissibly Redundant with Ms. Di Lella's Claims Against the Law School

In addition to bringing claims against the UDC Law School, Ms. Di Lella brought claims against Ann Bishop Richardson, Ahmad Reed, the individual members of the Academic Standards Committee, and Susan L. Waysdorf in their official capacities.  As this Court

---

[117]    *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal citations omitted).

explained in the 1997 *Cooke-Seals* case, however, claims against individual government

employees in their official capacities are not proper:

> A suit against an individual in her official capacity is one method
> of bringing suit against the employer and is distinct from an
> individual capacity suit. Where the suit has been filed against the
> employer (here the District of Columbia) *and* one or more
> employees, however, the claims against the employees *merge* with
> the claim against the employer. Because an official capacity suit
> against an individual is the functional equivalent of a suit against
> the employer, plaintiff's claims against the officers are redundant
> and an inefficient use of judicial resources.[118]

Because Ms. Di Lella brought redundant claims against the UDC Law School and its employees

in their official capacities, those claims merge and the claims against the individuals in their

official capacities should be dismissed against all individual defendants.

**B.    In Their Personal Capacities, the Individual Defendants Are Immune from Ms. Di Lella's Claims**

Ms. Di Lella also asserts claims against Dean Richardson, Ahmad Reed, the individual

members of the Academic Standards Committee, and Susan L. Waysdorf in their individual

capacities. Because Ms. Di Lella failed to adequately state any of her five claims, as discussed

above, all claims brought against the individual defendants in their individual capacities should

also be dismissed. If this Court nevertheless finds that Ms. Di Lella has adequately stated any

claim, all claims against the individual defendants in their individual capacities must still be

dismissed, for the reasons discussed below. Furthermore, Ms. Di Lella does not allege that any

of the individual defendants acted outside the scope of their employment.

---

[118]    *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997) (internal
citations omitted).

1.     **The Academic Standards Committee and Its Members Are Entitled to Absolute Immunity from All of Ms. Di Lellas Claims**

As quasi-judicial decision makers, the individual members of the Academic Standards Committee are entitled to absolute immunity in the exercise of their discretion in finding Ms. Di Lella guilty of plagiarism.  As this Court explained in the 1985 *Powell* decision:

> When assessing whether absolute immunity should be afforded a quasi-judicial official, a court should focus on the official's function at issue and consider three public policy factors: 1) the "functional comparability" of his judgments to those of a judge; 2) the nature of the controversy in which he participated; and 3) the adequacy of safeguards to control unconstitutional conduct.  If the function involves an exercise of judge-like discretion, absolute immunity should be afforded; for all other acts, the individual members should enjoy only qualified immunity.[119]

Here, the members of the Academic Standards Committee are entitled to absolute immunity for their role in evaluating Professor Waysdorf's Honor Code charge against Ms. Di Lella.

*First*, there was a "functional comparability" between the role of the Academic Standards Committee members and those of a judge.  The Academic Standards Committee is presented with adversarial contentions and arguments and decides cases based on the evidence and arguments submitted to it.[120]  Here, the committee was presented with an Honor Code complaint from Professor Waysdorf, considered Ms. Di Lella's written defense, heard Ms. Di Lella's oral defense in person, and rendered a decision.  In essence, the Academic Standards Committee acts the judicial branch of the Law School in determining violations of the Honor Code.

---

[119]   *Powell v. Nigro*, 601 F. Supp. 144, 147 (D.D.C. 1985) (internal citations omitted) (granting defendants, who were members of the Committee on Admissions to the Bar, absolute immunity when exercising judge-like discretion).

[120] Compl. Ex. 10; Compl. Ex. 18 Tab J.

*Second*, the nature of the controversy indicates absolute immunity should apply because "the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect."[121]  Like a judicial officer, the members of the Academic Standards Committee adjudicate cases that have a significant impact on the parties involved and it is likely that those who are subject to adverse decisions will be frustrated and angry; it is not surprising that some will want to get revenge.  Absolute immunity is necessary to protect the Academic Standards Committee members from vexatious lawsuits from disappointed parties.

*Finally*, the Law School provides adequate safeguards to protect Ms. Di Lella's rights. As Ms. Di Lella acknowledges, she was given every opportunity to explain her story.  The committee expressly advised Ms. Di Lella that the "allegations are very serious," and that the "committee expects you to make every relevant representation and argument in your response."[122]  But the committee did not require Ms. Di Lella to stand on her initial Nov. 4, 2005 submission[123] or her oral testimony alone.  Rather, the committee accepted and considered the supplemental submission Ms. Di Lella tendered on January 25, 2006.[124]  Moreover, the Academic Standards Committee provided Ms. Di Lella with a written opinion explaining the rationale for its decision,[125] and Ms. Di Lella took advantage of her opportunity to pursue an appeal of the Academic Standards Committee's decision before the Law School faculty.[126]

---

[121]    *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994).

