**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| Nicole DI LELLA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| UNIVERSITY OF THE DISTRICT OF COLUMBIA | ) |
| DAVID A. CLARKE SCHOOL OF LAW, ANN | ) Case No.  1:07CV00747 (HHK) |
| BISHOP RICHARDSON, AHMAD REED, | ) |
| ACADEMIC STANDARDS COMMITTEE, and | ) |
| SUSAN L. WAYSDORF, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

**DEFENDANTS' CONSENT MOTION TO ENLARGE TIME TO FILE REPLY BRIEF**

Defendants respectfully request that their time to file a reply brief in support of their

Motion to Dismiss or, in the Alternative, for a More Definite Statement be enlarged to Friday,

September 7, 2007 in order to preserve the 21-day interval from service of Plaintiff's brief to

which the parties previously agreed.  This is Defendants' third request for an enlargement to

preserve that interval, and it results from Plaintiffs' failure to serve her brief on August 13, 2007

as the Court's August 10 Order required.  Defendants' Counsel conferred with Plaintiff

concerning the requested enlargement; Plaintiff represented that she consented to the motion.

Good cause exists for the Court to grant this motion.  As Defendants noted in their

response to Plaintiff's motion to enlarge her time to respond to the motion to dismiss, Plaintiff

was to serve Defendants "by fax, e-mail, or hand delivery on the same day Plaintiff file[d]" her

brief, with "Defendants' reply brief . . . due 21 days thereafter."[1]  The Court ordered that

---

[1] Def's Resp. to Pl. Mtn to Enlarge (Docket No. 12).

"Plaintiff shall have up to and including August 13, 2007, *to complete filing and service* of plaintiff's response to defendants' motion to dismiss or for a more definite statement."[2]

Plaintiff missed that deadline; Defendants received nothing from Plaintiff on August 13. The following day, August 14, Defendants received a document from Plaintiff via e-mail[3] — but as Defendants immediately suspected and ultimately confirmed, that document was *not* the brief Plaintiff filed with the Court. On August 15, Defendants informed Plaintiff that "[t]he file attached to your e-mail . . . has seven pages and ends unsigned at paragraph 24," and requested that Plaintiff "confirm that the file is what you intended to send, and . . . that it is what you submitted to the Court."[4] Plaintiff did not respond that day or the following day. Accordingly, early on the morning of Friday, August 17, Defendants again requested confirmation that the file Plaintiff had e-mailed on August 14 was "what you intended to send, and . . . what you submitted to the Court."[5] Late that night, Plaintiff responded that:

> I received your email but have not reviewed the attachment. To be certain, in any event, I have attached *another copy* of the document which [I] filed. It is more than 7 pages, but not by many. That could be due to formatting or maybe not. In any event, it is the document I filed.[6]

The August 17 document is not "another copy" of what Plaintiff served August 14. The later document contains 16 pages and 54 paragraphs — more than twice the initial file[7] — reflecting

---

[2] Order (Aug. 10, 2007) (paperless) (emphasis and apostrophes added).

[3] E-mail from Di Lella to Johnson (Aug. 14, 2007) with attachment printed (copy attached as Exh. A).

[4] E-mail from Johnson to Di Lella (Aug. 15, 2007) (attachment omitted) (copy attached as Exh. B).

[5] E-mail from Johnson to Di Lella (Aug. 17, 2007) (attachment omitted) (copy attached as Exh. C).

[6] E-mail from Di Lella to Johnson (Aug. 17, 2007) (emphasis added) with attachment printed (copy attached as Exh. D).

[7] *Compare* Exh. D *with* Exh. A.

extensive differences in substance, not merely "formatting."[8]  The August 17 document

corresponds to the document Plaintiff filed with the Court; the August 14 document does not.

Defendants were not properly served with Plaintiff's opposition brief until August 17.  To

preserve the agreed 21-day briefing interval, Defendants (with Plaintiff's consent) respectfully

request that the Court enlarge to September 7, 2007 Defendants' time to file a reply.


                                        Respectfully submitted,
Dated: August 20, 2007


                                        /s/ Michael A. Johnson
                                        Michael A. Johnson (D.C. Bar No. 460879)
                                        ARNOLD & PORTER LLP
                                        555 Twelfth Street, N.W.
                                        Washington, D.C. 20004-1206
                                        (202) 942-5000
                                        (202) 942-5999 (fax)

                                        *Attorneys for Defendants*

---

[8] *Id.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Michael A. Johnson, hereby certify that on this 20th day of August 2007, I caused a

copy of the foregoing DEFENDANTS' CONSENT MOTION TO ENLARGE TIME TO FILE

REPLY BRIEF to be served via first-class mail, postage prepaid, upon:

Nicole Di Lella, *pro se*
1881 Watchung Avenue
Plainfield, NJ  07062
(908) 823-2882

/s/ Michael A. Johnson
Michael A. Johnson, D.C. Bar No. 460879

Exhibit A



**"Nicole Di Lella"**
**<n_dilella@hotmail.com>**

08/14/2007 01:31 PM

To  Michael Johnson/Atty/DC/ArnoldAndPorter@APORTER

cc

bcc

Subject  Di Lella v UDC School of Law - Complaint Supplemented and
Response to Defendant

Mr. Johnson,

    Attached, I have provided a pdf of Plaintiff's Supplemented Complaint and
Response to Defendant's Motion to Dismiss or For a More Definative Statement
which was filed late yeterday.

    Sincerely,

Nicole Di Lella



Microsoft Word - Complaint Supplemented and Response to.pdf

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Nicole DI LELLA,                                )
Plaintiff,                                      )
                                                )    Case No. 1:07CV00747 (HHK)
v.                                              )
                                                )
UNIVERSITY OF THE DISTRICT OF                   )
COLUMBIA, DAVID A. CLARKE SCHOOL OF             )
LAW,                                            )
                                                )
ANN BISHOP RICHARDSON,                          )
                                                )
AHMAD REED,                                     )
                                                )
ACADEMIC STANDARDS COMMITTEE, and               )
                                                )
SUSAN L. WAYSDORF,                              )
Defendants.                                     )
                                                )

**PLAINTIFF'S COMPLAINT SUPPLEMENTED AND RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE,
FOR A MORE DEFINITIVE STATEMENT OF CLAIM**

Nicole Di Lella
1881 Watchung Ave
Plainfield, N.J. 07062
(908) 834-2882
Pro Se Plaintiff

Dated: August 13, 2007

I. PRELIMINARY STATEMENT

In response to Opposition's Motion to Dismiss or in the Alternative, for a More Definitive Statement of Claim, Plaintiff herein incorporates and responds, in whole or in part, to supplement Plaintiff's initial Complaint. To preserve the Court's time with issue to redundancy, Plaintiff does not accept defendants version of Plaintiff's Statement of Facts as recreated under their Pertinent Factual Allegations, but does not waive the right to respond to each and all characterizations alleged at a future time and as necessary. As well, issues not raised in defendant's motion will not be addressed herein, and Plaintiff should not be barred from responding to such at a future time. The Complaint arises under:

1.      The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"). Plaintiff asserts that defendants, individually and jointly, denied Plaintiff reasonable, appropriate, effective and consistent accommodations, including, but not limited to, note taking and transcription services, which defendants acknowledged that the University of the District of Columbia David A. Clarke School of Law ("UDCSL", "the Law School" or "UDC School of Law") was obligated to provide to Plaintiff based upon evaluation and diagnoses of learning disabilities and remedial assessments, and her history of previous accommodations dating back to high school. As a result of defendants failure to comply in providing Plaintiff with reasonable, appropriate, effective and consistent accommodations, defendants compelled Plaintiff to fend for herself in seeking accommodations with full knowledge that Plaintiff would suffer and Plaintiff would be placed at an academic disadvantage without accommodation. Directly, defendants conduct excluded Plaintiff from participating in, and denied her the benefits of services, programs, and activities, of an institution of public education in violation of the ADA, see 42 U.S.C. § 12132 and 28 C.F.R. §35.130, and continues to inflict Plaintiff harm so long as defendants discriminatory action is not redressed.

