# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| Nicole DI LELLA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| UNIVERSITY OF THE DISTRICT OF COLUMBIA | ) |
| DAVID A. CLARKE SCHOOL OF LAW, ANN | ) Case No.  1:07CV00747 (HHK) |
| BISHOP RICHARDSON, AHMAD REED, | ) |
| ACADEMIC STANDARDS COMMITTEE, and | ) |
| SUSAN L. WAYSDORF, | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Michael A. Johnson (D.C. Bar No. 460879)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000
(202) 942-5999 (fax)

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

I.  The ADA, Rehabilitation Act, and DCHRA Claims Must Be Dismissed..........................3

A.  Ms Di Lella Asserts No Plausible Causal Link Between Any
Alleged Discrimination and the Alleged Harm ....................................................3

B.  Defendants Accommodated Ms. Di Lella's Disability Reasonably
and Effectively........................................................................................................4

C.  The Claims for Injunctive Relief Are Moot...........................................................5

D.  The DCHRA Claim Is Time-Barred......................................................................6

E.  The ADA Claims Are Time-Barred........................................................................7

F.  The Rehabilitation Act Claims Are Time-Barred...................................................9

II.  Ms. Di Lella's Defamation Claim Must Be Dismissed ....................................................10

A.  The Defamation Claim Is Time-Barred................................................................10

B.  No Communication that Ms. Di Lella Alleges, or that Could
Reasonably Be Inferred from Her Complaint, Could Have
Been False ............................................................................................................11

III.  Ms. Di Lella's Retooled Section 1983 "Due Process" Claim Fails as a Matter
of Law ...............................................................................................................................12

IV.  Ms. Di Lella's Breach of Contract Claim Against "The University" Fails as a
Matter of Law. ...................................................................................................................15

A.  The Contract Claim is Outside the Court's Subject Matter
Jurisdiction...........................................................................................................16

B.  The Contract Claim Fails Substantively as a Matter of Law ................................17

V.  Ms. Di Lella All But Ignores Our Defendant-Specific Arguments ...................................19

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bennett v. U.S. Chess of AM. Chess Fed'n*,
468 F. Supp. 2d 79 (D.D.C. 2006) ...................................................................................11

*Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*,
468 F. Supp. 2d 190 (D.D.C. 2007) ................................................................................14

*Chandamuri v. Georgetown Univ.*,
274 F. Supp. 2d 71 (D.D.C. 2003) ...................................................................................18

*Doe v. Southeastern University*,
732 F. Supp. 7 (D.D.C. 1990) ........................................................................................8, 9

*Doe v. U.S. Dept. of Justice*,
753 F.2d 1092 (D.C. Cir. 1985) ......................................................................................11

*Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School*,
117 F.3d 621 (D.C. Cir. 1997) ..........................................................................................2

*Goss v. Lopez*,
419 U.S. 565 (1975) ........................................................................................................12

*Hankins v. The Gap, Inc.*,
84 F.3d 797 (6th Cir. 1996) ...........................................................................................4, 5

*Irwin v. Department of Veterans Affairs*,
498 U.S. 89 (1990) .............................................................................................................7

*Long v. Howard University*,
439 F. Supp. 2d 68 (D.D.C. 2006) ...................................................................................16

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........................................................................................................12

*McManus v. Williams*,
2007 WL 744734, Civ. A. No. 05-1621 (EGS) .................................................................2

*Mitchell v. Yates*,
402 F. Supp. 2d 222 (D.D.C. 2005) .................................................................................20

*Morris v. Rinker*,
2005 WL 1027485, No. 3:04-CV-252-J-32TEM (M.D. Fl. April 14, 2005)...................16

*Murray v. Lichtman*,
339 F.2d 749 (D.C. Cir. 1964) ........................................................................................18

*O'Connor v. College of Saint Rose*,
2005 WL 2739106, No. 3:04-CV-0318 (N.D.N.Y Oct. 24, 2006) ...............................4, 5

*Pantazes v. Jackson*,
366 F. Supp. 2d 57 (D.D.C. 2005) .....................................................................................4

*Ringgold v. National Maintenance Corp.*,
   796 F.2d 769 (5th Cir. 1986) ...........................................................................7

*Roe v. County Comm'n of Monongahela County*,
   926 F. Supp. 74, 77-78 (N.D. W.V. 1996) .........................................................7

*Schuler v. Univ. of Minn.*,
   788 F.2d 510 (8th Cir. 1986) .........................................................................12

*Soignier v. Amer. Bd. of Plastic Surg.*,
   92 F.3d 547 (7th Cir. 1996) ...........................................................................6

*Spahr v. United States*,
   2007 WL 2332313, Civ. A. No. 07-00362 (EHS) (D.D.C. Aug. 17, 2007) .................2, 14

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d. 1111 (D.C. Cir. 2000) .....................................................................4

*Winnick v. Manning*,
   460 F.2d 545 (2d Cir. 1972).........................................................................15

*Wood v. Strickland*,
   420 U.S. 308 (1975)................................................................................19, 20

### STATE CASES

*Alden v. Georgetown Univ.*,
   734 A.2d 1103 (D.C. 1999) ...........................................................................16

*Basch v. George Washington*,
   370 A.2d 1364 (1976) ..................................................................................16

*East v. Graphic Arts Indus. Joint Pension Trust*,
   718 A.2d 153 (D.C. 1998) .............................................................................7

*Pardue v. The Ctr. City Consortium Sch. Of the Archdiocese of Washington, Inc.*,
   875 A.2d 669 (D.C. 2005) .............................................................................6

