UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLE DI LELLA,<br><br>               Plaintiff,<br><br>   v.<br><br>UNIVERSITY OF THE DISTRICT OF<br>COLUMBIA DAVID A. CLARKE<br>SCHOOL OF LAW, et al.,<br><br>               Defendants. | Civil Action 07-00747 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Proceeding *pro se*, Nicole Di Lella, a learning-disabled former student at the University of the District of Columbia David A. Clarke School of Law, brings this action against the School of Law[1], its Academic Standards Committee, Associate Dean Ann Bishop Richardson, Professor Susan L. Waysdorf, and Educational Specialist Ahmad Reed (collectively, "Law School"). Di Lella asserts causes of action arising from the Law School's treatment of her in connection with its provision of accommodations for her disability and the Law School's suspension of her after she was charged with cheating and plagiarism. Di Lella maintains that the Law School discriminated and retaliated against her in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402 *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"),

---

[1] The University of the District of Columbia may not be sued in its own name, D.C. Code § 38-1202.01(a). The court, therefore, substitutes the Board of Trustees of the University of District of Columbia as the proper defendant. *See Ibrahim v. Univ. of District of Columbia*, 742 A.2d 879 (D.C. 1999); *Dasisa v. Univ. of District of Columbia*, 2006 WL 949925, at *1 (D.D.C. April 12, 2006).

29 U.S.C. § 701 *et seq.* Di Lella also asserts that the Law School breached its contract with her,[2] violated 42 U.S.C. § 1983, and defamed her.[3]

Before the court is the Law School's motion to dismiss or, in the alternative, for a more definite statement of Di Lella's claims [## 7, 8].[4] Upon consideration of the motion, Di Lella's

---

[2] Di Lella sets forth her breach of contract claim for the first time in her Amended Complaint and Opposition to Defendant's Motion to Dismiss. *See* Am. Compl. ¶ 7.

[3] Di Lella's verbose, twenty-three page complaint references thirty-five attached exhibits, one of which is twenty-five pages long. The complaint quite clearly does not comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure which requires a plaintiff's claim to be set forth in a "short and plain statement." Surprisingly, the Law School does not move to dismiss the complaint on the grounds that it does not comply with Rule 8(a)(2). *See, e.g., Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004)("Rule 41(b) authorizes the court to dismiss either a claim or an action because of the plaintiff's failure to comply with [Rule 8(a)(2) of] the Federal Rules 'or any order of court'"). The court will not dismiss Di Lella's complaint, *sua sponte*, on this ground because in this jurisdiction the complaint of a *pro se* litigant is held to less stringent standards than pleadings drafted by lawyers. *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (*quoting Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)).

Citing case law from other jurisdictions in support of its alternative motion for a more definite statement, the Law School argues that Di Lella should not be accorded the "greater latitude typically afforded to pro se litigants" because Di Lella "has the assistance of a 'legal advisor' who is an experienced litigation attorney with the firm of Paul, Hastings, Janofsky & Walker LLP." Defs.' Mot. to Dismiss 3. The court must reject the Law School's argument. First, the law does not permit this court to accept as true the unsupported averments in a party's memorandum of points and authorities. Second, assuming Di Lella had the assistance of a legal advisor in crafting her complaint, there is no way to determine whether Di Lella was provided with the "substantial" level of assistance some courts indicated warrants applying the same standards to pleadings filed by a *pro se* litigant as are applied to pleadings drafted by lawyers. In this regard, the court observes that there is nothing about Di Lella's extremely poorly-crafted complaint to indicate that it was prepared with the "substantial legal assistance" of an attorney. Defs.' Mot. to Dismiss 3 n.10 (internal citation omitted).

[4] The Law School's motion indicates that it is made "[p]ursuant to Fed. R. Civ. P. 1, 4, 7 and 12, and L. Civ. R. 7." Defs.' Mot. to Dismiss 1. However, except for the arguments and authority it submits pertinent to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Law School does not attempt to show how the other Rules it cites provide a basis for dismissing Di Lella's complaint. Therefore, the court will not consider the Law School's motion to the extent it is based upon any rule other than Federal Rule 12(b)(6). *See, e.g., Arizona v. Shalala*, 121 F. Supp. 2d 40, 46 n.4 (D.D.C. 2000) (refusing to consider an argument defendants raised

opposition thereto, and the record of the case, the court concludes that the motion must be granted in part and denied in part.