[122]    Compl. Ex. 18, Tab J.

[123]    Compl. ¶ 39; Compl. Ex. 9.

[124]    Compl. Ex. 18, Tab L.

[125]    Compl. Ex. 10.

[126]    Compl. ¶ 46; Compl. Ex. 18.

The functional comparability of the Academic Standards Committee's decision to those of a judge, the nature of the controversy, and the adequacy of the procedural safeguards all demonstrate that the members of the Academic Standards Committee were exercising judge-like discretion in deciding Professor Waysdorf's Honor Code charge. For that reason, these individuals are entitled to absolute immunity from Ms. Di Lella's claims.

### 2.    Claims Against Individuals in Their Personal Capacities Are Not Permitted Under the ADA or the Rehabilitation Act

Ms. Di Lella's claims under the ADA and the Rehabilitation Act against the individual defendants in their individual capacity must be dismissed because individuals cannot be held liable under those statutes.[127]

### 3.    Ms. Di Lella Cannot Use Section 1983 to Revive ADA Claims Against the Individual Defendants

Regardless of whether Ms. Di Lella can bring Section 1983 claims that are derivative of ADA claims *generally*,[128] she may not use Section 1983 to resuscitate claims *against the individual defendants* that she could not bring directly under the ADA.[129]

---

[127]    *See Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001) (stating "Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.") (citations omitted); *Cooke-Seals v. District of Columbia*, 973 F. Supp. at 187 (stating, "The Court of Appeals' holding in *Gary v. Long, supra,* excluding individual liability from the definition of 'employer' under Title VII, is applicable as well to the ADA's definition of 'employer.' Accordingly, plaintiff's ADA claim against the defendant officers in their individual capacities will be dismissed.").

[128]    *See supra* § II.E.3.

[129]    *See Stevenson v. Ind. School Dist. No. I-038 of Garvin County, Okla.*, 393 F. Supp. 2d 1148, 1152 (W.D. Okla. 2005) ("Plaintiffs cannot sue the Individual Defendants directly under Title II of the ADA or the Rehabilitation Act [and] they cannot use § 1983 to do what they cannot do directly under these Acts — establish individual liability.").

**4.    The Individual Defendants Are Entitled to Qualified Immunity from Ms. Di Lella's DCHRA and Section 1983 Claims**

The individual defendants are entitled to qualified immunity for the damages claims Ms. Di Lella asserts against them in their individual capacities.[130]  As this Court explained in the 2005 *Mitchell* decision, qualified immunity protects government officials from damages lawsuits "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[131]  In the 2006 Greene decision, the Court explained further that:

> An official enjoys protection from liability "where [his] conduct is objectively reasonable in light of existing law."  On the other hand, an official is not shielded from liability where he "could be expected to know that certain conduct would violate statutory or constitutional rights."  Whether an official has qualified immunity is resolved by a two-step inquiry.  The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional [or statutory] right [.]"  "If no constitutional [or statutory] right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  If a violation could be made out, the second inquiry is "whether the right was clearly established."[132]

Here, the only acts Ms. Di Lella alleges the individuals serving on the Academic Standards Committee committed are inextricably related to the Committee's consideration of the plagiarism complaint filed by Professor Waysdorf, the Committee's determination that Ms. Di Lella had in fact plagiarized, and the Committee's decision on the appropriate sanctions for Ms.

---

[130]    *See Greene v. District of Columbia*, 2006 WL 1712399, *3 (D.D.C. 2006); *Armstrong v. D.C. Pub. Library*, 154 F. Supp. 2d 67, 71 (D.D.C. 2001).

[131]    *Mitchell v. Yates*, 402 F. Supp. 2d 222, 234 (D.D.C. 2005) (quoting *Int'l Action Ctr. v. United States,* 365 F.3d 20, 44 (D.C. Cir. 2004)).

[132]    *Greene v. District of Columbia*, 2006 WL 1712399, *3 (D.D.C. 2006) (internal citations omitted).