2.      Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a). ("§504"). Defendants conduct described in Paragraph 1, *supra*, excluded Plaintiff from participation in, denied the benefits of, and subjected Plaintiff to discrimination under a program and activity receiving federal financial assistance in violation of §504, see 29 U.S.C. §794(a) and 34 C.F.R. §§104.43 and 104.44. Plaintiff continues to sustain harm and will so until defendants discriminatory action is redressed;

3.      The District of Columbia Human Rights Act of 1977, D.C. Code §2-1401 et seq. ("DC Human Rights Act"). Defendants conduct described in Paragraph 1, *supra*, denied, restricted abridged and conditioned the use of, and access to, the services, programs, and benefits of the UDC School of Law for a discriminatory reason, and based upon the learning disability of Plaintiff, in violation of DC Human Rights Act, see D.C. Code §2-1402.14, and continues to cause Plaintiff harm so long as it is not redressed.

This complaint assets actions under:

4.    42 U.S.C.§ 1983 ("§1983"), against administrators of the University of the District of Columbia, whose conduct described in Paragraph 1, *supra,* in their individual capacities and within the scope of their employment by the District of Columbia, deprived Plaintiff of rights and privileges secured by the Constitution, and continues to inflict Plaintiff harm so long as defendants discriminatory action is not redressed. (Failure to accommodate)

5.    Defamation, based upon the above-referenced false and defamatory Honor Code violation in Plaintiffs permanent record with directions to publish to other institutions and Bar Examiners, which revoked Plaintiff's transfer to another law school to complete her law degree, foreclosed Plaintiff's opportunity to accept admittance into a dual masters program and to complete her law degree, and precluded Plaintiff from employment opportunit(ies). Plaintiff has and will continue to effectively be denied of the opportunity to pursue a career in her law so long as defendants discriminatory action which has ascribed characteristic to Plaintiffs conduct that adversely affect Plaintiff's fitness to practice law and estimation of Plaintiffs reputation in the educational and professional community is not redressed.

6.    18 U.S.C. § 1983 Retaliation, against administrators of the University of the District of Columbia, whose conduct described in Paragraph 1, *supra,* in their individual capacities and within the scope of their employment by the District of Columbia, deprived Plaintiff of rights and privileges secured by the Constitution, and continues to inflict Plaintiff harm so long as defendants discriminatory action is not redressed.

7.    Breach of Contract D.C. Code ¶12-301(7) against the University for its failure to provide class notes in a timely manner, failure to provide note takers, failure to provide the accommodations UDCSL agreed to provide on September 15, 2003 was it issued a determining finding Plaintiff was entitled to receive specific accommodations; by failing to evaluate her academic performance in good faith and on the merits UDCSL breached the implied covenant of good faith and fair dealing.

8.    Violations of Due Process (42 U.S.C. §1983)

II.    STATEMENT OF FACTS

9.    Plaintiff, is a suspended student of UDC School of Law who was irrationally dismissed for self-accommodating her learning disability after defendants failed to provide her with and further excluded her from the benefits and services of the public education institution, the pursuit of a degree and the benefits of employment thereafter.

10. Plaintiff was known and regarded by administrators, members of the Academic Standards Committee ("ASC") and faculty, as an otherwise qualified student affected by a protected disability(ies) which substantially limited her ability to learn.

11. In her first semester of enrollment, UDCSL agreed that Plaintiff was entitled to receive accommodations and determined that "the School of Law will provide…double time to complete examinations…and extended time on written projects when necessary and requested." Compl. ¶14 and attachments. The Law School also determined that "We will provide you with a note taker." (* to be amended with Compl. ¶¶13, 17, 14 and 10).

12. When initiated accommodations deemed reasonable and unduly acquirable were not provided despite UDCSL's obligation *to ensure compliance with its* own arrangements, Plaintiff took steps to inform each or all named defendants responsible - individually, jointly, or otherwise in a position to make necessary modifications to prevent Plaintiff from being excluded from benefits and services of the Law School, and allow her to receive a meaningful opportunity to participate in classroom lectures, discussions, assignments and academic activities available to students otherwise "abled." *(See* Compl.¶11 and attachments) (On some or all occasions to include the Academic Dean and the Law School's Disability Service Coordinator, Ann Richardson, the University of the District of Columbia's Director of Services for Students with Disabilities, Ahmad Reed, individual faculty whom taught Plaintiff in a class, including Susan Waisdorf, and ASC members Edward Allen and Tom Mack.) Although defendants at all times shared in the duty to prevent Plaintiff from conduct that would subject Plaintiff to discrimination based on her disability, defendants individually or jointly, willfully and knowingly withheld, denied, restricted, abridged and conditioned the use of and access to services which would have allowed Plaintiff to benefit from the academic setting. When Plaintiff notified defendant professors* that accommodations were not being provided, specifically, that she had not received lecture transcripts or class notes to which she relied on and to which she was entitled to in order to fully participate in class instructions; and when she attempted to initiate a collaborative effort with her professor(s) when a reasonable alterative or appropriate modification could be effectuated to prevent Plaintiff from further discrimination as a result of the University's failure to accommodate her disability, Plaintiff was admonished, treated less favorably, discriminated against and academically penalized for evoking, or relying on the services of her accommodation to which she was entitled to offset the impairments imposed by her disabilities.

13. During Plaintiff second year in the fall of 2004, unable to maintain the note taker program implemented with mediocre to failing success during Plaintiff's first year of attendance, UDCSL offered to provide transcription services as a reasonable modification to Plaintiffs accommodation for notes or to provide in written form, an account of her professor's classroom lectures and instruction. Under the provisions established by the Law School, Plaintiff was required and did purchase the tape recording

device(s) which she used to record lectures and the cassette tapes onto which each lecture had to be submitted to the University for transcription, even though the equipment available to Plaintiff for purchase was inferior to microphones and recording devices available to UDCSL to audibly capture lectures for complete and accurate transcription. In cases where Plaintiff recordings were not of sufficient quality, or in an incompatible format, Plaintiff lost the opportunity of the services and benefits to which the provision was addressed to provide, - which is the simple conversion of audio information to written text. Yet, tapes that were recorded by Plaintiff that were of sufficient quality still were not transcribed timely or at all.

14. In the following Spring semester, 2005, accommodations which were previously administered though the Law School's Disability Service Coordinator, Ann Richardson, were forwarded to the University of the District of Columbia's undergraduate department of Services for Students with Disabilities, directed by Ahmad Reed. For the same and similar reasons, yet producing even fewer class transcriptions, Defendants failed to provide the accommodations to which they were required to provide and offered as a reasonable modification, thereby excluding Plaintiff from fully participating in and benefiting from the education and those specific classes to which she had paid and was entitled to from the Law School.

15. As a result of discrimination and a failure to provide accommodation, plaintiff semesters were prolong as she was made to wait often after the course had commenced to obtain written transcriptions of class discussion, which she was required to have in order to prepare for each successive lecture, yet excluded from and denied the meaningful opportunity to participate in discussions as a result of UDCSL's failure to provide Plaintiff with the reasonable accommodation they were required to provide in their service as a public education institution.