*Pride v. Howard University*,
   384 A.2d 31 (D.C. 1978) .........................................................................16, 17

*Robinson v. State*,
   687 N.W.2d 591 (Iowa 2004) .........................................................................7

*Vermont Agency of Natural Res. v. Towns*,
   724 A.2d 1022 (Vt. 1998) .............................................................................7

### FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 15(a) ..................................................................................2

### STATE STATUTES

D.C. Code § 2-1403.16 (2007)..........................................................................6

D.C. Code § 12-301 (2007)...................................................................................................9

D.C. Code ¶ 12-301(7).....................................................................................................15

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| Nicole DI LELLA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| UNIVERSITY OF THE DISTRICT OF COLUMBIA | ) |
| DAVID A. CLARKE SCHOOL OF LAW, ANN | ) Case No.  1:07CV00747 (HHK) |
| BISHOP RICHARDSON, AHMAD REED, | ) |
| ACADEMIC STANDARDS COMMITTEE, and | ) |
| SUSAN L. WAYSDORF, | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

In our motion to dismiss, defendants identified many fatal defects in Ms. Di Lella's complaint.  In her response, Ms. Di Lella fails to address several of these flaws in any way, and she fails to cure the few that she does address.  Ms. Di Lella has failed to state a claim upon which relief can be granted, and under Rule 12(b)(6) the Court should dismiss her complaint.

## INTRODUCTION

In response to our motion, Ms. Di Lella submitted a filing entitled "Plaintiff's Complaint Supplemented And Response to Defendant's Motion to Dismiss Or In The Alternative, For A More Definitive Statement Of Claim," which purports to "supplement Plaintiff's initial Complaint."[1]  That document incorporates by reference the facts alleged in, and the exhibits submitted with, Ms. Di Lella's initial complaint.[2]  Defendants do not challenge the procedural sufficiency of that submission; Ms. Di Lella was entitled to amend her initial complaint as a

_____

[1]     Response, Preliminary Statement.

matter of right.[3]  As this Court held earlier this year in the *McManus* decision, where "a plaintiff's amended complaint incorporates by reference the original complaint, the Court will consider both pleadings for purposes of evaluating whether plaintiff has properly stated a claim."[4]  And, as the D.C. Circuit held in the 1997 *EEOC v. St. Francis* case, "[i]n determining whether a complaint fails to state a claim, we may consider . . . facts alleged in the complaint, *any documents either attached to or incorporated in the complaint* and matters of which we may take judicial notice."[5]  Thus, the Court may properly consider all of the allegations Ms. Di Lella has offered, and all of the exhibits she has submitted, to date.

Ms. Di Lella now asserts six claims:  her five initial claims under the Americans with Disabilities Act, the Rehabilitation Act, the D.C. Human Rights Act, section 1983, and the common law of defamation, and her new claim for breach of contract.  But even considering Ms. Di Lella's new allegations, she still has not stated any claim upon which the Court could grant any relief; each of her six claims suffers from fatal and incurable flaws.

Ms. Di Lella cannot cure the fundamental procedural flaw with her complaint — her principal claims (the ADA, Rehabilitation Act and DCHRA claims) are all time-barred.  Moreover, Ms. Di Lella has failed to remedy the main substantive deficiency in her allegations — Ms. Di Lella's failure to assert any plausible causal link between any defendant's purportedly

---

*(footnote continued from previous page)*

[2]    *Id.* ¶ 54 (explaining that "[a]ll facts referenced can be found in Plaintiff's Complaint[t] exhibits already submitted"); *see also id.* ¶ 11 (citing to "Compl. ¶ 14 and attachments"); *id.* ¶ 12 n.1 (citing to "Compl. ¶ 11 and attachments").

[3]    Fed. R. Civ. P. 15(a).

[4]    *McManus v. Williams*, 2007 WL 744734, Civ. A. No. 05-1621(EGS), at *3 (D.D.C. Mar. 6, 2007).

[5]    *Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).  *See also Spahr v. United States*, 2007 WL 2332313, Civ. A. No. 07-00362(EHS), at *1 (D.D.C. Aug. 17, 2007)

improper act and the harm of which Ms. Di Lella complains, *i.e.*, her suspension from the Law School.

As to Ms. Di Lella's subsidiary claims, her defamation claim continues to fail for want of any allegedly false and defamatory unprivileged communication within the limitations period. Her retooled section 1983 claim fails as a matter of law, because the procedural protections the Law School afforded her — notice of the charges, assistance of counsel, the right to submit a complete defense, and the right to pursue an appeal — provided Ms. Di Lella all the process that was due.  Ms. Di Lella's new breach of contract claim fails not only because the Court lacks subject-matter jurisdiction over this state-law claim, but also because Ms. Di Lella cannot establish that the Law School breached any contractual duty, or that any such breach could have caused damages given Ms. Di Lella's failure to mitigate.

Finally, Ms. Di Lella cannot overcome the immunities defendants noted in our motion, and Ms. Di Lella has not corrected her failure to properly serve any defendant other than Dean Richardson.

Ms. Di Lella presents no viable claim against any defendant, and her action should be dismissed in its entirety.