## I. BACKGROUND

Pertinent to the causes of action Di Lella seeks to prosecute, her complaint avers the following, which the court accepts as true. Di Lella has a learning disability that, among other things, makes it difficult for her to process words into written expression. She enrolled at the Law School in the Fall of 2003 and during orientation met with Associate Dean Ann Bishop Richardson. During this meeting, she informed Dean Richardson of her disability and requested that the Law School provide her the accommodations she would need to successfully matriculate at the Law School. In a follow-up letter to Di Lella, Dean Richardson indicated that the Law School would provide some of the accommodations Di Lella had requested. Dean Richardson's letter states,

> Existence of a Disability: You have provided me with documentation from Dr. James M. Sydnor-Greenberg, Nancy Thomas, and Karen C. Romm that indicates the following diagnoses: Reading Disorder, Disorder of Written Expression, ADHD, Predominantly Inat6entive [sic] Type, and Scotopic Sensitivity and that these conditions may affect your academic performance.
>
> Determination as to Accommodation: Beginning with the fall, 2003, semester, the School of Law will provide the following accommodations:
>
> • You may have double time to complete examinations which will be administered to you in a separate, quiet testing room and extended time on written projects, when necessary and requested.

---

"without citing any authority"); *City of Waukesha v. E.P.A.*, 320 F.3d 228, 254 (D.C. Cir. 2003) (quoting *SEC v. Banner Fund Int'l*, 211 F.3d 602, 613 (D.C.Cir. 2000)) (stating that the court does not address "'asserted but unanalyzed' contention[s]"); LCvR 7(a) (requiring that all motions "shall include or be accompanied by a statement of the specific points of law and authority that support the motion.").

- We will provide you with a notetaker.  The School of Law's policy and procedures for notetakers is attached.

Pl.'s Ex. 6, Letter from Dean Richardson to Nicole Di Lella (Sep. 15, 2003).

During her first year at the Law School, Di Lella sometimes was not provided a notetaker and, at the beginning of her second year, the Law School decided to provide her with transcriptions of her class lectures instead of a notetaker.  Di Lella was required to purchase the equipment needed to record class discussions.  She was then expected to submit the tapes to the Law School for transcription.

As it turns out, Di Lella often was not provided with timely transcriptions and sometimes the tapes she made were not transcribed at all.  As a result, Di Lella was unable to meaningfully participate in classroom lectures, discussions, academic assignments, Law School clinics, and community opportunities.  She could not prepare for class assignments or exams and was unable to take her exams at the same time as her classmates.  Taking exams later than her peers caused Di Lella to have longer academic semesters and precluded her from enrolling in upper-level courses and specialized programs within the Law School.

In the spring of 2005, Di Lella enrolled in Professor Susan Waysdorf's Constitutional Law course.  When Di Lella did not receive timely transcriptions of Professor Waysdorf's lectures and, as a result, was unable to prepare suitably to take the midterm examination on schedule, Di Lella complained to Professor Waysdorf.  Thereafter, in front of the class taking the Constitutional Law course, Professor Waysdorf admonished Di Lella for not taking the midterm examination at the same time as the other members of the class and disclosed that Di Lella was a student with a learning disability.  Di Lella reported this incident to Dean Richardson.

Di Lella did not receive timely transcriptions throughout the remainder of the semester and was unable to take the final examination in May. Di Lella eventually obtained class notes, however, and was given a deadline of September 16, 2005, to submit the take-home portion of the final examination. On September 19, Di Lella sent her final examination answers to Waysdorf by "e-mail." Professor Waysdorf believed that Di Lella's answers were copied directly from two internet sites and thereafter made a complaint of plagiarism and cheating to Dean Richardson, who then sent the complaint to the Academic Standards Committee.

The Committee held a hearing on the complaint during which Di Lella provided written submissions and statements explaining that she had mistakenly "emailed" a computer file containing a study aid instead of the computer file that contained the answers to the examination that she had prepared. The Committee did not believe Di Lella's explanation and determined that she had violated the Law School's Honor Code. As a result, Di Lella was suspended for one year. In addition, the Committee's letter summarizing its findings was placed in Di Lella's permanent file and the Registrar's office and Dean's office were directed to share the letter with any Bar Examiner or educational institution to which Di Lella might apply.