Di Lella's violation.  Even if this Court were to find that the decision and associated sanctions were unlawful and somehow violative of Ms. Di Lella rights, that principle was not clearly established at the time the committee acted.  As discussed earlier, the members of the Academic Standards Committee were presented with evidence that Ms. Di Lella submitted an exam answer containing her individual exam number and portions of materials copied directly from sources available on the Internet.  Based on this information, the Academic Standards Committee reasonably concluded that Ms. Di Lella had plagiarized.[133]  While Ms. Di Lella disagrees, the conclusion of the individual members of Academic Standards Committee was entirely reasonable and could not have violated any of Ms. Di Lella's "clearly established" rights.

Similarly, Professor Waysdorf is also entitled to immunity against suit in her individual capacity because she did not violate any of Ms. Di Lella's clearly established rights. Ms. Di Lella submitted an exam in Professor Waysdorf's course that contained sections copied directly from other sources.  Professor Waysdorf made a reasonable academic judgment that Ms. Di Lella had plagiarized and submitted her Honor Code charge to the Academic Standards Committee.[134]  In fact, Professor Waysdorf was obligated by her role as a professor to report the plagiarism charge to the Academic Standards Committee.  Her conduct was objectively reasonable and did not violate any of Ms. Di Lella's clearly established rights.  In addition, with respect to Ms. Di Lella's failure to accommodate claims, there are no allegations Professor Waysdorf had any responsibility for providing Ms. Di Lella with her accommodations.

---

[133]   Compl. Ex. 10.
[134]   Compl. Ex. 8.

Finally, Dean Richardson is not even alleged to have been involved in Ms. Di Lella's

plagiarism dispute, nor has Ms. Di Lella alleged any other facts to create a plausible inference

that Dean Richardson somehow violated Ms. Di Lella's clearly established rights.  The only facts

alleged that involve Dean Richardson are that she allegedly reneged on Ms. Di Lella's purported

extension to submit her exam.  As discussed, this alleged extension related to Ms. Di Lella's

purported family emergency and had nothing to do with Ms. Di Lella's disability.[135]

Ms. Di Lella has not alleged that any right to an extension of an examination for unexplained

"family emergencies" exists at all — defendants are not aware of any such right — and there is

no plausible inference that such a right is clearly established.  Thus, even accepting the truth of

Ms. Di Lella's contention that Dean Richardson reneged on the extension, this act did not violate

Ms. Di Lella's clearly established rights.

Because Ms. Di Lella has not alleged that any individual defendant has engaged in

conduct that was objectively unreasonable or that violated Ms. Di Lella's clearly established

rights, the claims against the individual defendants in their individual capacities should be

dismissed based on qualified immunity.

**C.**     **Ms. Di Lella Fails To Offer Any Allegation That Any Individual Defendant
         Published Any False, Non-Privileged, and Defamatory Statement**

As discussed above, Ms. Di Lella failed to allege that any individual defendant published

defamatory remarks about her.  Ms. Di Lella's Complaint alleges that the Law School, the

registrar, and Dean's office *received instructions* to publish her Honor Code violation to other

institutions and Bar Examiners, but Ms. Di Lella never alleges that any individual defendant

---

[135]    Compl. Ex. 9, at 2.

*actually published* any statement about the violation.  Because Ms. Di Lella alleges no facts that any individual defendant published defamatory statements about Ms. Di Lella, the defamation claims against the individual defendants should be dismissed.

Even if Ms. Di Lella had alleged an individual defendant made defamatory statements about Ms. Di Lella, the individual defendants, as employees of the UDC Law School, are government employees entitled to absolute immunity from the defamation claims.  "'[A] government employee has an *absolute* immunity for common law defamation if he acts 'within the ambit of his discretion.' . . . '[T]he common law doctrine of official immunity . . . distinguishes between the performance of discretionary and ministerial functions and immunity is conferred only for the former.'"[136]

The decision to reference Ms. Di Lella's Honor Code violation in her permanent record was a discretionary decision by the individual members of the Academic Standards Committee. It was based on a discretionary determination that Ms. Di Lella was guilty of plagiarism and a discretionary decision to sanction Ms. Di Lella with the inclusion of an Honor Code violation in her permanent record.  As such, the individual defendants are entitled to absolute immunity against Ms. Di Lella's defamation claims.

Finally, even if this Court finds that the individual defendants are not entitled to absolute immunity, Ms. Di Lella's defamation claims against the individual defendants in their individual capacities should be dismissed because the individuals are entitled to qualified immunity against damages claims and none of their actions violated Ms. Di Lella's clearly established rights.

---

[136]  *Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20, 29 (D.D.C. 1999) (quoting *Sami v. United States*, 617 F.2d 755, 768-69 (D.C. Cir. 1979)).