16. The perpetuated unreliability and consistent untimely ness under which accommodations were administered disrupted Plaintiff's matriculation, excluded her enrollment in year and semester appropriate courses and programs with standard prerequisite requirements, excluded or limited her eligibility to participate in preferred programs and programs offering certifications to acquire skills that supported or advanced academic success. As a direct result of these delays or failures, Plaintiff's opportunities were precluded to basic, lower level academic programs. Consistent with students who are placed on academic probation, Plaintiff's exclusion portrayed her as unqualified or academically restricted due to poor performance , thereby, subjecting her to discriminatory criticism from faculty members and her peers. It now prevents Plaintiff from obtaining a degree.

17. Moreover, and precipitated as a result of Plaintiff's "accommodated status" based on her disability, Plaintiff was forced to tolerate professors unavailability or unwillingness to explain, review or timely grade her "late" work, and consequently was less successful in addressing potential occasions where evidence of disparate grading standards were employed to minimize Plaintiff academic merit and/ or ensure

Plaintiff did not receive more than satisfactory letter grades. Despite the grade procedures illustrated in the Handbook, Plaintiff was academically penalized and discriminated against because of her disability status.

18.    During the Spring 2005 semester Plaintiff was a student in Professor Susan Waisdorf Constitutional Law class and was entitled to receive written transcription of her course. Despite a two week period during which the university employed an undergraduate student to record Plaintiffs lectures by attending Plaintiff classes with specific direction from the university and university equipment which Plaintiff was then given to use for the same purpose, the University failed to produce a single transcription and to accommodate Plaintiff disability requiring the provision of written notes or transcription of lectures. Upon disclosing the failed attempt to provide Plaintiff with class notes professor acknowledged Plaintiff disadvantage, however, was quickly and adamantly unwilling to modification or make available additional resources which would have prevented or mitigated further university discrimination in failing to accommodate Plaintiff learning disability and could have afforded Plaintiff the meaningfully opportunity to participating in her class.

19.    In part and practice, when the mid-term was given to plaintiffs classmates, defendants failure to accommodate restricted Plaintiff participation in the pace and progression of the class, and was forced to augment her academic schedule around the availability and quality of the transcription service in order to obtain and effectively utilize the accommodation. As a result of Plaintiff's separate testing schedule, Plaintiff 's lack of transcribed notes and Professor Susan Waisdorf rejection of Plaintiff request to utilize other materials that were available to substitute the provision for written notes, defendant willfully and intentionally admonished Plaintiff in front of her peers. As a result, defendant conduct deprived Plaintiff of her anonymity and recklessly revealed Plaintiff's confidentiality and status as a classified student without permission or just cause.

20.    On February 10, 2006 and again on February 27th, 2006 the ASC issued their determination finding Plaintiff guilty of plagiarism and cheating on an exam. Plaintiff was sentenced to a one year suspension beginning in August, 2006 and to run until the following August 2007. The initial allegations against Plaintiff were made in October 2005 and from that point forward plaintiffs academic record was stained with a grade of an F in Constitutional Law II and impending allegations of misconduct. In addition to the one year suspension which is a defacto punishment for one year and 10 months, the suspension is a de facto expulsion preventing Plaint return to UDCSL with sufficient time to attain her degree under UDCSL's five year completion limitation. The ASC's decision instructs the Academic Dean and Registrar "to inform Bar Associations in which I seek admission", "in response to Character and Fitness boards inquires or forms required by bar examiners", that my "student's record reflects a violation of the Honor code resulting from the student's plagiarism and cheating on an exam". (Honor Code § 6 ). The Committee further urges that their decision to be placed in my permanent file, and directs the Dean and Registrar's office "to include in

any formal letter of good standing submitted to another institution the statement provided above" or "any such inquires directed to them".

21. The false and defamatory Honor Code violation in Plaintiffs permanent record with directions to publish to other institutions and Bar Examiners; terminated offer Plaintiff had to transfer to another law school to complete her law degree, foreclosed Plaintiff's opportunity to accept admittance into a dual masters program and to complete her law degree, and precludes Plaintiff from employment opportunit(ies) to which she was previously qualified and sought after.

22. Plaintiff has and will continue to effectively be denied of the opportunity to complete her degree and to pursue a career in law so long as defendants discriminatory action which has ascribed characteristic to Plaintiffs conduct that adversely affect Plaintiff's fitness to practice and estimation of Plaintiffs reputation in the educational and professional community is redressed.

23. On April 21, 2006 UDC School of Law reported the faculty's decision to deny Plaintiff's petition to review the ASC's February 27, 2006 decision, thereby working within and exhausting all remedies available though the University's process. The initiation of the complaint seeking relief from the Court then is appropriate and with authority to review the disciplinary decision imposed here, not for subjective grade infractions or academic deference to students performance, but to oversee a judicial process under which boards and committees of educators preside over grades. Yet, where a students liberty, good name, education and future standing in his community is evoked or infringed under the guise of an academic determination the Court will be able to best judge whether due process was delivered or some other discriminatory motive unrelated to academic performance drove the action to such end.

24. In its decision to preserve the ASC's action against Plaintiff, the University willfully and knowingly promulgated a discriminatory charge of misconduct based on factually incorrect and unsupported conclusions of an unqualified and inappropriate assessment framed by an individual professor's personal, speculative and discriminatory attitude concerning the manifestation and appropriateness of accommodations, medically diagnosed learning disorders and the effectiveness and acceptance of learning patterns exhibited by Plaintiff and the general population afflicted with a learning disability. Despite contrary information provided by a creditable learning specialist and information later presented to show that the basis of the decision was also contradicted by the law schools own practices which in fact advanced as a practical learning tool, the very same instruction to which the Committee held was plausible, suggests Committees motive was not based on correcting an academic deficiency but rather to expel Plaintiff for entirely other reason unrelated to her performance.

Exhibit B



**Michael Johnson/Atty/DC/ArnoldAndPorter**

08/15/2007 05:08 PM

To "Nicole Di Lella" <n_dilella@hotmail.com>, pmcdonald@paulhastings.com, "Shannon Davis Hunter" <Shannon_Davis_Hunter@aporter.com>

cc

bcc

Subject Re: Di Lella v UDC School of Law - Complaint Supplemented and Response to Defendant

Ms. Di Lella,

The file attached to your e-mail (which appears below) has seven pages and ends unsigned at paragraph 24. So that I can be certain I have received the entire document you submitted, pease confirm that the file below is what you intended to send, and please confirm that it is what you submitted to the Court. Many thanks.

-Michael Johnson

Exhibit C



**Michael Johnson/Atty/DC/ArnoldAndPorter**

08/17/2007 07:38 AM

To  "Nicole Di Lella" <n_dilella@hotmail.com>, "Michael Johnson" <Michael_Johnson@aporter.com>, pmcdonald@paulhastings.com, "Shannon Davis Hunter"

cc

bcc

Subject  Re: Di Lella v UDC School of Law - Complaint Supplemented and Response to Defendant

Ms. Di Lella,

As I noted in my e-mail Wednesday, the file attached to your e-mail (which appears below) has seven pages and ends unsigned at paragraph 24. So that I can be certain I have received the entire document you submitted, in my Wednesday e-mail I asked you to pease confirm that the file below is what you intended to send, and to please confirm that it is what you submitted to the Court. I have not received your response  I would appreciate a reply at your earliest convenience. Many thanks.

-Michael Johnson


----- Original Message -----
From: "Nicole Di Lella" [n_dilella@hotmail.com]
Sent: 08/14/2007 01:31 PM
To: Michael Johnson/Atty/DC/ArnoldAndPorter@APORTER
Subject: Di Lella v UDC School of Law - Complaint Supplemented and Response to Defendant

Mr. Johnson,

   Attached, I have provided a pdf of Plaintiff's Supplemented Complaint and Response to Defendant's Motion to Dismiss or For a More Definative Statement which was filed late yeterday.