## I.    THE ADA, REHABILITATION ACT, AND DCHRA CLAIMS MUST BE DISMISSED

### A.    Ms. Di Lella Asserts No Plausible Causal Link Between Any Alleged Discrimination and the Alleged Harm

As we explained in our opening brief, the ADA, Rehabilitation Act, and DCHRA claims require Ms. Di Lella to establish a causal connection between her disability and the harm she alleges befell her.  As we further explained, Ms. Di Lella has effectively "ple[d] h[er]self out of

court by alleging facts that render success on the merits impossible,"[6] because her complaint and

the exhibits she submitted with it establish that Ms. Di Lella's suspension resulted from her own

admitted submission of an examination response that consisted of plagiarized material.  In her

supplemental complaint, Ms. Di Lella continues to acknowledge that she submitted an exam

response containing copied material, and that as a result she was disciplined for plagiarism.[7]  As

the Northern District of New York held in the 2005 *O'Connor* case, "Plaintiff's failing grade and

plagiarism would provide the Defendant with a legitimate, non-discriminatory reason not to

allow Plaintiff to re-enroll";[8] accordingly, Ms. Di Lella cannot establish the requisite causation

between her disability and her separation from the Law School.

> **B.**     **Defendants Accommodated Ms. Di Lella's Disability Reasonably and Effectively**

In her supplemental complaint, Ms. Di Lella disputes that the accommodations

defendants provided were reasonable in relation to her disability, claiming specifically that

extending the time within which Ms. Di Lella could complete her exams was an inadequate

substitute for direct provision of class notes.[9]  While the Law School was obligated to

accommodate Ms. Di Lella's disability reasonably, it was not obligated to provide the specific

accommodations she requested.[10]  As the Sixth Circuit held in the 1996 *Hankins* decision, under

the ADA, the entity "providing the accommodation has the ultimate discretion to choose between

---

[6]     *Sparrow v. United Air Lines, Inc.*, 216 F.3d. 1111, 1116 (D.C. Cir. 2000).

[7]     *See* Response ¶ 20.

[8]     *O'Connor v. College of Saint Rose*, 2005 WL 2739106, No. 3:04-CV-0318, at *8 (N.D.N.Y. Oct. 24, 2006).

[9]     Response ¶ 1.

[10]    *See Pantazes v. Jackson*, 366 F. Supp. 2d 57, 69 (D.D.C. 2005) (*citing* 29 C.F.R. pt. 1630 at 377 (2004)).

effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide."[11]

Here, the Law School provided substantial additional time for assignments and examinations when there were difficulties providing class notes directly in some instances. Ms. Di Lella's complaint establishes that the lengthy extensions she was given were an adequate substitute for a note-taker, and therefore the Law School effectively and reasonably accommodated Ms. Di Lella's disability. Ms. Di Lella admits that the *several additional months* of additional time the Law School gave her to complete her Constitutional Law II exam allowed her to procure class notes — the exact accommodation of which she claims to have been deprived. Indeed, once Ms. Di Lella had the notes, she *never* requested a further extension of her deadline based on any purported lack of accommodation; her only subsequent request related to an a unexplained purported "family emergency."

Thus, Ms. Di Lella's allegation that the additional time she was provided to complete her exams was "irrelevant" and "not a 'substitute' accommodation" fails.[12] The Law School accommodated Ms. Di Lella's disability reasonably.

### C.    The Claims for Injunctive Relief Are Moot

Ms. Di Lella asserts that her claims for injunctive relief are "not moot."[13] But because Ms. Di Lella's "failing grade and plagiarism would provide the [Law School] with a legitimate, non-discriminatory reason not to allow Plaintiff to re-enroll,"[14] any injunction directing the Law

---

[11]    *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996) (citing 29 C.F.R. pt. 1630 at 377)).

[12]    Response ¶ 46.

[13]    Response ¶ 47.

[14]    *O'Connor*, 2005 WL 2739106 at *8.

School to provide any accommodation to Ms. Di Lella if she were enrolled would be pointless; Ms. Di Lella's claim for such relief is moot.[15]

### D.     The DCHRA Claim Is Time-Barred

In our opening brief, we established that Ms. Di Lella's claims under the DCHRA are time-barred by the one-year statute of limitations.[16]  Ms. Di Lella's attempt to shoehorn her way into the one-year limitations period by alleging that she received notice of the Law School faculty's denial of her appeal by mail, "effective" April 26, 2006,[17] fails.  The limitations period begins to run "when a suit . . . could first be maintained to a successful conclusion."[18]  That happened on February 27, 2006, when the Academic Standards Committee imposed the suspension.[19]  As the Seventh Circuit held in the 1997 *Soignier* case, "internal appeals are not part of the ADA statutory procedure and do not toll the time for filing suit," because " [r]ather than [constituting] an independent wrong, the denial of [an internal] appeal merely confirm[s] the . . . earlier decision[]."[20]

But even if Ms. Di Lella's appeal to the Law School faculty had somehow tolled the limitations period (and it did not), Ms. Di Lella admits that the faculty's decision to deny the appeal was communicated to her attorney by facsimile on April 21, 2006.[21]  As the U.S. Supreme

---

[15]  *Id.*

[16]  D.C. Code § 2-1403.16 (2007).

[17]  Response ¶ 48.

[18]  *Pardue v. The Ctr. City Consortium Sch. Of the Archdiocese of Washington, Inc.*, 875 A.2d 669, 679 (D.C. 2005) (quoting *Toomey v. Cammack*, 345 A. 2d 453, 455 (D.C. 1975)).

[19]  Compl. Ex. 10.

[20]  *Soignier v. Amer. Bd. of Plastic Surg.*, 92 F.3d 547, 553 (7th Cir. 1996) (citations omitted).