On April 19, 2006, the Law School's faculty denied Di Lella's petition for review of the Committee's decision. Di Lella filed this suit on April 24, 2007.

## II.  ANALYSIS

A.      **Legal Standard for a Motion to Dismiss under Rule 12(b)(6)**

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must allege a "plausible entitlement to relief" by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967, 1969 (2007).  It is not necessary for the plaintiff to plead all elements of her *prima facie* case in the complaint, *Swierkiewicz v. Sonoma N.A.,* 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000).  Thus, while the factual averments in a complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint need not include detailed factual allegations. *Bell Atl.* at 1964, 1966.

When a plaintiff does include detailed factual allegations in her complaint, however, she can "plead [herself] out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116, (D.C. Cir. 2000) (citing *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("Litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.")).

B.      **Di Lella's Claims**

As has been indicated, Di Lella's complaint is extremely verbose and contains information and characterizations that are not appropriate for a complaint.  Nevertheless, the complaint unmistakably sets forth recognizable causes of action stemming from the alleged actions of the Law School in providing or not providing accommodations for Di Lella's disability and the Law School's response to the charge that Di Lella violated the Law School's

Honor Code.

The Law School contends that each of Di Lella's claims should be dismissed on various grounds under Federal Rule of Civil Procedure 12(b)(6). The court considers each of Di Lella's claims and the Law School's principal arguments for their dismissal in turn.

### 1.     DCHRA Claims

The Law School argues that to the extent any of Di Lella's claims are grounded on the DCHRA[5] they fail because they are time-barred. The Law School is correct.

The DCHRA has a one-year statute of limitations. D.C. Code § 2-1403.16(a). This one-year period begins to run at the time the plaintiff is made aware of the allegedly discriminatory act. *Brown v. Nat'l Acad. of Scis.*, 844 A.2d 1113, 1118 (D.C. 2004) (quoting *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). A plaintiff is deemed to be on notice from the time when her attorney is put on notice. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92-93 (1990).

Here, the Law School's last allegedly discriminatory act took place on April 19, 2006, when the faculty denied Di Lella's petition for plenary review. Di Lella's complaint states that this decision was communicated to her attorney on April 21, 2006. Di Lella filed her complaint on April 24, 2007, more than one year after her attorney received notice of the faculty's denial of her appeal. Accordingly, Di Lella's DCHRA claims are time-barred.

---

[5] The DCHRA prohibits an educational institution from denying or restricting the use of, or access to, any of the educational institution's facilities, services, or programs based on an individual's actual or perceived disability. D.C. Code § 2-1402.41(1).

2.  **ADA & Rehabilitation Act Claims**

Di Lella also asserts claims of discrimination and retaliation under the ADA[6] and the Rehabilitation Act.[7]  Because "[c]laims and defenses under the two statutes are virtually identical," the court's analysis of Di Lella's causes of action based on these statutes is the same. *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999); *Long v. Howard Univ.*, 439 F. Supp. 2d 68, 74 (D.D.C. 2006).

   *i. Discrimination*

Di Lella maintains that the Law School unlawfully discriminated against her in two respects.[8]  First, Di Lella argues that the Law School failed to provide her with reasonable

---

[6]  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation," 42 U.S.C. § 12182(a), which includes "all postgraduate private school, or other place of education."  42 U.S.C. § 12181(7)(J).  Discrimination on the basis of disability includes the failure to provide reasonable modifications "when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

[7]  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," such as "a college, university, or other post secondary institution."  29 U.S.C. §§ 794(a), (b)(2)(A).

[8]  Di Lella's ADA and Rehabilitation Act claims brought against Dean Richardson, Ahmad Reed, the individual members of the Academic Standards Committee, and Professor Waysdorf in their individual capacities are dismissed because there is no individual liability under the ADA or the Rehabilitation Act.  *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 2007); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Harris v. Mills*, 478 F. Supp. 2d 544, 547-48 (S.D.N.Y. 2007).  Furthermore, Di Lella's claims against those individuals in their official capacities are dismissed as redundant in light of Di Lella's suit against the Board of Trustees of the University of District of Columbia.  *Cooke-Seals*, 973 F. Supp. at 187.

accommodations for her learning disability. Second, she maintains that her suspension from the Law School was related to and a result of the Law School's failure to provide the accommodations to which she was entitled.