**D.    Ms. Di Lella Fails To Offer Any Allegation at All Concerning Mr. Reed**

Although Ahmad Reed is named as a defendant, there is not a single allegation that refers to Mr. Reed anywhere in the entire text of Ms. Di Lella's Complaint.  Because there are no factual allegations from which one could plausibly infer that Mr. Reed violated Ms. Di Lella's clearly established rights or in any way contributed to any of the harm Ms. Di Lella claims she suffered, all claims against Mr. Reed in his individual capacity must be dismissed.

**IV.    OTHER THAN DEAN RICHARDSON, NO DEFENDANT HAS BEEN PROPERLY SERVED WITH THE COMPLAINT**

**A.    The Law School Is Not A Proper Defendant**

The University of the District of Columbia (and by extension its Law School) lacks capacity to sue or be sued.[137]  The Law School therefore is not a proper defendant.  The Board of Trustees of the University is the entity organized to govern the University and the Law School; it has the capacity to sue and be sued.[138]  With regard to her claims against the Law School, Ms. Di Lella has neither named the proper entity as a defendant nor served it with the Complaint.  Accordingly, Ms. Di Lella's claims against the Law School must be dismissed.

**B.    Only Dean Richardson Has Been Properly Served with the Complaint**

The "Praecipe Filing Returns of Service" that Ms. Di Lella's legal adviser filed with Court shows that service of the Complaint was effected "personally upon the defendant" only with regard to Dean Richardson.[139]  For all other individual defendants, the purported service was made by leaving a copy of the Complaint with an "agent at place of business," *i.e.*, with

---

[137] D.C. Code § 38-1202.01 (a), (b).

[138] *Id.*

[139] Praecipe Filing Returns of Service (April 30, 2007) (Docket Entry 4).

someone at the Law School *other than the defendants*.[140]  But as this court held in the 1993

*Hildenberger* case, "[s]ervice upon an individual cannot be effected . . . by leaving process at his

business office."[141]  Proper service has not been effected, and all individual defendants but Dean

Richardson must be dismissed from the action.

## V.     IN THE EVENT ANY CLAIM IS NOT DISMISSED, MS. DI LELLA MUST MAKE A MORE DEFINITE STATEMENT TO ENABLE DEFENDANTS TO RESPOND

Based on the numerous incurable deficiencies described above, the Court should dismiss

the Complaint in its entirety.  In the event that the Court nevertheless permits any of

Ms. Di Lella's claims to proceed, defendants must have a more definite statement of the

remaining claims before they can reasonably be required to frame a responsive pleading.

Accordingly, in the alternative to the request that each of Ms. Di Lella's claims be dismissed,

defendants respectfully request that the Court order Ms. Di Lella to make a more definite

statement of her claims.

### A.     Defendants Cannot Reasonably Frame a Response to Claims Where No Actionable Conduct Is Alleged To Have Occurred Within the Limitations Period

In the event that the Court permits Ms. Di Lella to pursue any claim governed by a one-

year statute of limitations, defendants would only be liable for acts that took place after April 24,

2006.  But Ms. Di Lella does not identify any such acts in her Complaint.  To reasonably frame a

defense, each defendant must know what wrongful acts Ms. Di Lella claims took place within

the limitations period.

---

[140] *Id.*

[141] *Hildenberger v. Cult Awareness Network*, 1993 U.S. Dist. LEXIS 2100 (D.D.C. No. 92-2242 Feb. 26, 1993) at *2.

**B.      Defendants Cannot Reasonably Frame a Response to ADA, Rehabilitation Act, or DCHRA Claims Where No Plausible Allegations Causally Link Any Actionable Conduct to Any Cognizable Harm**

The ADA, Rehabilitation Act, and DCHRA all require Ms. Di Lella to demonstrate a causal link between her disability (or a protected activity) and the alleged harm of which she complains.  But here, all of the negative consequences Ms. Di Lella alleges flow from her submission of a Con Law II final exam containing material she copied from the Internet — Ms. Di Lella's own explanation of her purported mistake in submitting that material made no reference to her alleged disability.[142]  Accordingly, in order to frame a response to any ADA, Rehabilitation Act, or DCHRA claim that the Court permits Ms. Di Lella to pursue, each defendant must have a more definitive statement of the alleged causal link between Ms. Di Lella's disability, any alleged failure to accommodate that disability, or any protected activity, and the harm Ms. Di Lella purports to have suffered.