   Sincerely,


Nicole Di Lella

Exhibit D



**"Nicole Di Lella"**
**<n_dilella@hotmail.com>**

08/17/2007 09:23 PM

To  Michael_Johnson@aporter.com

cc

bcc

Subject  Re: Di Lella v UDC School of Law - Complaint Supplemented and Response to Defendant

History:  ☺ This message has been replied to and forwarded.

Hello Mr. Johnson.

I received your email but have not reviewed the attachment.  To be certain, in any event,  I have attached another copy of the document which filed. It is more than 7 pages, but not by many.That could be due to formatting or maybe not. In any event, it is the document I filed.

I hope you are enjoying a relaxing vacation. Have a great weekend.


Nicole Di Lella




From: Michael_Johnson@aporter.com
To: "Nicole Di Lella" <n_dilella@hotmail.com>,"Michael Johnson"
<Michael_Johnson@aporter.com>,pmcdonald@paulhastings.com,"Shannon Davis
Hunter" <Shannon_Davis_Hunter@aporter.com>
Subject: Re: Di Lella v UDC School of Law - Complaint Supplemented and
Response to Defendant
Date: Fri, 17 Aug 2007 07:38:18 -0400

Ms. Di Lella,

As I noted in my e-mail Wednesday, the file attached to your e-mail (which
appears below) has seven pages and ends unsigned at paragraph 24. So that I
can be certain I have received the entire document you submitted, in my
Wednesday e-mail I asked you to pease confirm that the file below is what
you intended to send, and to please confirm that it is what you submitted to
the Court. I have not received your response  I would appreciate a reply at
your earliest convenience. Many thanks.

-Michael Johnson



----- Original Message -----
From: "Nicole Di Lella" [n_dilella@hotmail.com]
Sent: 08/14/2007 01:31 PM
To: Michael Johnson/Atty/DC/ArnoldAndPorter@APORTER
Subject: Di Lella v UDC School of Law - Complaint Supplemented and Response
to Defendant

Mr. Johnson,

Attached, I have provided a pdf of Plaintiff's Supplemented Complaint and Response to Defendant's Motion to Dismiss or For a More Definative Statement which was filed late yeterday.

Sincerely,

Nicole Di Lella



Microsoft Word - Complaint Supplemented Response.pdf

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Nicole DI LELLA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:07CV00747 (HHK) |
| UNIVERSITY OF THE DISTRICT OF COLUMBIA, | ) | |
| DAVID A. CLARKE SCHOOL OF LAW, | ) | |
| ANN BISHOP RICHARDSON, | ) | |
| AHMAD REED, | ) | |
| ACADEMIC STANDARDS COMMITTEE, and | ) | |
| SUSAN L. WAYSDORF, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMPLAINT SUPPLEMENTED AND RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE,
FOR A MORE DEFINITIVE STATEMENT OF CLAIM**

Nicole Di Lella
1881 Watchung Ave
Plainfield, N.J. 07062
(908) 834-2882
Pro Se Plaintiff
Dated: August 13, 2007

- 1 -

PRELIMINARY STATEMENT

In response to Opposition's Motion to Dismiss or in the Alternative, for a More Definitive Statement of Claim, Plaintiff herein incorporates and responds, in whole or in part, to supplement Plaintiff's initial Complaint. To preserve the Court's time with issue to redundancy, Plaintiff does not accept defendants version of Plaintiff's Statement of Facts as recreated under their Pertinent Factual Allegations, but does not waive the right to respond to each and all characterizations alleged at a future time and as necessary. As well, issues not raised in defendant's motion will not be addressed herein, and Plaintiff should not be barred from responding to such at a future time. The Complaint arises under:

1.      The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"). Plaintiff asserts that defendants, individually and jointly, denied Plaintiff reasonable, appropriate, effective and consistent accommodations, including, but not limited to, note taking and transcription services, which defendants acknowledged that the University of the District of Columbia David A. Clarke School of Law ("UDCSL", "the Law School" or "UDC School of Law" ) was obligated to provide to Plaintiff based upon evaluation and diagnoses of learning disabilities and remedial assessments, and her history of previous accommodations dating back to high school. As a result of defendants failure to comply in providing Plaintiff with reasonable, appropriate, effective and consistent accommodations, defendants compelled Plaintiff to fend for herself in seeking accommodations with full knowledge that Plaintiff would suffer and Plaintiff would be placed at an academic disadvantage without accommodation. Directly, defendants conduct excluded Plaintiff from participating in, and denied her the benefits of services, programs, and activities, of an institution of public education in violation of the ADA, see 42 U.S.C. § 12132 and 28 C.F.R. §35.130, and continues to inflict Plaintiff harm so long as defendants discriminatory action is not redressed. (

2.      Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a). ("§504"). Defendants conduct described in Paragraph 1, *supra*, excluded Plaintiff from participation in, denied the benefits of, and subjected Plaintiff to discrimination under a program and activity receiving federal financial assistance in violation of §504, see 29 U.S.C. §794(a) and 34 C.F.R. §§104.43 and 104.44. Plaintiff continues to sustain harm and will so until defendants discriminatory action is redressed;

3.      The District of Columbia Human Rights Act of 1977, D.C. Code §2-1401 et seq. ("DC Human Rights Act"). Defendants conduct described in Paragraph 1, *supra*, denied, restricted abridged and conditioned the use of, and access to, the services, programs, and benefits of the UDC

School of Law for a discriminatory reason, and based upon the learning disability of Plaintiff, in violation of DC Human Rights Act, see D.C. Code §2-1402.14, and continues to cause Plaintiff harm so long as it is not redressed.

This complaint assets actions under:

4.    42 U.S.C.§ 1983 ("§1983"), against administrators of the University of the District of Columbia, whose conduct described in Paragraph 1, *supra,* in their individual capacities and within the scope of their employment by the District of Columbia, deprived Plaintiff of rights and privileges secured by the Constitution, and continues to inflict Plaintiff harm so long as defendants discriminatory action is not redressed. (Failure to accommodate)

5.    Defamation, based upon the above-referenced false and defamatory Honor Code violation in Plaintiffs permanent record with directions to publish to other institutions and Bar Examiners, which revoked Plaintiff's transfer to another law school to complete her law degree, foreclosed Plaintiff's opportunity to accept admittance into a dual masters program and to complete her law degree, and precluded Plaintiff from employment opportunit(ies). Plaintiff has and will continue to effectively be denied of the opportunity to pursue a career in her law so long as defendants discriminatory action which has ascribed characteristic to Plaintiffs conduct that adversely affect Plaintiff's fitness to practice law and estimation of Plaintiffs reputation in the educational and professional community is not redressed.

6.    18 U.S.C. § 1983 Retaliation, against administrators of the University of the District of Columbia, whose conduct described in Paragraph 1, *supra,* in their individual capacities and within the scope of their employment by the District of Columbia, deprived Plaintiff of rights and privileges secured by the Constitution, and continues to inflict Plaintiff harm so long as defendants discriminatory action is not redressed.

7.    Breach of Contract D.C. Code ¶12-301(7) against the University for its failure to provide class notes in a timely manner, failure to provide note takers, failure to provide the accommodations UDCSL agreed to provide on September 15, 2003 was it issued a determining finding  Plaintiff was entitled to receive specific accommodations;  by failing to evaluate her academic performance in good faith and on the merits UDCSL breached the implied covenant of good faith and fair dealing.

8.    Violations of Due Process (42 U.S.C. §1983)

I.          **STATEMENT OF FACTS**

9.      Plaintiff is a suspended student of UDC School of Law who was irrationally dismissed for self-accommodating her learning disability after defendants failed to provide her with and further excluded her from the benefits and services of the public education institution, the pursuit of a degree and the benefits of employment thereafter.