[21]  *See* Compl. ¶ 47 and Ex. 19 (communicating decision to Ms. Di Lella via her counsel); *see also* Supp. Compl. at ¶¶24, 48.

Court held in the 1990 *Irwin* case, notice to an attorney qualifies as notice to the client.[22]  In explaining that "[t]he practical effect of a contrary rule would be to encourage factual disputes about when actual notice was received, and thereby create uncertainty in an area of the law where certainty is much to be desired,"[23] the Supreme Court anticipated the exact scenario presented here.  Ms. Di Lella's attorney received notice of the Law School faculty's denial of Ms. Di Lella's appeal on April 21, 2006[24] — more than one year before Ms. Di Lella filed her complaint — and under *Irwin* any factual dispute about whether or not Ms. Di Lella's attorney notified her that day is irrelevant.  Ms. Di Lella's DCHRA claim is time-barred.

### E.    The ADA Claims Are Time-Barred

#### 1.    The Accommodation Claim Expired No Later than September 16, 2006

Ms. Di Lella concedes that the limitations period governing claims arising under the ADA is one year, as defendants argued in our motion.[25]  Ms. Di Lella's accommodation claim falls outside this period.  The limitations period "runs from the date of the discriminatory act's

---

[22]    *Irwin v. Department of Veterans Affairs*,498 U.S. 89, 93 (1990).  *See also, e.g., Josiah-Faeduwor v. Communications Satellite Corp.*, 785 F.2d 344, 347 (D.C. Cir. 1986) (statute of limitations began to run on date letter delivered to formally designated counsel); *Ringgold v. National Maintenance Corp.*, 796 F.2d 769 (5th Cir. 1986) (collecting cases for proposition that statute of limitations begins to run on date EEOC right-to-sue letter "delivered to offices of formally designated counsel or to the claimant"); *Robinson v. State*, 687 N.W.2d 591, 594 (Iowa 2004) (notice to an attorney, in respect to a matter in which the attorney is acting for a client, "is notice to the client"); *Vermont Agency of Natural Res. v. Towns,* 724 A.2d 1022, 1025 (Vt. 1998) ("notice to an attorney sufficient to trigger the statute of limitations is imputed to the client, and will bar a claim, regardless of whether that information was actually communicated to the client").

[23]    *Id.*

[24]    Compl. Ex. 19.

[25]    Response ¶ 48.  *See also Roe v. County Comm'n of Monongahela County*, 926 F. Supp. 74, 77-78 (N.D. W.V. 1996) (holding that limitations period of West Virginia Human Rights Act applied to plaintiff's ADA claims because the WVHRA was the "most analogous West Virginia law to the Americans With Disabilities Act.").

occurrence or the discovery thereof."[26]  Because the Law School has no conceivable duty to accommodate non-students, any alleged failure by the Law School to appropriately accommodate Ms. Di Lella's disability could only have occurred when Ms. Di Lella was actually enrolled in classes at the Law School.[27]  Thus, the last possible date Ms. Di Lella conceivably could have been denied any reasonable accommodation is September 15, 2005, when she submitted the plagiarized exam answer.[28]  It is inconceivable that Ms. Di Lella was not aware of the allegedly discriminatory acts as they purportedly transpired, and she makes no argument that the discovery rule applies.  Accordingly, the limitations period for Ms. Di Lella's accommodation claim expired no later than September 16, 2006 — long before Ms. Di Lella filed her complaint.

## 2.    The Retaliation Claim Expired No Later than April 22, 2007

Ms. Di Lella attempts to salvage her ADA retaliation claim by arguing that the one-year limitations period did not begin to run until the "effective date" of her receipt of the faculty's denial of her appeal.  As a matter of law, that is not correct.  As discussed supra in § I.D, the appeal is irrelevant for limitations purposes, but even if it were not, the claim accrued no later than April 21, 2006.  Ms. Di Lella did not file her complaint within one year of accrual, and the ADA retaliation claim therefore is time-barred.

---

[26]  *East  v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 155 n.6 (D.C. 1998) (quoting *Davis v. Potomac Elec. Power Co.*, 449 A.2d 278, 280 (D.C. 1982)).

[27]  Response ¶ 13.

[28]  Compl. ¶ 34.

**F.    The Rehabilitation Act Claims Are Time-Barred**

With regard to her Rehabilitation Act claim, Ms. Di Lella contends that the one-year statutory period of the DCHRA is inapplicable, citing this court's 1990 decision in *Doe v. Southeastern University.*[29]  Ms. Di Lella improperly relies on dicta.  Although the *Doe* court stated that the Rehabilitation Act claim presented in that case was not time-barred,[30] the court dismissed the claim on other grounds.[31]  Accordingly, the statute of limitations discussion was unnecessary to the disposition of the matter and is not part of the court's holding.  In any event, as a District Court decision, *Doe* is not binding in this case.  Moreover, *Doe* is readily distinguishable on its facts.  *Doe* involved a Rehabilitation Act claim based on the improper disclosure of the plaintiff's HIV status;[32] the limitations question presented was whether DC's invasion of privacy or general personal injury statute should apply.  In *Doe* there is no discussion at all of the DCHRA; the *Doe* court never considered whether the Rehabilitation Act was more analogous to the DCHRA than to either the privacy or the personal injury statute.

In this case, the DCHRA is the most analogous DC statute.  Ms. Di Lella implicitly acknowledges the similarity and analogous nature of the Rehabilitation Act and the DCHRA by asserting parallel claims, based on the same set of facts, under both statutes.  The DCHRA's one-year limitation period applies to both claims, and Ms. Di Lella's Rehabilitation Act claim is therefore time-barred.