With respect to Di Lella's claim that the Law School failed to provide her reasonable accommodations for her disability, the Law School contends that Di Lella "plead[s] herself out of court" by alleging facts establishing that she, in fact, was provided with reasonable accommodations. In the alternative, the Law School contends that Di Lella fails to allege sufficient facts to support her failure to accommodate claim.[9] With respect to Di Lella's claim that she was suspended because of her disability, the Law School argues that the two are completely unrelated and, given Di Lella's detailed assertions in her complaint, she has failed to allege plausibly that her suspension was motivated by animus related to her disability.

The Law School's arguments regarding Di Lella's failure to accommodate claim cannot be sustained. The Law School's position regarding its suspension determination is well taken, however.

The crux of the Law School's argument regarding Di Lella's accommodations claim is that the Law School was under no obligation to provide Di Lella with the specific

---

[9] The Law Scool also assert that Di Lella's ADA claims are time-barred as the DCHRA's one-year statute of limitations applies to Di Lella's ADA claims. Defs.' Mot. to Dismiss 18-20. Defendants are wrong. In the District of Columbia, the three-year personal injury statute of limitations applies to non-employment claims of discrimination brought pursuant to the ADA. *Long,* 512 F. Supp. 2d at 12 ("In the District of Columbia, this limitations period is three years, and thus a three-year limitations period is applied in Rehabilitation Act and ADA cases."); *Williams v. Savage*, 538 F. Supp. 2d 34, 39-40 (D.D.C. 2008) (same); *Doe v. Southeastern University*, 732 F. Supp. 7, 8-9 (D.D.C. 1990) (same); *Kersey v. Washington Metropolitan Area Transit Authority*, 533 F. Supp. 2d 181, 190 (D.D.C. 2008) (same).

accommodations she requested and that, in fact, and as Di Lella's complaint shows, it provided Di Lella the accommodations to which she was entitled. Di Lella rejoins that the accommodations provided by the Law School were not only different than what was promised to her, but that they were also insufficient.

A fair reading of Di Lella's complaint, particularly when it is read in a light most favorable to her, reveals that Di Lella adequately sets forth a failure to accommodate claim. And, it simply can not be said that she has "plead [herself] out of court," *Sparrow*, 216 F.3d at 1116, by alleging facts showing that she cannot prevail. While the Law School undoubtedly had discretion in choosing between the accommodations to be provided to Di Lella, the law requires the provision of an "effective accommodation[]." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996); *see also Pantazes v. Jackson*, 366 F. Supp. 2d 57, 69 (D.D.C. 2005); 29 C.F.R. pt. 1630, app. at 377 ("the employer providing the accommodation has the ultimate discretion *to choose between effective accommodations*, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.") (emphasis added). It is not sufficient to merely provide a qualified individual with *any* accommodation; the accommodation needs to address the limitation arising from the individual's disability. *Long*, 439 F. Supp. 2d at 78; *see also Wong v. Regents of the University of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). Whether a provided accommodation is effective or reasonable depends on the facts and circumstances of each case. *Wong*, 192 F.3d at 818; *see also Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 795 (1st Cir. 1992) ("what is reasonable in a particular situation may not be reasonable in a different situation – even if the situational differences are relatively slight."). Thus, whether the Law School provided Di Lella with an effective or reasonable accommodation is not an issue

that can be properly determined at this stage of the litigation.

In addition to her failure to accommodate claim, Di Lella asserts that the Law School discriminated against her on the basis of her disability when the Academic Standards Committee found her guilty of plagiarism and she was suspended. The Law School argues that the finding of plagiarism and Di Lella's subsequent suspension were completely unrelated to Di Lella's disability and that Di Lella's averments in her complaint show that she is unable to prevail on this claim. The Law School is correct.

Di Lella's complaint shows that the Academic Standards Committee found her guilty of plagiarism and cheating on an examination because she failed to acknowledge or credit sources she submitted as her own work. Di Lella takes issue with the Committee's determination not to accept her explanation for what happened and charges that there is a causal relationship between her disability and the Committee's decision. Di Lella's position cannot be sustained. First, to the extent that Di Lella seeks review of the Committee's decision, the court "follow[s] the lead of the Supreme Court as well as other courts across the country in declining to engage in judicial review of academic decision-making by educational institutions." *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1108 (D.C. 1999). Second, Di Lella's lengthy complaint simply does not offer any plausible explanation for how she was treated differently on *the basis of her disability*. Accordingly, to the extent Di Lella's discrimination claim is based upon the determination of the Academic Standards Committee, the claim fails.