**C.      Defendants Cannot Reasonably Frame a Response to a Section 1983 Claim Where No Actionable Deprivation of a Constitutional or Statutory Right Is Alleged**

As noted above, Ms. Di Lella identifies no specific constitutional provision in support of her Section 1983 claim.  In order to frame a defense to a Section 1983 claim based on a constitutional deprivation, each defendant must know what constitutional provision Ms. Di Lella alleges was violated and what role each defendant played in the alleged violation.

Similarly, as described above, Ms. Di Lella has identified no actionable violation of any statutory right.  In order to frame a defense to a Section 1983 claim based on a statutory

---

[142] Compl. Ex. 9.

deprivation, each defendant must know what statutory right Ms. Di Lella alleges each defendant deprived her of and what role each defendant played in the alleged deprivation.

**D.   Defendants Cannot Reasonably Frame a Response to a Defamation Claim Where No False, Non-Privileged, Defamatory Communication Is Alleged**

As noted above, Ms. Di Lella identifies no allegedly false, defamatory, and non-privileged communication.  In order to frame a defense to a defamation claim, each defendant must know the details of each communication Ms. Di Lella bases the claim on, including the speaker; the listener; the date, time, and place; and the information communicated.

**CONCLUSION**

As Judge Posner notes in his latest book, "The stigma of plagiarism seems never to fade completely, not because it is an especially heinous offense but because it is embarrassingly second rate; its practitioners are pathetic, almost ridiculous."[143]  Here, Ms. Di Lella admittedly submitted unoriginal, copied material as an exam response.  Professor Waysdorf immediately detected the copying, and, after a duly conducted proceeding, the Academic Standards Committee determined that Ms. Di Lella committed plagiarism and meted out a suspension. Ms. Di Lella's offense may not have been particularly heinous, but the excuses Ms. Di Lella has offered — from the just-a-big-misunderstanding defense she presented to the Academic Standards Committee to the newfangled and implausible disability-rights story she tries to spin here — are consistent with Judge Posner's description.

As the Academic Standard Committee concluded, Ms. Di Lella must be held "responsible for [her] action in submitting a plagiarized document to a professor to meet the deadline imposed

---

[143]   Richard A. Posner, *The Little Book of Plagiarism* 39 (Pantheon Books 2007).

on [her] for submitting an answer to an exam."[144]  That is all that this case is about.  For the

reasons expressed herein, Ms. Di Lella has stated no legal claim against any defendant, and the

Court must therefore dismiss her Complaint in its entirety.


Dated: June 15, 2007

Respectfully submitted,


/s/ Michael A. Johnson
Michael A. Johnson (D.C. Bar No. 460879)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206
(202) 942-5000
(202) 942-5999 (fax)

*Attorneys for Defendants*

---

[144]    Compl. Exh. 10 at 2.

## <u>CERTIFICATE OF SERVICE</u>

I, Michael A. Johnson, hereby certify that on this 15th day of June 2007, I caused a copy of the foregoing DEFENDANTS' MOTION TO DISMISS MS. DI LELLA'S COMPLAINT, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT OF THE CLAIMS to be served via first-class mail, postage prepaid, upon:

Nicole Di Lella
48 Watchung Avenue
Upper Montclair, NJ  07043
(973) 746-7069


/s/ Michael A. Johnson
Michael A. Johnson, D.C. Bar No. 460879

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| Nicole DI LELLA,<br><br>                    Plaintiff,<br><br>         v.<br><br>UNIVERSITY OF THE DISTRICT OF COLUMBIA<br>DAVID A. CLARKE SCHOOL OF LAW, ANN<br>BISHOP RICHARDSON, AHMAD REED,<br>ACADEMIC STANDARDS COMMITTEE, and<br>SUSAN L. WAYSDORF,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.  1:07CV00747 (HHK)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**

        Defendants responded to the complaint in this action by filing on June 15, 2007 a motion to dismiss, or in the alternative, for a more definite statement.  Plaintiff responded in opposition, and defendants have replied.  The Court heard oral argument on [DATE].  Upon consideration of defendant's motion and all of the arguments offered by the parties, it is this [DATE] day of [MONTH], 2007,

        ORDERED: That defendants' motion to dismiss is hereby GRANTED.  The complaint in this action is DISMISSED.  Defendants' motion for a more definite statement is DENIED WITHOUT PREJUDICE as moot.

The clerk is hereby directed to serve a copy of this Order by first-class mail upon:

        Nicole Di Lella
        48 Watchung Avenue
        Upper Montclair, NJ  07043.

_____
United States District Judge