10.     Plaintiff was known and regarded by administrators, members of the Academic Standards Committee ("ASC") and faculty, as an otherwise qualified student affected by a protected disability(ies) which substantially limited her ability to learn.

11.     In her first semester of enrollment, UDCSL agreed that Plaintiff was entitled to receive accommodations and determined that "the School of Law will provide...double time to complete examinations...and extended time on written projects when necessary and requested." Compl. ¶14 and attachments. The Law School also determined that "We will provide you with a note taker." (* to be amended with Compl. ¶¶13, 17, 14 and 10).

12.     When initiated accommodations deemed reasonable and not unduly acquirable were not provided despite UDCSL's obligation to ensure compliance *with its* own arrangements, Plaintiff took steps to inform each or all named defendants responsible - individually, jointly, or otherwise in a position to make necessary modifications to prevent Plaintiff from being excluded from benefits and services of the Law School, and allow her to receive a meaningful opportunity to participate in classroom lectures, discussions, assignments and academic activities available to students otherwise "abled." [1] Although defendants at all times shared in the duty to prevent Plaintiff from conduct that would subject her to discrimination based on her disability, defendants individually or jointly, willfully and knowingly withheld, denied, restricted, abridged and conditioned the use of and access to services that would have allowed Plaintiff to benefit from the academic setting. When Plaintiff notified defendant professors that accommodations were not being provided, specifically, that she had not received lecture transcripts or class notes to which she relied on and to which she was entitled to in order to fully participate in class instructions, and; when she attempted to initiate a collaborative effort with her professors when a reasonable alterative or appropriate modification could be effectuated to prevent Plaintiff from further discrimination as a result of the University's failure to accommodate her disability, Plaintiff was admonished, treated less favorably, discriminated against and academically penalized for evoking, or relying on the services of her accommodation to which she was entitled to offset the impairments imposed by her disabilities.

---

[1]. *See* Compl.¶11 and attachments.

13.      During Plaintiffs second year in the fall of 2004, unable to maintain the note taker program implemented with mediocre to failing success during Plaintiff's first year of attendance, UDCSL offered to provide transcription services as a reasonable modification to Plaintiff's accommodation for notes or to provide in written form, an account of her professor's classroom lectures and instruction. Under the provisions established by the Law School, Plaintiff was required and did purchase the tape recording device(s) which she used to record lectures and the cassette tapes onto which each lecture had to be submitted to the University for transcription, even though the equipment available to Plaintiff for purchase was inferior to microphones and recording devices available to UDCSL to audibly capture lectures for complete and accurate transcription. In cases where Plaintiff's recordings were not of sufficient quality, or in an incompatible format, Plaintiff lost the opportunity of the services and benefits to which the provision was addressed to provide, - which is the simple conversion of audio information to written text. Yet, tapes that were recorded by Plaintiff that were of sufficient quality still were not transcribed timely or at all.

14.      In the following 2005 Spring semester, accommodations which were previously administered though the Law School's Disability Service Coordinator, Ann Richardson, were forwarded to the University of the District of Columbia's undergraduate department of Services for Students with Disabilities, directed by Ahmad Reed. For the same and similar reasons, yet producing even fewer class transcriptions, Defendants failed to provide the accommodations to which they were required to provide and offered as a reasonable modification, thereby excluding Plaintiff from fully participating in and benefiting from the education and those specific classes to which she had paid and was entitled to from the Law School.

15.      As a result of discrimination and a failure to provide accommodation, Plaintiff 's semesters were prolonged as she was made to wait often after her courses had commenced to obtain the written transcriptions. Contraindicative to its purpose, the untimelyness not only caused Plaintiff unnecessary exclusion from participating in other programs but lessened the effectiveness of the accommodation and her ability to participate fully in her course instructions. Without the conversion into written form classes and instructions that were delivered orally, the rigor Plaintiff was challenged with came not from the academic curriculum but in how successful Plaintiff could be in working around or struggling through the condition which dis-abled or impaired Plaintiff's auditory processing functions.[2] In order to alleviate the disability, transcriptions were facilitated to allow her

---

[2] Loosely speaking, this a simple, non-medical explain of Plaintiff's learning disability based on the documentation and history of her condition, which is a common disability often discussed in popular media and widely available sources of discussions concerning general classes and impairment associated with of learning disabilities.

to receive the information in a direct way so that her performance and syntheses of material could be measured and not the degree to which the disability prevented her receipt of information. Transcriptions were deemed necessary and reasonable *but timely* as well. Timely so that Plaintiff was able to receive the lessons shortly after each class and prior to the next and equally in line with her classmates to participate in class discussions and assignments. Again, as this was not done Plaintiff was excluded from and denied the meaningful opportunity to enjoy the programs of the educational institution as a result of UDCSL's failure to provide Plaintiff with class transcription in a timely manner or at all.

16.    The perpetuated unreliability and consistent untimelyness under which accommodations were administered, further, disrupted Plaintiff's matriculation, excluded her enrollment in year and semester appropriate courses and programs with standard prerequisite requirements, and; excluded or limited her eligibility to participate in preferred programs and programs offering certifications to acquire skills that supported or advanced academic objectives. As a direct result of these delays or failures, Plaintiff's opportunities were precluded to fewer, basic, lower level academic programs. Consistent with students who are placed on academic probation, Plaintiff's exclusion portrayed her as unqualified or academically restricted due to poor performance . Subsequently and as a result of accommodating Plaintiff because of her disability, she was portrayed and regarded as scholastically less fit or under qualified, when in fact, her academics were not at issue. Plaintiff sustained discrimination from faculty members and eventually her classmates. It is this discrimination that now prevents Plaintiff from obtaining a degree.

17.    Further precipitated as a result of Plaintiff's "accommodated status" based on her disability, Plaintiff was forced to tolerate excuses from professors ranging from simply "unavailable to discuss" or "unwillingness to explain" or refusal to "repeat an explanation more than once" to refusals to review or timely grade her "late" work. Consequently, Plaintiff was less successful in addressing potential occasions where evidence of disparate grading standards were employed to either minimize Plaintiff academic merit and/ or ensure Plaintiff did not receive more than satisfactory letter grades.    There is evidence that Plaintiff was academically penalized and discriminated against because of her disability in several courses.

18.    During the Spring 2005 semester Plaintiff was a student in Susan Waysdorf Constitutional Law II class and was entitled to receive written transcriptions throughout her course. Despite a two week period during which the University employed an undergraduate student to record Plaintiffs lectures by attending her classes with specific direction from the University and using

- 6 -

University equipment, which Plaintiff was then given to use for the same purpose, the University failed to produce a single transcription and to accommodate Plaintiff's disability. Upon disclosing this information to Susan Waysdorf, she acknowledged Plaintiff's disadvantaged position, however, was quickly and adamantly unwilling to modify or make available additional resources which would have prevented or mitigated the further loss of accommodation and Plaintiff's opportunity to receive meaningful information.

19.    In part and practice, when the mid-term was given to Plaintiff's classmates, defendants failure to accommodate restricted Plaintiff participation in the pace and progression of the class, and was forced to augment her academic schedule around the availability and quality of the transcription service in order to obtain and effectively utilize the accommodation. As a result of Plaintiff's separate testing schedule, Plaintiff 's lack of transcribed notes and Professor Susan Waysdorf rejection of Plaintiff's request to utilize other materials that were available, such as her outlines or talking points, to substitute the provision for written notes, defendant willfully and intentionally used her time in front of plaintiff's class to admonish and speak freely about Plaintiff's academic affairs for no reason other than to harass her. As a result, defendants conduct deprived Plaintiff of her anonymity and recklessly revealed Plaintiff's confidentiality and status as a classified student without permission or just cause.