---

[29]   732 F. Supp. 7, 8-9 (D.D.C. 1990).

[30]   Response ¶ 49.

[31]   *See Doe*, 732 F. Supp. at 9.

[32]   *See id.* at 8.

## II.    MS. DI LELLA'S DEFAMATION CLAIM MUST BE DISMISSED

### A.    The Defamation Claim Is Time-Barred

The allegations Ms. Di Lella offers in support of her claim of defamation establish that

the claim is time-barred under the one-year statute of limitations applicable to defamation claims

in the District of Columbia.[33]   The only communication Ms. Di Lella alleges is a purported

conversation between Dean Richardson and an unnamed representative of Seton Hall

University's law school, which Ms. Di Lella claims took place at a time when "the [Academic

Standards] Committee was not in receipt of or had they reviewed [Ms. Di Lella's] Response to

the allegations."[34]

Ms. Di Lella's complaint demonstrates that the Committee was "in receipt of" her

response to the plagiarism allegations no later than January 25, 2006, the date Ms. Di Lella

submitted her supplemental, post-hearing letter.[35]  Ms. Di Lella's complaint also establishes that

the Academic Standards Committee "had . . . reviewed" Ms. Di Lella's response to the

plagiarism allegations by no later than February 27, 2006, the date the Committee announced its

decision.[36]  Even if the Court were to infer (unreasonably, in our view) that Ms. Di Lella

intended her allegations to refer to the Law School faculty rather than to the Academic Standards

Committee, her Complaint establishes that the faculty had received and considered Ms. Di

Lella's submissions no later than April 19, 2006 — the date the faculty denied the appeal.[37]  Ms.

Di Lella alleges that the faculty action that day "exhaust[ed] all remedies available through the

---

[33]   *See* D.C. Code § 12-301 (2007).

[34]   Response ¶ 22.

[35]   Compl. Ex. 18, Tab L.

[36]   Compl. Ex. 18, Tab M.

[37]   Compl. Ex. 19.

University's process"[38] and therefore establishes conclusively that the alleged communication between Dean Richardson and Seton Hall took place — if at all — before April 20, 2006.

Accordingly, given Ms. Di Lella's allegations, the *latest* date any defamation action could conceivably have accrued was April 19, 2006; Ms. Di Lella therefore concedes that the statute of limitations expired no later than April 20, 2007. For these reasons, Ms. Di Lella's supplemental complaint "on its face, shows [her defamation] claim[] to be time-barred,"[39] and that claim must therefore be dismissed.

> **B.    No Communication that Ms. Di Lella Alleges, or that Could Reasonably Be Inferred from Her Complaint, Could Have Been False**

Ms. Di Lella's supplemental complaint alleges that she "believe[s] that Dean Richardson disclosed statements *concerning the accusations* of the plagiarism charges"[40] to Seton Hall School of Law. Because, as Ms. Di Lella alleges, she had not yet submitted her response to the plagiarism allegations, "the only information Dean Richardson could communicate to Seton Hall would have been based *solely on the allegations*"[41] of plagiarism. Therefore, even if a conversation between Dean Richardson and Seton Hall occurred, such a conversation could only have been about the fact that Ms. Di Lella had been *accused* of an Honor Code violation.[42]

Under this court's 2006 *Bennett* decision, a plaintiff asserting a defamation claim under District of Columbia law "must show . . . that defendant made a *false* and defamatory statement

---

[38]    Response ¶ 24; *see also* Compl. ¶ 47 and Ex. 19.

[39]    *See Doe v. U.S. Dept. of Justice*, 753 F. 2d 1092, 1116 (D.C. Cir. 1985)

[40]    Response ¶ 22 (emphasis added).

[41]    *Id.*

[42]    Ms. Di Lella admits as much in her complaint when she notes that the Dean and Registrar were instructed to include in "any formal letter of good standing submitted to another institution" that "student's record reflects a violation of the Honor [C]ode resulting from the student's plagiarism and cheating on an exam." Response ¶ 21.

11

concerning the plaintiff."[43]  Ms. Di Lella cannot and does not allege that anything Dean

Richardson conveyed to Seton Hall about the pending accusation, had such a communication

occurred, would have been false — at the time of the alleged communication, a statement that

Ms. Di Lella had been accused of plagiarism would have been *indisputably true*.  Ms. Di Lella's

defamation claim fails as a matter of law, and the Court should dismiss it.

## III.  MS. DI LELLA'S RETOOLED SECTION 1983 "DUE PROCESS" CLAIM FAILS AS A MATTER OF LAW

As noted in our opening brief, the section 1983 claim appearing in the initial Complaint

fails, among other reasons, because it does not allege an actionable deprivation of any

constitutional or statutory right.  Ms. Di Lella attempts to cure this deficiency by asserting a

violation of the right to constitutional due process.  In particular, Ms. Di Lella now alleges that

she "did not receive adequate procedural protection and was not afforded fair and meaningful

due process."[44]  Constitutional due process requires only that a student faced with disciplinary

charges at a university be given notice of the charges against her and a reasonable opportunity to

present her side of the story.[45]  As the Eighth Circuit explained in the 1986 *Schuler* decision,

"[t]he full procedural safeguards of the fourteenth amendment are inapplicable where, as here, a

---

[43]   *See Bennett v. U.S. Chess of AM. Chess Fed'n*, 468 F. Supp. 2d 79, 89 (D.D.C. 2006) (quoting *Prins v. Int'l Tel. & Tel. Corp.*, 757 F F. Supp. 87, 90 (D.D.C. 1991)).