### ii. Retaliation

Di Lella asserts that when Professor Waysdorf reported Di Lella's alleged plagiarism to the Academic Standards Committee, Professor Waysdorf actually was retaliating against her for

reporting Professor Waysdorf's in-class remarks about Di Lella's learning disability to Dean Richardson. The Law School argues that there is no causal connection between any protected activity and the referral to the Committee. In this instance, Di Lella does not plead herself out of court.

The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). In her Amended Complaint, Di Lella asserts that after she engaged in protected activity Professor Waysdorf filed a complaint in retaliation. Di Lella goes on to state that "[w]hile on its face the accusation of plagiarism and cheating on an exam appear as an exercise of academic discretion, the motive to craft such offenses out of the circumstances was ill-will and discriminatory." Am Compl. ¶ 26. Di Lella further asserts that Waysdorf's actions resulted in Di Lella's suspension and denied Di Lella the opportunity to complete her degree or pursue a career or employment in the legal field.

Di Lella has given the Law School fair notice of her retaliation claim and the grounds upon which it rests. *See Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003). Under *Bell Atlantic*, she is not required to do more to survive defendants' motion to dismiss as to this claim. 127 S. Ct. at 1969.

### 3.     42 U.S.C. § 1983

Di Lella's complaint asserting a claim based upon alleged violations of 42 U.S.C. § 1983 is particularly muddled and is readily subject to dismissal for some of the reasons set forth by the Law School in its motion. To the extent Di Lella's § 1983 claim arguably survives at all, it does so only to the extent Di Lella asserts that she was not afforded due process of law when she was accused of violating the Law School's Honor Code. As the Law School correctly argues,

however, Di Lella's complaint shows that she is unable to prevail on this claim.

A student facing suspension from school for disciplinary reasons is entitled to "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978) (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).

Di Lella's complaint states that she received notice of all charges and evidence against her. According to Di Lella, she was provided with written notice of Professor Waysdorf's allegations and written notice of Dean Richardson's referral to the Academic Standards Committee. In this notice, Professor Waysdorf cited the specific sections of the Student Handbook that Di Lella allegedly violated and stated with particularity how Di Lella violated them by copying material directly from other sources without crediting those sources in her answer to the essay portion of the final examination in Constitutional Law II.[10] Professor Waysdorf also attached copies of the Spring 2005 Constitutional Law take-home essay exam, Di Lella's answers to that exam, and the original source material that Di Lella allegedly copied.

Di Lella's complaint indicates that she was given the opportunity to present her side of the story in both written and oral form. Before the Academic Standards Committee met to consider Professor Waysdorf's allegations, Di Lella sent Professor Allen, chair of the Academic Standards Committee, a letter directly addressing the allegations of plagiarism and cheating. In this letter, Di Lella indicates that she reviewed the charges against her – often by quoting from

---

[10] In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court considers as true facts alleged in plaintiff's complaint and also facts alleged in documents attached to, or incorporated into, the complaint. *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Professor Waysdorf's original complaint, admitted that her submitted essay answers were not her own, and argued that she should not be found guilty of Honor Code violations. When the Academic Standards Committee met to consider the charges, Di Lella states that she participated and presented her explanation. Di Lella supplemented this explanation with an additional letter to the Academic Standards Committee.

According to Di Lella, the Academic Standards Committee informed Di Lella of its decision in a three-page letter. This letter summarized the charges and evidence against her, cited the relevant provisions of the Honor Code she was accused of violating, reviewed her proffered explanation, and concluded that she had plagiarized and cheated on an examination. Di Lella was also informed of her right to appeal the decision to the Law School faculty, which she did.

Di Lella's complaint indicates that she was afforded notice of the charges against her, received copies of all the evidence considered, and took advantage of four separate opportunities to present her side of the story. Di Lella's complaint thus establishes that Di Lella cannot prevail on her § 1983 claim. Accordingly, Di Lella's § 1983 claim is subject to dismissal. *See Sparrow*, 216 F.3d at 1116; *Bennett*, 153 F.3d at 519.