20.    On February 10, 2006 and again on February 27th, 2006 the ASC issued their determination finding Plaintiff guilty of plagiarism and cheating on an exam. Plaintiff was sentenced to a one year suspension beginning in August, 2006 and to run until the following August 2007. The initial allegations against Plaintiff were made in October 2005. For almost three months while the Committee cancelled and postponed the hearing date, Plaintiffs academic record was flagged for impending allegations of misconduct and an F in Constitutional Law II. In a perfect example of bad faith, a one year suspension was imposed. However, despite the fact that the committee delayed for three months before hearing the case, and the ASC barred Plaintiff from registering in the new 2 week old semester until the hearing was held the, the Committee saw its way to start the clock at the beginning the following regular semester 6 months later. They further sanctioned Plaintiff by seeing to it that her file displayed the charges of plagiarism and cheating for a full 10 months before. Lastly, the suspension was a de facto expulsion, as the Committee made sure the suspension period was just long enough to preclude Plaintiff from finishing her degree at  UDCSL within the time frame permitted by the Law School to complete the degree program.

21.    The ASC's decision instructs the Academic Dean and Registrar "to inform Bar

- 7 -

Associations in which I seek admission", "in response to Character and Fitness boards inquires or forms required by bar examiners", that Plaintiff "student's record reflects a violation of the Honor code resulting from the student's plagiarism and cheating on an exam". (Honor Code § 6 ). The Committee further urges that their decision to be placed in her permanent file, and directs the Dean and Registrar's office "to include in any formal letter of good standing submitted to another institution the statement provided above" or "any such inquires directed to them".

22.     The false and defamatory statements made by the ASC are maintained in Plaintiff's permanent record, with instruction to publish those statements to other institutions and Bar Examiners. Prior to the Decision being rendered, Dean Richardson was contacted by Seton Hall School of Law, to inform the School that Ms. Di Lella had requested and had been accepted to transfer to their program immediately. Upon information, and without Ms. Di Lella's permission, it is believed that Dean Richardson disclosed statements concerning the accusations of the plagiarism charges. Further, the Committee was not in receipt of or had they reviewed her Response to the allegations, according to Edward Allen. If such were the case, then the only information Dean Richardson could communicate to Seton Hall would have been based solely on the allegations and subsequent conversation with Susan Waysdorf. To that end, any dissemination of information from the Law School to Seton Hall or otherwise concerning the allegations of the charges at that time could only be subjective and accusatory statements with out the benefit of Plaintiff's defense.

Plagiarist and cheater on their face "sound to the dis-reputation" of Plaintiff 's character. Dean Richardson's unauthorized communication with Seton Hall as to the Plaintiff charges caused irreparable harm terminating her offer to what might have been the last opportunity she had to complete her law degree in the wake of explusion from UDCSL.

24.     On April 21, 2006 UDC School of Law reported the faculty's decision to deny Plaintiff's petition to review the ASC's February 27, 2006 decision, thereby working within and exhausting all remedies available though the University's process. The initiation of this Complaint seeking relief from the Court is appropriate and with authority to review the disciplinary decision imposed here, then, not under the directive to correct an "academic decision" seeped in subjective evaluations or qualification reviews, but to oversee and correct a judicial process under which a committee not of facts and laws but academic administrators assert was fair and due. When a students' liberty, good name, education and future standing in her community is evoked or infringed under the guise of an academic determination, the Court and not an a teaching tribunal is the right forum to judge whether the necessary procedural safeguards were available and made meaningful use of before an individual is deprived of those constitutionally protected liberties by the state.

- 8 -

25.    In its decision to preserve the ASC's action against Plaintiff, the University willfully and knowingly promulgated a discriminatory charge of misconduct based on factually incorrect and unsupported conclusions of an unqualified and inappropriate assessment framed by an individual professor's personal, speculative and discriminatory attitude concerning the manifestation and appropriateness of accommodations, medically diagnosed learning disorders and the effectiveness and acceptance of learning patterns exhibited by Plaintiff and the general population afflicted with a learning disability. Despite contrary information provided by a creditable learning specialist and information later presented to show that the basis of the decision was also contradicted by the law schools own practices, which, in fact, advances as a practical learning tool, the very same instruction to which the Committee held was implausible, suggests that the Committee's motive was not based on correcting an academic deficiency but rather to expel Plaintiff for entirely other reasons unrelated to her performance.

26.    Without having to look further than the ASC opinion and Plaintiff's explanation in response to the charges brought against her, this matter begins and ends, unfortunately, but ironically, with discrimination.  On the front, is a student entitled to receive accommodations from a state university because of a learning disability.  Although UDC School of Law should have provided accommodations timely and consistently because it had an obligation to do so, it did not. In the wake of their failure and to abate her complaints, Plaintiff was asked to sympathize with the Law Schools proffered excuse of financial hardship as they were seeking ABA accreditation and funds to build a library. However, because Plaintiff required the accommodations to which she was entitled and eventually was excluded from participating in higher level courses and programs at the Law School because services were untimely, and because Plaintiff could not circumvent the limitations of her disability, a new curriculum and a staff that was uncooperative, moreover, despondent and unconcerned with her progress, Plaintiff became assertive. By limiting or conditioning the availability of ,for example, written notes and transcriptions of class lectures to offset the inflicting impairments, UDC School of Law knowingly disadvantaged Plaintiff by precluding her from class discussions, clinics and community opportunities, while her professors did less to help her in their class.    When Plaintiff made a complaint to Dean Ann Richardson against Susan Waysdorf for publicly admonishing her and disclosing her as a classified student in front of her classmates, Susan Waysdorf filed a complaint in retaliation against her. While on its face the accusation of plagiarism and cheating on an exam appear as an exercise of academic discretion, the motive to craft such offenses out of the circumstances was ill-will and discriminatory. The resulting consequences and further unjust action against Plaintiff was the ASC's decision to suspend her for almost 2 years and place in her permanent record a statement of guilt which was rendered in a  straight forward decision

attacking Plaintiff and finding her study habits "implausible" because she is learning disabled. This case is nothing more and nothing less than intentional discrimination on the basis of a disability and it should not be given deference because the conclusion was written on academic letter head. This is not about academics, but rather stopping discrimination at the institutional level by holding individuals entrusted with a duty and professional obligation to educate fairly, honestly and without prejudice to that responsibility. When something as blatant as this offense comes to, the Court must use the opportunity to remind academia that their halls are not impervious to the laws that they teach.

27.     Plaintiff has, and will continue to effectively be, denied the opportunity to complete her degree and to pursue a career in law, as long as defendants discriminatory decision ascribing characteristics to Plaintiffs conduct that adversely affect her fitness to practice and lower her reputation in the educational and professional community is permitted to stand without review.

28.     Moreover and until her record is expunged, defendants actively, willfully and maliciously forces her to abandon aspirations and life goals because the stain on her record prevents her for accepting employment to which she worked to put herself into position for and to which she was qualified but for UDCSL's intentional infliction of harm. Undoubtly, Ms. Di Lella will be called to explain the University charges, through points in her life. However, as a consequent of their wrongful action UDC School of Law not only sanctioned a stigma of questionable character associated with the charges , but forces her now to also loose the confidentially of having a learning disability which illicit public criticism of another type. All due to her "implausible" learning skills, to which she will now also have to justify again and again.