[44]   Response at 10.

[45]   *Goss v. Lopez*, 419 U.S. 565, 581 (1975) (in connection with a ten-day suspension, the student was entitled to "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story"); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

student is dismissed from a state educational institution for failure to meet academic standards."[46]

Ms. Di Lella nevertheless asserts that the following "procedural safeguards of the Fourteenth Amendment … should have been provided but were not":[47]

> an opportunity to inspect the evidence; a[n] explanation of the charges and not a recital of the allegations; evidence of guilt obtained should be competent and not by guess; a detailed explanation of the evidence relied on and not speculation or conclusion draw[n] as evidence …; an opportunity to respond to the evidence; an opportunity to respond to an allegation that may be used to assert guilt; evidence to show the committee weighed the evidence and position offered by Plaintiff; and fair notice and the opportunity to present a witness with the qualifications to present testimony about learning disabilities if the decision was going to rest on those issues; and an unbiased panel.

The exhibits Ms. Di Lella attached to her initial complaint squarely contradict these assertions.  Ms. Di Lella plainly received an opportunity to "inspect the evidence" and a detailed explanation of "the charges" and "the evidence relied on."  Specifically, by letter dated October 25, 2006, the Academic Standards Committee notified Ms. Di Lella of the Complaint of Honor Systems Violations submitted by Professor Waysdorf.[48]  That complaint laid out the charges of plagiarism and cheating against Ms. Di Lella, explaining that she submitted an answer "taken in its entirety (except for a change of names of the parties) from the University of Alberta Faculty of Law website" and another answer that was "copied directly and extensively from the *Petition for Writ of Certiorari*" submitted in *Lawrence v. Texas*.[49]  The Complaint of Honor Systems

---

[46]   *Schuler v. Univ. of Minn.*, 788 F.2d 510, 514 (8th Cir. 1986) (citing *Board of Curators v. Horowitz*, 435 U.S. 78, 86 n.3 (1978)).

[47]   Response at 10.

[48]   Compl. Ex. 8, 9.

[49]   Compl. Ex. 8.

Violations attached the relevant examination answers, University of Alberta Faculty of Law website page, and the publicly available Certiorari Petition in *Lawrence v. Texas*.[50]  Ms. Di Lella had *every opportunity to inspect those materials.*[51]

The attachments to the initial complaint further show that Ms. Di Lella had ample opportunity to "respond to the evidence" through the presentation of her own evidence and argument to the Academic Standards Committee.  Indeed, Ms. Di Lella admitted in her November 4, 2005 submission to the Committee that she "fully explained the circumstances surrounding her mistaken submission."[52]  The Committee further allowed Ms. Di Lella to participate in a full hearing before the Academic Standards Committee panel,[53] where she was represented by counsel.[54]  On the following day, Ms. Di Lella made a supplemental submission in which she "thank[ed] the Academic Standards Committee, again, for the opportunity to meet with them to discuss the allegations of plagiarism and cheating," and provided "further information" that Ms. Di Lella believed would "be of help to the Committee in rendering a favorable decision on my behalf."[55]

Thereafter, the Academic Standards Committee provided Ms. Di Lella with a written opinion explaining the rationale for its decision,[56] after which Ms. Di Lella (through her

---

[50]   Compl. Ex. 8.

[51]   *See, e.g.*, Compl. Ex. 9 (describing Ms. Di Lella's reaction to the Complaint of Honor Systems Violations).

[52]   *Id.*

[53]   Compl. Ex. 18 ¶ 37.

[54]   Response ¶¶ 37-38.

[55]   Compl. Ex. 18, Tab L.

[56]   Compl. Ex. 10.

attorney) submitted a 24-page appeal to the Associate Dean for Academic Affairs.[57]  That appeal

was considered, and then rejected, by the law school faculty.[58]  Ms. Di Lella's attempt to rewrite

this history now, and to directly contradict the record before the Court, must be rejected.[59]

The procedures afforded to Ms. Di Lella amply satisfied constitutional requirements.[60]

Accordingly, Ms. Di Lella's § 1983 claim based on due process violations should be dismissed.

All other purported grounds for Ms. Di Lella's § 1983 claim fail for the reasons stated in our

opening brief.

**IV.    MS. DI LELLA'S BREACH OF CONTRACT CLAIM AGAINST "THE UNIVERSITY" FAILS AS A MATTER OF LAW**

Ms. Di Lella now alleges a breach of contract claim against "the University" allegedly

"for its failure to provide class notes in a timely manner, failure to provide note takers, failure to

provide the accommodations USDCSL agreed to provide on September 15, 2003 [when] it

issued a [determination] finding Plaintiff was entitled to receive specific accommodations; by

failing to evaluate her academic performance in good faith and on the merits…."[61]  As an initial

matter, this claim is improper because "the University" — presumably the University of the

---

[57]   Compl. Ex. 18.

[58]   Compl. Ex. 19.

[59]   *See, e.g.*, *Spahr*, 2007 WL 2332313, at *3 (dismissing counts "based on allegations that are flatly contradicted by exhibits that plaintiff has attached to his amended complaint"); *Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d 190, 195 (D.D.C. 2007) (stating that a court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint" (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)).