### 4. Defamation

Di Lella's complaint avers that the Law School defamed her by placing and maintaining a false and defamatory Honor Code violation in her permanent record with directions to share this information with other institutions and Bar Examiners. Among other grounds asserted for dismissal of this claim, the Law School contends that Di Lella's defamation claim is time-barred. The Law School is correct.

The statute of limitations for a defamation claim in the District of Columbia is one year.

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998); *see also* D.C. Code § 12-301(4). "Defamation occurs on publication and the statute of limitations runs from the date of publication." *Wallace*, 715 A.2d at 882 (internal citations omitted).

Di Lella alleges that Dean Richardson defamed her when Dean Richardson shared information about Di Lella's Honor Code violation with a representative of Seton Hall University. Whether Di Lella has made a timely defamation claim depends on when this conversation allegedly took place. According to Di Lella, Dean Richardson communicated with a representative of Seton Hall before the Committee reached its decision.[11] The Academic Standards Committee announced its decision on February 27, 2006. Therefore, the conversation and publication of the allegedly defamatory remarks must have occurred no later than February 27, 2006. Di Lella did not her file her complaint until April 24, 2007, more than 13 months after the last possible date of publication of the allegedly defamatory remarks. Accordingly, Di Lella's defamation claim is time-barred.

   5.   **Breach of Contract**

Di Lella contends that the Law School breached its contract with her when it failed to provide the accommodations for her disability it promised to provide and to which she was entitled. As the Law School points out, this claim fails, among other reasons, because Di Lella's complaint shows that the only promises made to her regarding the provision of accommodations for her disability are set forth in the letter from Dean Richardson to Di Lella dated September 15,

---

[11] Di Lella also states that Dean Richardson made her defamatory remarks when "the Committee was not in receipt of or had they reviewed her Response to the allegations." Am. Compl. ¶ 22. Di Lella submitted her final response to the plagiarism and cheating allegations on January 25, 2006. It is not clear on what date the Committee received and reviewed this response. Because the court must construe the facts in the light most favorable to Di Lella, the court allows that this response may not have been received or reviewed until February 27, 2006. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

15

2003. The September 15 letter, fairly read, promises and obligates the Law School to provide nothing more than the Law School was required to provide by law. Consequently, Di Lella's contract claim fails for lack of consideration.

To create an enforceable contract in the District of Columbia, there must be mutuality of obligation. *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.,* 940 A.2d 996, 1003 (D.C. 2008). Mutuality of obligation exists when each party undertakes to "do something the party is otherwise under no legal obligation to do." *Id.* at 1003 (quoting *Order of AHEPA v. Travel Consultants, Inc.*, 367 A.2d 119, 125 (D.C. 1976)). A promise to perform a pre-existing legal obligation does not create mutuality of obligation and cannot give rise to an enforceable contract. *See id.*; *Youngblood v. Vistronix, Inc.,* 2006 WL 2092636, at *4 (D.D.C. July 27, 2006) ("It is a general maxim of contract law that a party cannot offer as consideration a duty that the party is already obliged to perform."); *United States v. Bridgeman*, 523 F.2d 1099, 1109-1110, (D.C. Cir. 1975) (noting that performance of a pre-existing duty is "a typical example of invalid consideration.").

To the extent Di Lella claims that the Law School promised to do more than it was required to do by law, the claim fails because of a lack of consideration and because the September 15 letter, fairly read, indicates that the Law School reserved to itself the right to make modifications to the accommodations it indicated it would provide. Accordingly, the Law School's motion is granted with respect to Di Lella's contract claim.[12]

### III. CONCLUSION

For the foregoing reasons, it is this 5th day of August 2008, hereby

---

[12] The Law School makes several arguments in its motion to dismiss pertinent to Di Lella's claims against the individual defendants, principally relating to immunities, to which Di Lella does not respond. These arguments are deemed conceded. *See* LCvR 7(b).

**ORDERED** that the motion to dismiss is **GRANTED** as to all claims except Di Lella's failure to accommodate and retaliation claims under the ADA and the Rehabilitation Act against the Board of Trustees of the University of District of Columbia; and it is further

**ORDERED** that the Laws School's alternative motion for a more definite statement of Di Lella's claims is **DENIED** as moot.

                                              Henry H. Kennedy, Jr.
                                              United States District Judge