## II.    PLAINTIFF DID NOT RECEIVE ADEQUATE PROCEDURAL PROTECTION AND WAS NOT AFFORDED FAIR AND MEANINGFUL DUE PROCESS.

29.     Plaintiff has a liberty interest in, and a right to protect, her good name, reputation and integrity, which the ASC knowingly stigmatized when it brought charges against Plaintiff then in disregard of the facts and circumstances of the case rendered an arbitrary and capricious decision.

30.     The sanctions imposed by the committee are more than de minus. The procedural safeguards of the Fourteenth Amendment should have been provided but were not. As a result, she was denied access to a public education, and an opportunity to participate in the judicial proceedings. Plaintiff has a claim of Due Process. [3]

31.     The process utilized and the decision rendered by the ASC displays a gross failure of due process. Procedural safeguards were missing, inadequate or else ignored.

---

[1] The procedural safeguards of the Fourteenth Amendment apply to academic disciplinary matters when a student faces the punishment of suspension or expulsion. Greenhill v. Bailey, 378 F. Supp. 632 (S.D. Iowa 1974).

32.     The opinion issued by ASC states in its finding of plagiarism, a duplication of the complaint submitted by Susan Waysdorf in a word-for- word lifting, ironically without attribution or quotations, and offers or suggest should be construed as an explanation for their academic sanction: A baseless yet discriminatory statement implicating Plaintiffs disability In so much as the committee opinion fails to or attempts to present its conclusion, it offers only a reiteration of the complaint submitted by Susan Waysdorf and a cursory distortion of the hearing which it offers as its finding of fact. [4]

33.     Where Plaintiff's punishment was more than de minus ASC should have allowed and/or provided Plaintiff with, and not limited to : an opportunity to inspect the evidence;  a explanation of the charges and not a recital of allegations[5]; evidence of guilt obtained should be competent and not by guess; a detailed explanation of the evidence relied on[6] and not speculation or conclusion draw as evidence; an explanation of the facts which were relied on and not speculation or conclusion drawn as; an opportunity to respond to the evidence; an opportunity to respond to an allegation that may be used to assert guilt; evidence to show the committee weighed the evidence and position offered by  Plaintiff; and fair notice and the opportunity to present a witness with the qualifications to present testimony about learning disabilities if the decision was going to rest on those issues; and an unbiased panel.

34.     On Plaintiff's behalf, the ASC's opinion offers a mischaracterized defense contrary to the written and oral facts which she presented and attested to with supporting documentation which the ASC did not question or object to. Further erroneous, the opinion grounds itself on a factually incorrect and uninformed conclusion about learning disabled students and normal study habits, an issue the committee is not expert or qualified to  determine. [7]

35.     In light of what was given to the ASC, and was acknowledged to be true, and what the ASC  misconstrued in their opinion to support a contrary and injurious decision in result represents a substantial departure from academic norms, is without any rational basis and does not satisfy the level of due process that should have been accorded her.

---

[4] Comp. ¶ 18 Exh. M

[6] "We agree with Supreme Court that due process entitled petitioner to a statement detailing the factual findings and the **evidence** relied upon by the decision-maker in reaching the determination of guilt. This has been recognized as one of the "rudimentary elements of fair play". Dixon v Alabama State Bd. of Educ., 294 F2d 150, 159,

[7] Comp. ¶ 18 at 8.

36.    It is important to note the absence of a record here.[8]   On two points: First, there is no indication in the decision and no record which shows that the Committee considered or consulted a learning specialist or person at the university whose job it was to formulate appropriate accommodations before it issued its conclusion resting on Plaintiff's learning disability. Second, is the disingenuous of UDC School of Law in it's attempt to portray or characterize this lawsuit as "The Second-Excuse" defense in a list of "ingenious legal theories Ms. Di Lella spins to explain (*away*) her plagiarism" .[9] To suggest the issue of Plaintiff 's learning disability as new, is amiss. In fact, Plaintiff has acted in goof faith at all times and has tried to avoid litigation of this matter for some time. To ask the Court and Plaintiff to provide a more definitive statement of the claims such that defendants are given notice of the issues to which they are required to respond purports to offer that defendants were previously unaware of the allegations of discriminatory conduct and failure to accommodate. To the contrary.

37.    The issue - Plaintiff's disability,  is only remarkable in the context of the Honor Code Hearing  as it relates to the overall decision.  On the date of the Hearing, before which the Committee had plenty of opportunity to arrange for someone or something to record or take notes of the session, nothing was provided. 2. When Ms. Di Lella asked whether someone was taking notes, or whether transcriptions were going to be provided for her, Edward Allen responded by commenting that "We take our own notes here." Plaintiff's counsel, Charles Goldman, later noted that it was a derogatory statement referring to Ms. Di Lella's disability and the subsequent requirement of a note taker.  [10]

38.    During discussion in the Hearing, the issue of Ms. Di Lella's notes, specially, why she typed them was raised and she was asked to elaborate.  To which she responded by explaining that it was a method that was suggested and that she began using which helped her to prepare for written exams and other exercises. To which Mr. Goldman, who specialized in ADA enforcement and accommodations, visibly became upset about and began to explain the sensitivities involved when referring to a disability is an issue. Futher he noted, that such conversation was not appropriate in that forum of a disciplinary hearing. Personal study habits and why individuals with a disability should be subject to explain to an academic  standards  committee  with  no  background  or  relevance  in  deciding  or  facilitating accommodations  to learning disabled students,  just to scrutinize Plaintiff,  he strongly objected to.

39.    Having realized or accepted Mr. Goldman's suggestion, Allen stopped the inquiry perhaps recognizing that it was either not an issue subject to the committee's scrutiny or else believed, perhaps, that Mr. Goldman would continue to show him where he crossed the line and how. In any event, it should have been made clear that Ms. Di Lella disability was not on trial or subject to justification.

---

[8] Plaintiff requested a record of the Hearing and her request was denied.
[9] Def. Mot. For Dismiss 2-5.
[10]  This event should be in defendant's record.

40.    Allen's statement during the hearing that "we take our own notes here" in view of the subsequent decision strongly suggests that Plaintiff's disability is what was evaluated and  not her academic performance. There is a very real  discriminory attitude about and  against  persons, - here, Plaintiff specifically,  because she is learning disabled.  It is a sterotype often associated with learning disabilities or other "invisible handicaps" and is motivated in part by the subjective opinion of those who question the need to accommodate students by giving them special treatment.

41.    However, as the Committee based its decision on Plaintiff's  disability, which it felt was within their expertise or "academic discretion" to do,  and expert opinion was available and disregarded, the resulting decision rendered is a flawed, personal and biased assertion reflecting nothing more than a discriminatory view of  a student with a learning disability and must be overturned.

## III.  PLAINTIFF'S RESPONSES TO THE MOTION TO DISMISS, IN WHOLE AND IN PART.

42.    **To all other issues or fact of law arguments , Plaintiff herein incorporates, as fully set forth, paragraphs 1- 43 .**

### A.    Judicial Intervention Is Permissible When A Decision Is Arbitrary And Capricious And  Necessary to Cure Due Process Insufficiencies

43.    Defendants finding of guilt is irrational, unsupported and motivated by ill-will unrelated to academic performance which justice requires the Court to intervene. [11]  The        subsequent punishments rendered against Plaintiff - to suspend, which is a *de facto* expulsion, and place in her permanent record stigmatizing and defamatory statements which are known to be untrue, substantiality depart from academic norms and are without any discernable rational basis. UDCSL's actions are arbitrary and capricious and the Court should overturn defendants actions for the reasons set forth and on the facts, known or unknown, contained or referenced herein. [12]

44.    While defendants suggest that it is improper for the Court to impose their determination in matters not within their purview, defendants over estimate their reach of "academic discretion".   While the ASC rests its entire finding of guilt on two points[13]– plaintiffs

[11] An act will be deemed arbitrary and capricious only where administrative action is not supportable on any rational basis or where it is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case. Childress v. Clement. 44 Va.Cir. 169,  Clements v. Nassau County, 835 F.2d 1000, 1004 (2d Cir.1987).