[60]    Ms. Di Lella's conclusory assertion about "bias" of the decisionmakers are insufficient as a matter of law to sustain a claim.  *See, e.g.*, *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) ("the mere fact that the decision maker in a disciplinary hearing is also an administrat[or]" does not violate due process).

[61]   Response at 3.  The Response cites to D.C. Code ¶ 12-301(7) to support the breach of contract claim, but that provision relates to statute of limitations and does not provide for any substantive cause of action.

District of Columbia — has not been named as a defendant or served with the Complaint, and (as described in our motion) would not be a proper defendant in any event.

### A.    The Contract Claim is Outside the Court's Subject Matter Jurisdiction

Ms. Di Lella provides no jurisdictional basis for her newly asserted contract claim, and there is none.  Breach of contract is a state-law cause of action; thus if subject matter jurisdiction over such a claim were to exist, it would have to be supplemental jurisdiction or diversity jurisdiction.  In this case, as described above and in our motion, Ms. Di Lella's federal claims are insufficient as a matter of law.  Accordingly, the court should decline to exercise supplemental jurisdiction over the contract claim, as the District Court did in the 2005 *Rinker* decision, which also involved claims of discrimination and breach of contract brought by a student disciplined for plagiarism.  There, the Middle District of Florida explained that "[b]ecause the Court is rejecting plaintiff's federal claims, the Court exercises its discretion to decline to exercise supplemental jurisdiction over plaintiff's state law claims."[62]

Ms. Di Lella cannot plausibly invoke the Court's diversity jurisdiction either.  Diversity jurisdiction is unavailable for claims upon which the plaintiff cannot recover at least $75,000.  Here, even assuming the Law School breached a contractual duty to provide the note-taking accommodation, that alleged breach did not cause Ms. Di Lella's suspension.  Ms. Di Lella's damages are limited by the doctrines of foreseeability and mitigation, and therefore could not plausibly or even conceivably exceed what it would have cost her to procure notes from a fellow student or to purchase reliable recording equipment and have the lectures transcribed.  It is simply not plausible that Ms. Di Lella's recoverable damages for the alleged breach of contract approach, let alone exceed, the $75,000 diversity-jurisdiction threshold.

---

[62]    *Morris v. Rinker*, 2005 WL 1027485, No. 3:04-CV-252-J-32TEM, at *8 (M.D. Fl. April 14, 2005).

### B.     The Contract Claim Fails Substantively As a Matter of Law

Defendants acknowledge that, under District of Columbia law, an implied contract may exist between a student and university,[63] and courts have looked to university manuals, bulletins, and similar publications to determine the parties' obligations.[64]  When a court considers such a claim, it "focus[es] on the meaning that [the university] would reasonably expect [the student] to give to the contract."[65]  However, courts are "reluctant to construe the rules and procedures" of the university out of an "appreciation both of the autonomous role universities have historically enjoyed regarding their own governance and considerations relevant to academic freedom."[66]  Therefore, in an academic context, rigorous standards of contract interpretation do not apply.[67]

Here, to support her claim, Ms. Di Lella relies on the text of the Law School's September 15, 2003 letter memorializing its "disability determination."[68]  That contract claim fails for lack of consideration.  Other than whatever Ms. Di Lella promised in connection with her pre-existing contract to procure educational services from the Law School, Ms. Di Lella provided no consideration for any commitments the Law School undertook in the September 15, 2003 letter, and therefore any alleged promises the Law School made in that letter are gratuitous and unenforceable as a matter of contract law.[69]  Moreover, Ms. Di Lella asserts that the

---

[63]    *See, e.g.*, *Long v. Howard University*, 439 F. Supp. 2d 68 (D.D.C. 2006); *Pride v. Howard University*, 384 A.2d 31, 36 n.7 (D.C. 1978).

[64]    *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1110 (D.C. 1999); *Pride*, 384 A.2d at 36; *Basch v. George Washington*, 370 A.2d 1364, 1366 (1976).

[65]    *See, e.g.*, *Pride*, 384 A.2d at 36 n.7 (citing *Giles v. Howard University*, 428 F. Supp. 603, 608 (D.D.C. 1977)).

[66]    *Pride*, 384 A.2d at 34 n.2.

[67]    *Id.* at 36 n.7.

[68]    Compl. Ex. 6.

[69]    Without consideration, this letter could not create any contractual rights and duties.  *See, e.g.*, *Murray v. Lichtman*, 339 F.2d 749, 752 (D.C. Cir. 1964).

17

consideration the Law School provided to her was a promise to comply with the statutory requirements of the ADA. But a promise to perform a pre-existing duty is not sufficient consideration to support a contract. Accordingly, no consideration was exchanged in connection with the alleged contract, no contract was formed, and no liability for breach is possible.

Even if we were to assume for the sake of argument, however, that the letter could establish a contractual relationship between Ms. Di Lella and the Law School, as a matter of law, the Law School did not breach any obligation in the letter. Indeed, the accommodations provided to Ms. Di Lella were well within the parties' reasonable expectations as to the letter's meaning. The letter itself reflected the Law School's policy to "provide reasonable, appropriate, and effective accommodations for students with known, qualifying disabilities," and made clear the accommodations enumerated in the letter could change in the future.[70] In this regard, to the extent the Law School made any commitment, it was co-extensive with the Law School's obligations under the ADA. Like the ADA, the letter could have required only the provision of *reasonable* accommodations, and not any specific accommodation that Ms. Di Lella requested.