[12] In the academic context....the institution's subjective explanations of an innocent motivation should not be accepted automatically; its decision may still be scrutinized for evidence of an improper animus." Jung v. George Washington Univ., 875 A.2d 95 (2005)

[13] "To the implausible degree that typing out a question might serve as study material, it was already available to view, print, or download from the Alberta Law School site.  So there would not appear to be any reason for typing out a copy.";  " And there would appear to be no pedagogical purpose whatsoever to changing the names of the parties." Compl. ¶18 Exh. M.

disability, it's conclusion, to be accurate, would have to be based on specific and intimate knowledge of Plaintiff's disability, her diagnosis and her conditions. But the conclusion it is not. Rather, it is speculative and unsupported. Further, no member on the Committee is a learning specialist or otherwise qualified to make the claim that they have, and to the degree in which Plaintiff is deprived of her name, her education, her future career and ability to provide.[14]   No record has been demonstrated, nor has any authority been cited to support such conclusion, when in fact, creditable evidence has been shown to disprove defendant's conclusion. The Committee's decision, therefore, is not an academic regulation within the expertise of the committee; further, it is based entirely on a personal, unqualified and subjective statement which is discriminatory. The statement should be disregarded and, as a result, the Committee's decision should be abandoned.

**IV.    The Provision Of Additional Time Was Not Reasonable or A Substitute Accommodation;**

### UDC School of Law of Law Failed To Provide Plaintiff Class Notes  Or Transcriptions To Which She Was Entitled

45.    On September 15, 2003 UDC School of Law agreed that "the School of Law will provide…double time to complete examinations…and extended time on written projects when necessary and requested." Compl. ¶14 The Law School also determined that "We will provide you with a note taker." Compl. ¶14. The following academic year, UDCSL discontinued the use of note takers but as a reasonable alternative offered to provide a transcription service. The purpose behind the service is to  convert oral material such as classes, lectures, or any academic instruction to which Plaintiff was entitled, into written form. One of the disabilities to which Ms. Di Lella suffers impairs her ability to process words into written expression and the note taking accommodation fulfilled that disparity.

46.    During the Spring 2005 semester, Plaintiff did not receive transcriptions to which she was entitled. The provision of additional time is irrelevant and is not a "substitute" accommodation. Additional time does not facilitate or minimize the impairment of written expression, and therefore plaintiff continued to suffer and remained at a disadvantage without the note taking accommodation.

### Plaintiff Has A Continuing Interest In Eliminating The Stigma Attached To Her Record.

47.    Plaintiff is not a former student, but a suspended student, and, moreover one who has not been able to complete her education at another institution because of the school's action. Damages remain and cannot be mitigated because the fraudulent probation on her record,

---

[14] While Plaintiff was a student in Professors Edward Allen and Thom Macks' class, they instructed her to  refer to Dean Ann Richardson, UDCSL's Disability Coordinator for accommodation matters maintaining that they had no authority to exercise judgment on that issue..

maintained by the school, prevents it. [15] Therefore, her claim is not moot.

### Claims Are Timely.

48.        UDC School of Law continuously violated Plaintiff's rights, culminating in the disciplinary action precipitated by the failure to provide the required accommodations. The University established a process, and effectively compelled Plaintiff to use it until all remedies were exhausted. Upon notice of the faculty's decision Plaintiff filed this lawsuit.[16] For any deadline exceeded, it would be disingenuous to penalize Plaintiff for the time that it took for the Committee's deliberation and appeal procedure to complete.

The Faculty rendered its decision to denied Plaintiff's appeal request on April 19, 2006, and issued notice to Plaintiff's counsel on the 21st to that effect. The following week, Ms. Di Lella received notice by mail, effective April 26, 2006. This lawsuit was filed on April 24, 2007, less than 1 year after the final decision. There is no statute of limitation issue, therefore, ADA claims are timely.

49.        **Claims under the ADA, § 1983, Rehabilitation Act**

All claims for which Congress did not provide a specific federal statute of limitations, courts have borrowed from analogous state claims. In the District of Columbia, the Courts have used the term of three (3) enjoyed by personal injury actions as well as provided under D.C. Code § 12-301.8. As such the 3 year period applies to claims under the Rehabilitation Act[17]; § 1983[18].

Continuing violations and claims under which injunctive relief is warranted are preserved.

50.        **The ASC Is Not Protected by an Absolute Immunity from Any Claims Asserted.**

In the seminal case  Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992 (1975), the Supreme Court ruled that depite the board's "function as adjudicators in the school disciplinary process" absolute immunity would not sufficiently increase school officials' ability to exercise discretion "in a forthright manner  to allow the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations", and therefore,  would not be justified. Id., 319-320.

---

[15] Claims for reinstatement state a violation that continues during period plaintiff is excluded from the benefits to which he is entitled. Elliott v.. Hinds, 786 F.2d 298, 301 (7th Cir.1986).

[16] In Delaware State College v. Ricks, 449 U.S. 250, 255, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) Student, after receiving final notice of the allegedly discriminatory decision, the statute of limitation period began.

[17] See also Doe v. Southeatern Univ., 732 F.Supp 7.9 (D.D.C.1990) (Rehabalitation Act ,
[18] Bougher v. Iniv. Of Pittsburg, 822 F.2d) (3rd Cir. 1989).

51.     Other cases involving university disciplinary matters have consistently upheld this view that absolute immunity is not appropriate and have applied a lesser protection of qualified immunity. [19] In Childress v. Clement, 44 Va.Cir. 169 (1997), involving a disciplinary proceeding against a student for plagiarism, the Honor Council at Virginia Commonwealth University was held to be a quasi-judicial body and not entitled to absolute immunity but the lesser qualified immunity. Indeed, a qualified privilege does not, however, preclude a subsequent finding that the defendant did not act in good faith. "A qualified privilege may be abused or lost if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith ..." Gaudio v. Griffin Health Services Corp., 733 A.2d 197 (1999).

52.     Based on the explanation set forth below, all defendants are not protected by immunity, absolute or otherwise and are liable for statements made in any form to any one without written authorization. Violations are continual as long as they remain on Plaintiff's record.

53.     In communication the ASC's decision of "guilt for plagiarism and cheating on an exam", it should be reasonably understood that such statements made by a university representative to an inquiring employer, institution or Bar Examiner, gives rise to the inference that facts do exist and justify the basis of the Committee's opinion – "guilt" "for committing plagiarism" and "for cheating on an exam". To which, it should be reasonable understood that the party receiving the information will more than likely infer that "guilt" was ascertained on the basis of evidence that demonstrates the chargers were in fact committed. As such, to repeat the statement that Plaintiff is "guilty of plagiarism and cheating" presents a false statement suggesting that facts of guilt were found and are true, when, actually, the facts of guilt are not true. Because the opinion so clearly on its face is irrational and without support whatsoever, to communicate the opinion without further explanation is defamatory as it misleads the hearer to believe the statement is factually true. Statement given as to plagiarism and cheating, therefore, known to be false and are false are defamatory and actionable and individuals in their personal capacities.

54.     Claims and facts not specifically addressed in this supplement Complaint are neither waived or denied. Plaintiff reserves the right to revisit a claim, argument or rebuttal not herein addressed to its fullest. All facts referenced can be found in Plaintiff's Complain exhibits already submitted.

---

[19] If qualified immunity is sufficient for the schoolroom, it should be more than sufficient for the jailhouse. Cleavinger v. Saxner, 474 U.S. 204-05.