Thus, contrary to Ms. Di Lella's assertions, the Law School was not contractually required to provide a note-taker. The Law School gave Ms. Di Lella a reasonable alternative instead: months of extra time to submit her Con Law II final,[71] which permitted her to acquire allegedly missing notes from the Con Law II class.[72] That is all the Law School's September 15, 2003 letter required. Accordingly, Ms. Di Lella's contract claim based on that letter must fail.

---

[70] Compl. Ex. 6.

[71] Compl. ¶¶ 31-33.

[72] Compl. Ex. 18, ¶ 17.

Ms. Di Lella's conclusory allegation that the Law School failed to "evaluate her academic performance in good faith and on the merits" fares no better. Though framed as a breach of contract claim, this is simply a request that the Court second-guess the Law School faculty and administration on academic matters. That is improper.[73]

## V.    MS. DI LELLA ALL BUT IGNORES OUR DEFENDANT-SPECIFIC ARGUMENTS

In our opening brief, we explained that Ms. Di Lella's claims against the individual defendants fail for multiple substantive reasons relating principally to immunities. We also explained that the Law School lacks capacity to sue or be sued and is not a proper defendant. In addition, we noted that Ms. Di Lella had failed to properly serve any named defendant except Dean Richardson. Ms. Di Lella entirely ignores our arguments that:

- Claims against the individual defendants in their official capacities are impermissibly redundant with claims against the Law School;

- Claims against individuals in their personal capacities are not available under the ADA or the Rehabilitation Act;

- Section 1983 cannot be used to revive the precluded ADA claims against the individual defendants in their personal capacities;

- The individual defendants are entitled to qualified immunity from the DCHRA and section 1983 claims;

- The Law School lacks capacity to sue or be sued; and,

- No named defendant other than Dean Richardson has been properly served.

Ms. Di Lella therefore concedes each of these points, each of which requires the dismissal of the corresponding claims and/or defendants.

---

[73]    *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 80-81 (D.D.C. 2003) (citing *Alden*, 734 A.2d at 1109).

Ms. Di Lella does argue that the members of the Academic Standards Committee are not protected by absolute immunity, but she relies on a case holding that public high school officials who had disciplined students following a cursory investigation and an *ex parte* hearing were entitled to qualified rather than absolute immunity.[74] Nothing in *Wood* is inconsistent with the view that the Academic Standards Committee members, who conducted a hearing with more than adequate due process protections and who properly found that Ms. Di Lella had committed plagiarism, are entitled to absolute immunity. Simply put, the Committee members in this case acted in a quasi-judicial capacity while the officials in *Wood* did not. For that reason, and the reason set forth in our opening brief, the Academic Standards Committee members are entitled to absolute immunity.

Moreover, assuming for the sake of argument that the Academic Standards Committee members were not entitled to absolutely immunity, they would be entitled to qualified immunity. Ms. Di Lella's conclusory statement that the Academic Standards Committee's opinion "so clearly on its face is irrational and without support whatsoever"[75] does not alter this conclusion. As the materials accompanying the complaint demonstrate, the members of the Academic Standards Committee were presented with evidence that Ms. Di Lella's exam contained answers copied from publicly available sources. After allowing Ms. Di Lella to present a complete defense and pursue an appeal with the assistance of counsel, the members of the Academic Standards Committee reasonably concluded that Ms. Di Lella had plagiarized. As a matter of law, no defendant violated Ms. Di Lella's "clearly established statutory or constitutional

---

[74] *See Wood v. Strickland*, 420 U.S. 308, 312-13 (1975).

[75] Response ¶ 55.

20

rights."[76]  Accordingly, the claims against the individual defendants in their individual capacities should be dismissed based on qualified immunity.

## CONCLUSION

Ms. Di Lella admittedly submitted unoriginal, copied material as an exam response. Professor Waysdorf immediately detected the copying, and properly reported it to the proper administrators, who convened proceedings that conformed fully to all constitutional and statutory requirements.  As a result of those proceedings, the Academic Standards Committee determined that Ms. Di Lella committed plagiarism and suspended her for one year.  As the Academic Standard Committee concluded, Ms. Di Lella must be held "responsible for [her] action in submitting a plagiarized document to a professor to meet the deadline imposed on [her] for submitting an answer to an exam."[77]  That is all that this case is about.  For the reasons expressed above and in our opening brief, Ms. Di Lella has stated no legal claim against any defendant, and the Court must therefore dismiss her complaint in its entirety.


Dated: September 7, 2007.                          Respectfully submitted,


                                                   /s/ Michael A. Johnson
                                                   Michael A. Johnson (D.C. Bar No. 460879)
                                                   ARNOLD & PORTER LLP
                                                   555 Twelfth Street, N.W.
                                                   Washington, D.C. 20004-1206
                                                   (202) 942-5000
                                                   (202) 942-5999 (fax)

                                                   *Attorney for Defendants*

---

[76]  *Mitchell v. Yates*, 402 F. Supp. 2d 222, 234 (D.D.C. 2005) (quoting *Int'l Action Ctr. v. United States*, 365 F.3d 20, 44 (D.C. Cir. 2004)).

[77]  Compl. Ex. 10 at 2.

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 7th day of September 2007 I caused a true and correct copy of the foregoing DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT to be served via electronic mail (as a pdf file) addressed to n_dilella@hotmail.com with a copy to follow via U.S. Mail, postage prepaid, addressed to:

> Nicole Di Lella, plaintiff
> 1881 Watchung Avenue
> Plainfield, NJ  07062
> 908/834-2882.

/s/ Michael A. Johnson_____

22